# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRIC

MARION SINCLAIR

PROSE Plaintiff ,

v.

ANDY MEISNER, in his official capacity as Oakland County Treasurer; OAKLAND COUNTY, a municipal corporation; OAKLAND COUNTY TAX TRIBUNAL, THE CITY OF SOUTHFIELD, a municipal corporation and the following officers, agents, and employees both personally and in their official capacities (KENSON SIVER, FREDERICK ZORN, GERALD WITKOWSKI, SUE WARD-WITKOWSKI, IRV LOWENBERG, MICHAEL MANDLEBAUM, DONALD FRACASSI, DANIEL BRIGHTWELL, MYRON FRASIER, LLOYD CREWS, NANCY BANKS); SOUTHFIELD NON PROFIT HOUSING CORPORATION, a 501 (c) 3 corporation and its officers, employees, and agents both personally and in their official capacities (BOARD PRESIDENT KENSON SIVER; MITCHELL SIMON, TREASURER; MICHAEL MANDELBAUM, BOARD MEMBER; FREDERICK ZORN, BOARD MEMBER; RITA FULGIAM-HILLMAN, LORA BRANTLEY-GILBERT, EARLENE TRAYLER-NEAL); SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE, LLC, a Michigan based corporation and its officers, employees, and agents both personally and in their official capacities (FREDERICK ZORN, MICHAEL MANDELBAUM, ETOILE LIBBETT); HABITAT FOR HUMANITY, a Michigan based corporation and its officers, employees, and agents in their official and personal capacities; and GTJ CONSULTING, LLC and JBR DISPOSAL, LLC, both Michigan based corporations and its officers,

Case: 2:18-cv-14042
Judge: Berg, Terrence G.
MJ: Davis, Stephanie Dawkins
Filed: 12-26-2018 At 10:59 AM
CMP SINCLAIR V. MEISNER ET AL (DA)

**INJUNCTIVE RELIEF COMPLAINT AND JURY DEMAND**

December 21, 2018

employees, and agents in their official
capacities, jointly and severally,

Defendants.

## INTRODUCTION

This is an action based on long-standing and ongoing violations of Plaintiff

and other African-American homeowners in Southfield's Constitutional rights

related to improper transfer to a private corporation of her real property. The

Plaintiffs property is in tax foreclosure and was transferred through a series of

transfers that were repeated hundreds of times by Defendants in an effort to mask

the dubious transfers of over 100 properties in 2016, 2017, and 2018 from the

county of Oakland to a private corporation in a thinly veiled attempt to circumvent

Michigan law. Michigan law has detailed specific steps that must be followed

prior to taking citizen's property and are outlined in The General Property Tax Act

of 1893 (MI-GAP).

The Plaintiff's home is in Southfield, Michigan, the city with the highest

number of tax foreclosures of any city in Oakland County since 2012. Year after

year Southfield has had this dubious distinction with grant dollars, programs, and

plans to keep residents in their home largely nonexistent and one-time relief

mandated by law through the Oakland County Tax Tribunal not available to

residents who meet income criterias. Southfield is now overwhelmingly African-

American (70.4% in 2010 Census), mostly former-Detroiters who moved to the

city in large numbers beginning in the late 70's and 80's.  Although Southfield boasts a majority African-American population, still over 95% of the police and fire departments and most of the long-term (over $50,000 per year) employees are Caucasian (https://www.youtube.com/watch?v=TlYItUJFYFk at 1:35:18 from 12/17/2018 meeting).

Although not having always been friendly to African-Americans, Southfield has a long history of being the most prejudiced city in Oakland County and was the beneficiary of most of the white flight that left Detroit after the civil uprising there and the subsequent nomination of the first African American mayor in the city's history.  Additionally since the 1930's most of the homes in Southfield had restrictive covenants where African-American and other ethnic families were not allowed to purchase homes and businesses.  In fact, most real estate agents refused to even show homes to African-American homeowners and the only way to purchase a home was by using a non African-American straw buyer who would then transfer the property to an African-American family.

Of late, the city has transitioned some with its first African-American mayor in 2001.  The mayor left in 2015 to become a congresswoman.  After the Congresswoman left, the new mayor and his administrative team (many that have been in Southfield for decades), begin putting policies and procedures in place to

raise revenue for the city as a result of Northland mall closing after an African-American male lost his life in a chokehold with guards and officers.

Beginning in 2015, through resolutions from city council and funding from the various Defendants in this lawsuit, the city set out to flip houses by transferring properties subject to tax foreclosure to private corporations prior to the mandated state auction required by Michigan law.  In addition to flipping houses, the city created a series of draconian policies that had the affect of removing the Plaintiff and the other mostly African-American homeowners from their homes, and stripping them of the equity built-up over time in their properties.  One commonality that exists between all of the foreclosed properties is that all of the properties were paid off free-and-clear, and had no encumbrances.

Because Defendants persists in their misconduct, this action is brought by Plaintiff in her individual capacity to redress the undisputed historic and ongoing discriminatory conduct perpetrated by the Defendants. Plaintiff seeks temporary injunctive relief on preventing any subsequent transfers of her property by Southfield Neighborhood Revitalization Initiative, LLC ("SNR") until resolution of this lawsuit by this honorable court as a result of the irreparable harm that she suffered as a result of being unlawfully evicted from her home by SNR and City of Southfield agents and employees who changed the locks while Plaintiff was home sitting on the couch watching television.  Although the city of Southfield has its

own judicial courthouse, SNR and the other Defendants in this lawsuit could not be bothered by getting a legal writ of eviction and instead evicted the Plaintiff from her property.  The Plaintiff seeks to invoke protections afforded her under USC §1983, the Fair Housing Act of 1968 – 42 USA 3601-3619, and other protections available under the US Constitution's Equal Protection Clause, the 14th and 5th Amendments of the US Constitution, and civil RICO statutes available federal statutes and through the State of Michigan.

## STATEMENT OF THE CASE

1. Defendant Oakland County (OAKGOV) discriminated against Plaintiff and other African-American Southfield homeowners facing tax foreclosure in 2016, 2017, and 2018 on the basis of race by, among other things, allowing private corporations to purchase tax foreclosed properties ahead of the state mandated public auction - unjustly enriching the private corporations in the process; all the while abridging U.S. Constitutional guarantees to the Plaintiff in the 5th and 14th Amendments in addition to the protected liberty interest afforded African-Americans by 42 USC §1983 and additional protections afforded Plaintiff by the Michigan Constitution.  Additionally OAKGOV and Defendant City of Southfield (SFIELD) did not provide the Plaintiff the form for filing an annual poverty exemption, even though Plaintiff applied and was approved by SFIELD for home repairs -- based on Plaintiff meeting income qualifications.

2. Defendant OAKGOV intentionally concealed its illegal transfer of Plaintiff's tax foreclosed property to a private corporation ahead of the public auction by transferring it first to the City of Southfield (SFIELD) in a series of circuitous transactions.  At the same time Defendant SNR had forwarded funds to SFIELD in the last week of June in order to deprive Plaintiff and other African-American homeowners that wished to assert their right to bid on and repurchase their homes at the county auction.  This end run around Michigan law equates to a unconstitutional taking expressly forbidding by MCL § 213.23(2). This insured that Defendant SNR, their owners SFIELD and the Southfield Non Profit Housing Corporation ("SNPHC") and their employees, agents, and contractors alone would benefit and become unjustly enriched from the improper property transfer of Plaintiff's home.  This secret decision also denied Plaintiff any opportunity to plan for, protect herself against, or mitigate the sudden and devastating impacts on the loss of her home and the equity built up therein.

3. Throughout the preceding months of April 2016 to November 2019 OAKGOV and the other Defendants have been contacted by multiple citizen groups, agencies, and homeowners affected to request reversal of the city's policy of using OAKGOV to circumvent the clear language and intent of the MI-GAP act. The administration of OAKGOV through its County Executive, Treasurer, and surrogate Defendants acted under color of law by allowing the "Southfield

Defendants" to circumvent the MI-GAP act by infringement upon Plaintiff's constitutional rights.

4. Defendant Andy Meisner also violated the Plaintiff's constitutional rights by not allowing Oakland County residents to use (MCLA § 211.78n (5) ) a new law created in 2015 by the Michigan legislature allowing Michiganders behind in property taxes until 6/30/2016 to setup a payment arrangement with their county or payoff their delinquent taxes.  In this case Defendant Meisner created a new class of residents like the Plaintiff who were prevented from using the 6/30/2016 deadline whereas residents of Wayne County were allowed to use the new law. Instead Defendant Meisner cancelled the payment plan of $50.00 that the Plaintiff was on in 2015 to expire and demanded that Plaintiff a senior citizen on a fixed income sign a new payment plan agreeing to pay more than $145.00 a month in payments.  This resulted in the Plaintiff missing payments and the resulting foreclosure.  During conversations with Defendant Meisner after the illegal eviction, Plaintiff asserts that Meisner was abrasive, rude, unprofessional, dismissive, and actually hung up the phone during their conversation, although Plaintiff purchased her home at the height of the economic downturn for cash and planned to live in her home for the rest of her life.  Instead Plaintiff was illegally evicted and had the pleasure of meeting Defendants Siver, Zorn, Gerald Witkowski, and several other SNR workers, contractors, and agents (GTJ

Consulting, LLC and JBR Disposal, LLC) at her home after CTJ and JBR broke in

and changed her locks -- all without a court order.  The defendants were so hell-

bent on getting Plaintiff out of her home that Defendant Siver took Plaintiff in his

Cadilac Esquelade to the senior citizen home where Plaintiff currently resides,

although her home is still vacant after being stripped of all of her belongings. The

behaviors of Defendant Meisner and the other Defendants named above had the

effort of discriminating against Plaintiff and other mostly African-American

homeowners in Southfield, directly breaching equal protection and procedural due

process guarantees in the U.S. and Michigan Constitutions.  Additionally, Plaintiff

applied for and her application was approved for her to be tax exempt for one year,

however, the City of Southfield appealed the ruling and Plaintiff received another

letter saying that she WAS NOT tax exempt – although she met income guidelines.

5. While OAKGOV's neighboring county – Wayne – allowed its residents to

take advantage of the Michigan's legislatures extension to June of 2016, Defendant

Meisner did not.

6. Plaintiff seeks to stop Defendants from discriminating against her and

other similarly situated African-American homeowners now and in the future.

Plaintiff also seeks injunctive relief to reverse the tax foreclosure on her property

and pending eviction, to prevent Defendants from continuing to transfer properties

to private corporations ahead of the MI-GAP required public action in July of

every year.  Plaintiff also seeks to assist African-American homeowners in

Southfield and across Oakland County in gaining the opportunity to preserve the

equity built-up in their homes and afford these other residents the opportunity to

continue to participate in the American dream of home ownership and their piece

of the American pie.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this suit brought under the Fair Housing

Act, 42 USC 3601-3619; the fourteenth Amendment to the United States

Constitution; Article I, Section 17 of the Michigan Constitution; and 42 USC 1983.

8. Venue is proper in this court in that Defendant Oakland County and

Defendant City of Southfield are political subdivisions of the State of Michigan;

Defendant Andy Meisner and the Oakland County Tax Tribunal are official

political subdivision of the State of Michigan and Plaintiff is suing Defendant

Meisner and the Oakland County Tax Tribunal in their official capacities;

Defendants Ken Siver, Frederick Zorn, Sue Ward-Witkowski, Gerald Witkowski,

Irv Lowenberg, Michael Mandlebaum, Donald Fracassi, Daniel Brightwell, Myron

Frazier, Lloyd Crews, and Nancy Banks are all officials of a political subdivision

of the State of Michigan sued in their official and personal capacities; Defendants

Southfield Non Profit Housing Corporation (Ken Siver, Mitchell Simon, Michael

Mandelbaum, Frederick Zorn, Rita Fulgiam-Hillman, Lora Brantley-Gilbert, Earlene Traylor-Neal), Southfield Neighborhood Revitalization Initiative, LLC (Frederick Zorn, Michael Mandelbaum, Etoile Libbett), GTJ Consulting, LLC, and JBR Disposal, LLC are Michigan based corporations sued as corporations including its officers, employees, and agents both personally and in their official capacities;  Habitat for Humanity of Oakland County -- including the Plaintiff named herein resides and operates within the State of Michigan.

9. The injuries claimed by Plaintiff named herein occurred and continue to occur in the County of Oakland, in the State of Michigan.

## **THE PARTIES**

10. Plaintiff, Marion Sinclair, is an African-American property owner who purchased her home in Southfield in 2009 and is facing tax foreclosure as a result of being delinquent on her property taxes and the improper transfer of her property to a private corporation ahead of the public auction in violation of Michigan law (MCL 211.78m).  As a result of reaching out to other Southfield homeowners facing tax foreclosure Plaintiff found records and details of the improper transfer and authorizations and approvals by SFIELD officials.

11. Defendant Oakland County is a political and corporate entity organized and existing under the laws of the State of Michigan.

12. Defendant Andy Meisner (also referred to as "Defendant Oakland County Treasurer') occupies the office of the Oakland County Treasurer and is sued in his official capacity.

13. Defendant Andy Meisner, the Oakland County Tax Tribunal, and Defendant Oakland County are referred to as the ("Oakland County Defendants.")

14. Defendant City of Southfield (SFIELD) is a political and municipal corporate entity organized and existing under the laws of the State of Michigan. SFIELD was incorporated as a city to prevent annexation to the city of Detroit in 1958.  SFIELD was the biggest beneficiary of "white flight" beginning in the late 60's after the civil uprising in 1968 and SFIELD became the home of most Detroit fortune 100 corporations as a result.

15.  Defendants City of Southfield, Ken Siver, Frederick Zorn, Sue Ward-Witkowski, Gerald Witkowski, Irv Lowenberg, Michael Mandlebaum, Donald Fracassi, Daniel Brightwell, Myron Frazier, Lloyd Crews, and Nancy Banks are Southfield City officials and are sued in their official and personal capacities; Defendants Ken Siver, Mitchell Simon, Michael Mandelbaum, Frederick Zorn, Rita Fulgiam-Hillman, Lora Brantley-Gilbert, Earlene Traylor-Neal are board members of Southfield Non Profit Housing Corporation which is a Michigan based non-profit corporation and are sued in their official and personal capacities; Defendants Frederick Zorn, Michael Mandelbaum, Etoile Libbett, and Gerald

Witkowski are sued in their official and personal capacities as board members or program managers of the Southfield Neighborhood Revitalization Initiative, LLC, a Michigan based corporation; Defendant Habitat for Humanity, includes multiple divisions that operate across Michigan and is sued as a corporation; and included in this list are referred to collectively as "Southfield Defendants."

16. Defendant Kenson Siver is the current mayor of SFIELD and holds the highest legislative position and as mayor directs all affairs of the city through his elected team which includes a 7 person city council, a full-time city administrator, a city attorney, a city treasurer and planner and hundreds of employees.  Although Defendant Siver is a part-time mayor per city charter, he works overtime as the President of the Board of the Southfield Non Profit Housing Corporation (NON-PROFIT) which provided the funds for the scheme that is the subject of this action and according to city council minutes is in a partnership with the NON PROFIT per approved minutes in February 2016.  Defendant Siver along with the city administrator and city council is the author of many of the draconian policies developed by SFIELD including the scheme to defraud African-American homeowners out of their homes as a result of a downturn in the local economy and residents having problems maintaining their homes and paying property taxes.

17. Defendant Sue Ward-Witkowski is an attorney licensed by the state of Michigan to practice law in the state and has worked in the city's legal department

for over 20 years and up until August of this year was the city attorney for the city

of Southfield.  Defendant Ward-Witkowski was the creator of many purported

'legal' documents developed by the city that blur the line on legality related to

code enforcement, cash for keys, property disputes, and resident issues and

complaints to the SFIELD.  Defendant Ward-Witkowski is one of the architects of

the scheme crafted to take tax-foreclosed homes in SFIELD purchased from

OAKGOV ahead of the required state auction for an average of $15,000 - $20,000

- and sell them through private corporations for full market value to the tune of

millions of dollars per year in revenue.  Defendant Ward-Witkowski and

Defendant Gerald Witkowski are husband and wife and as a married couple

benefitted from $2,500 that was supposed to be paid to Plaintiff, however facts

show that the check was made out to the Witkowski Defendants and cashed

without Plaintiff getting any remuneration.  Instead, Plaintiff received a 1099

saying that she received the $2,500 directly.

18. Defendant Donald Fricassi is currently a city council member but over

the past 30 years has also served as mayor alternately.  Defendant Fricassi was the

champion behind many positive programs in SFIELD such as the Neighborhood

Stabilization Program which helped residents stay in their homes, however, of late

he has been intimately involved in policies and procedures related to contractors

operating in the city due to his long-term history in managing SFIELD and familiarity with long-term contractors, vendors, employees, and agents.

19. Defendant Frederick Zorn is the long time city administrator of SFIELD and is responsible for the day-to-day activities of the city and all of its concerns. Defendant Zorn also sits on the board of directors of the NON-PROFIT as well as SNR.  In his role as city administrator, Defendant Zorn's primary job responsibility is to insure the smooth running of the city and all of its departments and divisions, and to liase with city council, the mayor, and all contractors, vendors, and professionals who contract with SFIELD.  Per city charter Defendant Zorn is forbidden from exercising nepotism related to conflicts of interest related to family members and must reside in the city.  Defendant Zorn acting is his triplicate capacities as the city administrator (to be defined further during discovery), a board member of both the NON-PROFIT and SNR was also one of the chief architects of this property acquisition scheme and provided authorization and final approval on many of the transactions.

20. Defendant Irv Lowenberg is currently the SFIELD city treasurer and responsible for all financial processes in the city.  One of Defendant Lowenberg's primary responsibilities is collection of property taxes from residents and insuring cohesiveness with OAKGOV's treasurer related to Michigan State property laws. Defendant Lowenberg's treasury department policies and procedures are

developed by the city council and signed off by the mayor.  Any transfer of

property from or to the city must be authorized and given final approval by

Defendant Lowenberg.  Other irregularities that arose and to be fully documented

during discovery have been the wholesale reduction in property taxes on Plaintiff's

as well as many of the other properties transferred to SFIELD and SNR from

OAKGOV, resulting in greatly reduced taxes for SNR.  Additionally, Defendant

Lowenberg, and the Southfield Defendants, along with Defendant M.S. Title

Agency, LLC, colluded in this conspiracy to evade Michigan law by doing a 2-step

process of a transfer of the 2016 properties from the Oakland County Treasurer to

the City of Southfield all the while disguising the real-transfer of properties to

SNR.

21. Defendant Andy Meisner also serves on the Oakland County Habitat for

Humanity Board of Directors.  Oakland County Habitat for Humanity benefits

directly from this scheme and was touted by the SFIELD Treasurer Irv Lowenberg,

as being the entity that had purchased all of the 2016 properties from SFIELD in

2016 – and that all of the homes would be sold for full market value .  Facts show

that Defendant Habitat was not the recipient of the transfer of the 2016 parcels

however Plaintiff has documentation to prove that Habitat For Humanity and it's

employees, agents, and contractors received over $63,000 in 2016 from SNR.

22. Defendant Myron Frazier is currently a city council member and proposed or seconded the motions of many of the resolutions related to this transfer of property.

23. Defendant Nancy Banks served as the Southfield city clerk for more than 20 years and recently decided not to run for another term.  Defendant Banks signed off on the transfer of the Plaintiff and other homeowner properties related to the 2016 tax foreclosures and along with the mayor transferred them to SNR in contravention of state law.

24. Defendant SNR is a Michigan based corporation created in June 2016 by SFIELD City Manager Frederick Zorn and NON-PROFIT Treasurer Mitchell Simon through registration with Michigan's Department of Licensing and Regulation.  Defendant SNR is touted to be a single member LLC wholly owned by NON-PROFIT although contrary information exists about SFIELD being a part owner and sharing in the profits.  Defendant SNR and its officers, employees, and agents worked with the other Defendants to insure tax-foreclosed properties were transferred to SNR ahead of the state auction causing harm to Plaintiff and other homeowners facing foreclosure in 2016, 2017, and 2018.  Defendant SNR also directed its attorneys, agents, and employees to administer a cash-for-keys effort headed up with documents created by Defendant Ward-Witkowski and her designates that subjected many of the affected residents to discriminatory treatment

and harassment through adhesion contracts sprung on tax foreclosed residents at the last moment during the Christmas holiday.

25. Defendant Gerald Witkowski has worked for SFIELD for more than 20 years and was the director of code enforcement. When this scheme to have the city, its employees, agents and affiliates begin flipping the properties of mostly African-Americans began, although Defendant Witkowski had retired, he was activated to become project manager of SNR and the other Southfield Defendant's plans to remove residents from their homes without the benefit of judicial oversight. Defendant Witkowski still has a business card touting a City of Southfield email address and telephone number although city records show he is the project manager of SNR. Defendant Witkowski also profited illegally from this scheme by taking over $2000.00 that was earmarked for Plaintiff and disposing of the monies through his own devices -- to be documented through the discovery process. Plaintiff asserts that all of the Defendants actions together equate to fraud and that this matter needs to see the light of day because even after the illegal eviction Plaintiff received an invoice for the move from another entity that is not names above.

26. Defendant Frederick Zorn although SFIELD's city administrator also serves double and triple duty as president of SNR's board of directors and as a board member of the NON PROFIT. In his role as president of the SNR board,

Defendant Zorn directs the day-to-day operations of SNR and is the chief signer on checks over $500,000 and responsible for all operations.   Defendant Zorn also worked closely with all other Defendants in implementation of the scheme to improperly transfer properties from OAKGOV one week before the scheduled auction.  Additionally, Defendant Zorn personally visited plaintiff's home days before the illegal eviction and knew the Plaintiff's home was not unoccupied or abandoned.

27. Defendant Michael Mandelbaum is also a SFIELD city council member, a member of NON-PROFIT's board of directors, and serves as a board member of SNR.  In his role as board member of SNR, Defendant Mandelbaum worked diligently to shepherd SNR related legislation though the city council and also liased with OAKGOV's treasurer, employees and agents to insure SNR's profit priorities were met.  Additionally, as an SNR board member, defendant, Mandelbaum worked with the other SNR board members on selection of real estate professionals, contractors, vendors, legal and financial experts and agents hired to accomplish tasks.  Additionally, Defendant Mandelbaum also steerheaded bus tours of recently foreclosed homes for Caucasian homebuyers.

28. Defendant Etoile Libbett is a member of the SNR board of directors and has been a real estate professional for more than 20 years.  Defendant Libbett helped to develop the property acquisition and sell policies of SNR and is a

signatory on checks issued by SNR.  In her role as board member, Defendant

Libbett also directs which contractors are hired to clean out, paint, and repair

houses, and which vendors are selected for other professional services including

landscaping, curb appeal, advertising, and the like.  Through discovery Plaintiff

seeks to compel Defendant Libbett to answer questions related to agency and

double dipping because she is a member of the SNR board of directors, and also a

beneficiary of real estate listing services, in addition to playing a SNR-vendor role

in a LLC listed at her home address -- owned by one of her family members.

29. Defendant Habitat for Humanity is a Michigan based not-for-profit

corporation that has several subdivisions across the state all operating under the

same name; although some operate under different policies and procedures

coordinated by their national 501 (c) 3 parent company.  Defendant Habitat for

Humanity was selected by SFIELD, SNR, and other Defendants to be the entity

that profited from repairs, fixups, property transfers, and other construction and

professional services related to the scheme.   There is a singular thread that goes

between Defendant Habitat to the OAKGOV treasurer who is a board member for

Habitat and all of the other Defendants.  When Plaintiff was initially informed that

her property had been sold to the city, the city treasurer informed Plaintiff that all

the properties had been sold to Habitat.  Defendant Habitat's board, officers,

employees, contractors, and agents have been complicit throughout this improper

1   transfer of property one week prior to the state mandated auction and even got the

2   job of fixing Plaintiff's roof although SFIELD had already approved several

3

4   thousands of dollars in repairs in the months leading up to Plaintiff's illegal

5   eviction.

6

7

8                          **CAUSES OF ACTION**

9                            **COUNT ONE**

10

11   **RACE DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT**

12                        **(42 USC 3601-3619)**

13
        30. Plaintiff realleges and incorporates by reference the preceding
14

15   paragraphs of this Complaint as though set out here word for word.

16      31.  Under the Fair Housing Act, it is unlawful for any person, including a

17

18   municipality or other governmental entity, to "make unavailable or deny[] a

19   dwelling to any person because of race." 42 USC 3604(a).

20      32.  A governmental body violated 42 USC 3604(a) when its neutral policies

21

22   or practices have an unjustified disparate impact on members of a racial group.

23      33.  The Oakland County Defendants' policies caused African-American

24

25   Plaintiff and other mostly African-American homeowners in Southfield to lose

26   their homes through tax foreclosure at a higher rate than non-African-American

27

28   homeowners in Oakland County.

34.  The Oakland County Defendant had no legitimate justification for foreclosing on Plaintiffs property by skipping state mandated steps in the tax foreclosure process by allowing the Southfield Defendants to circumvent state law provisions that disallow transfer to private corporations ahead of the mandated state auction.  Even is there is a legitimate justification, there are less discriminatory alternatives available to the Oakland County Defendant that would achieve the same interests as these policies and practices.

35.  The Oakland County Defendant's policies and practices as alleged herein constitute discrimination in violation of the Fair Housing Act, 42 USC 3604(a.)

36.  Plaintiff is an aggrieved party who has been subjected to the Oakland County Treasurers' conduct as described herein, and will be further injured and irreparably harmed if the tax foreclosure and eviction process is permitted to go forward.

## COUNT TWO

### Illegal Property Transfer in contravention of Michigan Law

37.  During the last week of June, 2016 Defendant Oakland County Treasurer transferred the Plaintiffs property and 44 others to the City of Southfield. The discovery process will show that OAKGOV and the Southfield Defendants

intentionally circumvented Michigan law by transferring the properties to the City of Southfield first – before ultimately transferring the Plaintiff's and the other properties to SNR.

38.   These series of transfers had the effect of circumventing MI-GAP requirements that properties are restricted from being transferred to any other entity aside from a city, county, township or village prior to the public auction and effectively discriminating against Plaintiff.

39.   Under MI. Stat. §211.78(2), "If the state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase for a <u>public purpose</u> any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the minimum bid . . . Upon the request of the foreclosing governmental unit, a city, village, township, or county that purchased property under this subsection shall provide to the foreclosing governmental unit without cost information regarding any subsequent sale or transfer of the property. "

40.   Michigan statute further says that the taking of private property by a public corporation or state agency for transfer to a private entity is not considered a public purpose.  MCLS § 213.23(2).

## COUNT THREE

### VIOLATION OF DUE PROCESS
### (US Const, Am XIV; Const 1963, art 1, § 17; 42 USC 1983)

41.  Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though set out here word by word.

42.  The United States Constitution and the Michigan Constitution prohibit the government from depriving individuals of property interests without due process of the law.

U.S. Const, Am XIV; Const 1963, art 1, §17.

43.  42 USC 1983 allows individuals to bring actions against state actors for deprivations of federal constitutional and statutory rights.

44.  Michigan law allows individuals to bring actions against state actors for deprivation of rights guaranteed by the Michigan Constitution.

45.  The Southfield Defendants' laborious creation of this thinly veiled scheme to do a seemingly innocuous purchase of property in the City of Southfield's name ahead of the public auction had the effect of discriminating against Plaintiff in his quest to redeem his property at the public auction, in violation of his constitutional right to due process.  The OAKGOV and Southfield Defendants failed to provide Plaintiff and other African American homeowners in

Southfield a meaningful opportunity to be heard prior to transferring Plaintiff's property in violation of the Michigan Constitution and the United States Constitution. U.S. Const, Am XIV' Const 1963, art 1, §17.

## COUNT FOUR

### Conspiracy and Fraud in Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. (sec) 1962, and Request for Treble Damages.

46. All Defendants mentioned in this lawsuit engaged in a careful-conspiracy to defraud by collectively agreeing to conceal the intent of the transfer of real property of Plaintiff and other mostly African-American residents of Southfield, MI, to private corporations in contravention of Michigan laws which limit which state of Michigan entities that can circumvent the mandated public auction and purchase tax foreclosed properties ahead of the auction – effectively disenfranchising the United States constitutional rights of the Plaintiff and others similarly situated throughout the City of Southfield.

47. Beginning in June, 2016, and proceeding to now Defendants acting under the color of law all operating through the policies and procedure of OAKGOV and SFIELD created a scheme which successfully transferred tax foreclosed properties of predominantly African -American residents of Southfield, Michigan, to SNR and NON-PROFIT, in a circuitous transaction created to evade

state disclosure requirements for tax reverted properties . NON-PROFIT, according to a letter from Defendant Fred Zorn, is also the sole member of SNR's corporation and the primary funding source of SNR and HABITAT's endeavors related to the Plaintiff's and other illegally transferred properties in 2016, 2017, and 2018, that are the subject of this Complaint based on documentation in Plaintiff's possession. Additionally, Defendants used the services of M.S. Title Agency, LLC as part of the conspiracy.

48. All Defendants contributed to the scheme to defraud African-American Plaintiff and other mostly African-American residents of Southfield  - as the low hanging fruit of Oakland County which has had the highest tax foreclosure rates in the county since 2015 (https://www.bridgemi.com/public-sector/feds-oakland-countys-discriminatory-housing-policies-fuel-segregation) because had OAKGOV not participated than Plaintiff would have had the opportunity to bid on and repurchase her property at the scheduled county auction set for the first and second weeks of July 2016.

49. For the past five years prior to 2016, the Treasurer of Oakland County was aware of how many tax foreclosed properties had been seized by the County and with adequate discovery plaintiff asks the chance to prove all defendants roles in this coordinated conspiracy to defraud plaintiff of his property and Plaintiffs

continued peaceful enjoyment of his property free from illegal speculators

operating outside of Michigan GAPT laws.

50. The Oakland County Tax Tribunal ("Tribunal") provided false hope to

Plaintiff by informing her that she was exempt from taxes for one year -- and then

revoked its approval.  Unbeknownst to Plaintiff, TRIBUNAL had already reversed

its decision.  Additionally Defendant Meisner sits on the HABITAT board and was

present at both Southfield city council sessions when the $1,500,000 seed money

from the NON-PROFIT was discussed.  On   this date, Defendant Meisner, also

made a presentation to the SFIELD city council about tax foreclosures. (See

exhibit 2)

51. As a result of this collective action to defraud Plaintiff and other

mostly African –American homeowners in Southfield facing tax foreclosures,

Defendant Oakland County Treasurer did not allow Southfield residents to take

advantage of the new Michigan law (MCLA § 211.78n (5) ) that gave struggling

Michiganders until June 30th, 2016 to pay the arrears on their property taxes or

enter a payment plan -- dissimilar to how Wayne County allowed it's residents to

take advantage of the law.  (Detroit Free Press link -

https://www.freep.com/story/money/business/michigan/2016/06/30/wayne-county-

treasurer-taxes/86561128/) Plaintiff has suffered injuries indicated above. Treble

damages are therefore appropriate under RICO to punish the conspiratorial nature

of Defendants' planned concealment of improper property transfer of Plaintiffs home to SNR ahead of the public auction.

## COUNT FIVE

### Forcible Illegal Eviction Under State Law

52. Plaintiff hereby states and incorporates paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiff was evicted without notice or legal process. Defendants are thus subject to a claim of damages by Plaintiff for damages, both statutory (MCL 600.2918(1)) and common law, for illegal eviction and consequential damages, including wanton or reckless acts, deliberate egregious and unlawful acts carried out in a way to extract maximum mental stress, embarrassment, and harm to the Plaintiff with a callous disregard to the Plaintiff's home being occupied and not abandoned.

Wherefore, Plaintiff respectfully requests that the Court grant triple damages pursuant to MCL 600.2918 (1) for all damages sustained for destruction of property and loss of enjoyment of home, along with attorney fees, interest and costs.

# COUNT 6

# CONVERSION

Plaintiff hereby state and incorporate paragraph 1 through 53 as if fully set forth herein.

54. Defendants, their employees, friends and third parties instigated removal, destruction of Plaintiff's property and converted or gave away Plaintiff's belongings.

55. Defendants actions constitute common law conversion, and they also violate MCL 600.2919 a.

56. Pursuant to MCL 600.2919a, Plaintiff is entitled to treble damages, as well as attorneys' fees.

57. The acts of Defendants, and each of them, were undertaken in such a violent, dishonest and reprehensible manner that Plaintiff is entitled to exemplary damages.

58. As a result of the Defendants conduct Plaintiff has suffered humiliation, fright, shock, mental anguish, emotional distress, embarrassment and loss of enjoyment of life forcible eviction from the premises and from Defendants attempts to gain control of Plaintiff's property after purchasing it in contravention of Michigan Property laws.

WHEREFORE, Plaintiff demands judgment of Defendants in such amounts as the Court shall find just in the premises for their damages, both compensatory and exemplary, along with their attorney's fees, interest and costs.


59. As a result of the conduct by OAKGOV and Southfield Defendants illustrated in 1 – 51 Plaintiff is subject to irreparably harm in the interest in their family's property. Recognizing the reluctance courts have to reverse tax-foreclosures, Plaintiff asserts that because of the depths of improper, tortuous, and to be determined by this honorable court – possibly illegal nature of the thinly veiled attempts to transfer Plaintiff's property to a private corporation in contravention of Michigan GPTA laws, that this court issue and preliminary injunction preventing SNR and all of the other defendants from transferring Plaintiff and any other Southfield Resident's property until a finding by this honorable court.  The Michigan statute that controls the tax foreclosure process is the General Property Tax Act of 1893 and the plain language of the relevant statute is clear on the process for transferring tax foreclosed prior to the public auction and says "If the state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase for a public purpose any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the

minimum bid." MCL §211.78(2) The Michigan legislature forbids the taking of private property by a public corporation or state agency for transfer to a private entity and says this type of disposition of property is not considered a public purpose. MCLS §213.23(2) Thus Plaintiff will likely ultimately succeed based on the clear language of the statute. *Id*.

60.  Plaintiff asks this courts sincerest consideration of Plaintiffs request for award of a preliminary injunction awaiting the outcome of this case and asks that the court waive any bond as Plaintiff has already incurred many expenses related to attempting to keep the family's home and domicile. *Id*.

61.  Failure to grant the requested injunctive relief will cause irreparable harm to the Plantiff by unjustly enriching the perpetrators and allowing Defendants to profit off the discrimination the Plaintiff suffered.  Further, if Defendant OAKGOV is not restrained from continuing these dubious property transfers to private corporations in advance of the mandated public auction, no property owner is safe in Oakland County because lawlessness and injustice will rule the day in property transactions authorized by the Oakland County Treasurer.  Also Plaintiff will never again have the opportunity to enjoy the property that their family saved money over several years to purchase their property at the height of the economic downturn.  If OAKGOV can be successful in victimizing Plaintiff as well as the 100 other mostly African-American homeowners who are in process of losing (or

have lost) their properties as part of this scheme, no homeowner is safe in Oakland County as long as these draconian policies are allowed to continue.  There is no adequate remedy at law for this harm because the Plaintiff's property is unique and has become a treasured asset for Plaintiff and his family.  Further, Plaintiff, filed this lawsuit in an attempt to preserve the interest in their home, several months shy of the three year statute-of-limitations on filing an action in federal court for a harm that occurred.

62.  The continuing, irreparable harm caused by the Defendants discriminatory actions and the toll of facing eviction and/or losing their ancestral home, far outweigh any possible harm that granting the injunctive relief to the Plaintiff might cause Defendants.  Preliminarily enjoining Defendants' from continuing the destructive practice of allowing property transfers to private corporations ahead of the public auction will right-size policies and operating procedures affecting African-Americans in Oakland County especially.

63.  The lifelong harm caused to Plaintiff by Defendants's discrimination is irreparable and can never be adequately compensated with money.  This harm has diminished the Plaintiff's standing in the community as a result of this tax foreclosure, and totally disrupted Plaintiff's family's security – especially after spending thousands of dollars to acquire, repair, and make the subject property their home.  This far outweighs any monetary cost incurred by Defendants.

Importantly, Defendants could choose to allocate its finances more strategically and help their African-American Oakland County neighbors continue to stay in their homes and businesses.

64. The injunctive relief that Plaintiff requests will promote the public interest in that it will slowly begin to show errant County Treasurers and private corporations with a property-speculation bent that breaking the laws at all costs in wrong. Equal opportunity is at the core of this case, is at the core of American ideology, and is clearly in the public interest.

### **Punitive Damages**

65. The conduct of Defendants described above is outrageous. Defendants' conduct demonstrates a reckless indifference to Plaintiff's and other African-Americans in Southfield and their right to the quiet enjoyment of their homes unmolested from profiteers operating outside of the laws of the State of Michigan. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays that this Court provide:

1. Injunctive and equitable relief as the Court deems appropriate including:

1
2
3
    Declaring that OAKGOV and Southfield Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 USC 3601-3691

4
5
    Declaring that OAKGOV and Southfield Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 USC 3601-3691;

6
7
8
9
10
11
12
13
14
15
    Enjoining the Oakland County Treasurer from continuing the practice of allowing private corporations to purchase properties in tax foreclosure ahead of the public auction by purchasing them through a city, township, or village effectively preventing homeowners from bidding on and re-purchasing their property. Also require the Oakland County Treasurer to create rules that place harsh penalties of $100,000 per parcel on cities and private corporations that collude to transfer properties ahead of the public auction;

16
17
18
19
20
21
22
    Enjoining the Defendants in this lawsuit to return Plaintiff to the position she was in before her life and property was touched by this conspiracy and as a result of the unspeakable harms the Defendants visited upon the Plaintiff that this honorable Court award treble exemplary and compensatory damages allowable under MCL 600.2918 and MCL 600.2919(a).

23
24
25
26
    Enjoining the Oakland County Treasurer to take all necessary and appropriate steps to correct the continuing effects of their past and present discriminatory practices;

27
28

1   Requiring such action by the Oakland County Treasurer and Southfield

2   Defendants as may be necessary to restore Plaintiff, as an aggrieved party to the

3

4   Defendants discriminatory housing practices, to the position Plaintiff would have

5   occupied but for such discriminatory conduct; and

6   Requiring Defendant OAKGOV to reverse the tax foreclosure against Plaintiff

7

8   at no cost as a result of the illegal actions outlined above in this conspiracy and

9   provide marketable title free of encumbrances post-haste to Plaintiff,

10

11   Requiring Defendant corporations and SNR to provide an immediate forensic

12   accounting to the Court of all monies received and expended to any employees,

13

14   agents, or contractors related to Plaintiff's and the other 116+ properties

15   transferred to SNR, SFIELD, and NON-PROFIT in 2016, 2017, and 2018,

16   Requiring NON-PROFIT to provide documentation of all property sales and

17

18   distributions of monies, properties, and contracts related to the 2016, 2017, and

19   2018 property transfers; and to rescind and revert all transfers that constitute

20

21   improper self-dealing, wasting charitable assets,  or violating the Internal Revenue

22   Code where NON-PROFIT and other named Defendants' board members,

23   officials, employees, and agents benefitted from private and personal inurements

24

25   that were not properly disclosed to the IRS under 501 c3 rules related to the

26   disposition of assets by NON PROFIT to any employees, agents, board members,

27   or other named Defendants.

28

Requiring Defendant OAKGOV to immediately discontinue the policy of transferring tax foreclosed properties to private corporations in contravention of Michigan (MCLA § 213.23(2) ) law;

Requiring an immediate injunction on Defendant SFIELD and all of its officials, agents, and employees including the Mayor, City Administrator, City Attorney, City Council Members, Treasurer, Code Enforcement, and Clerk; Oakland County Habitat for Humanity; the NON-PROFIT and its officials, agents, and employees; SNR and its officials, agents and employees, M. S. Title Agency, LLC. and its officials, agents and employees, and GTJ Consulting, LLC. and JBS Disposal, LLC. requiring them to cease usurping the rights of African-American Southfield residents to bid on properties at the public auction and repurchase their homes at the true cost of the taxes owing plus fees as allowable under Michigan law;

1. Compelling Defendant OAKGOV and all other Defendants to return Plaintiff's property to the tax roles by any means necessary; and

2. Compensatory and exemplary damages to be paid to Plaintiff, according to proof at trial;

3. Punitive damages as the court deems appropriate;

4. Costs and attorneys fees of this lawsuit, with interest;

5. Any other relief as the court deems appropriate.

1
2
3
4
5

## PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS

## MATTER ON ALL ISSUES SO TRIABLE

6
7
8

Plaintiff, Marion Sinclair, pursuant to MCR 2.508, demand a trial by jury in

the above-captioned matter.

9
10
11
12
13
14
15
16
17

Respectfully submitted,

12/21/2018

MARION SINCLAIR

*Marion Sinclair*

PROSE Plaintiff
25523 Grodan Dr., Apt 220
Southfield, MI  48033
313-970-7548
Plaintiff email address: N/A

18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT

# 1

STATE OF MICHIGAN
DEPARTMENT OF LICENSING & REGULATORY AFFAIRS
MICHIGAN ADMINISTRATIVE HEARING SYSTEM
MICHIGAN TAX TRIBUNAL
SMALL CLAIMS DIVISION

Marion Sinclair,
     Petitioner,

v

City of Southfield,
     Respondent.

MTT Docket No. 411863

<u>Tribunal Judge Presiding</u>
Kimbal R. Smith, III

## FINAL OPINION AND JUDGMENT

The Tribunal, having given due consideration to the file in the above-captioned case, finds:

1. The Tribunal issued a Proposed Opinion and Judgment on July 18, 2011. The Proposed Opinion and Judgment states, in pertinent part, "[t]he parties have 20 days from date of entry of this Proposed Opinion and Judgment to file any written exceptions to the Proposed Opinion and Judgment."

2. Neither party has filed exceptions to the Proposed Opinion and Judgment.

3. The Tribunal adopts the Proposed Opinion and Judgment as the Tribunal's final decision in this case.  See MCL 205.726.

IT IS SO ORDERED.

MICHIGAN TAX TRIBUNAL

Entered:   **OCT 1 9 2011**   By _____
ndg

## STATE OF MICHIGAN
### DEPARTMENT OF LICENSING & REGULATORY AFFAIRS
### MICHIGAN ADMINISTRATIVE HEARINGS SYSTEM

Marion Sinclair,
      Petitioner,

v

City of Southfield,
      Respondent.

_____/

MICHIGAN TAX TRIBUNAL
SMALL CLAIMS DIVISION
MTT Docket No. 0411863

Case Type: Poverty Exemption

## PROPOSED OPINION AND JUDGMENT

Personnel Presiding:      Thomas S. Fredericks, Hearing Referee
Location of Hearing:      Oakland County Equalization Dept.
Date of Hearing:      June 8, 2011
Petitioner's Representative:      Marion Sinclair
Respondent's Representative:      Failed to Appear

### PROPOSED JUDGMENT

The subject property is entitled to a poverty exemption pursuant to MCL 211.7u of 100% for the tax years at issue. As such, the subject property's taxable value (TV) for the tax years at issue shall be as follows:

**Parcel Number: 76-24-25-108-006**

| Year | TV |
|------|--------|
| 2010 | $0.00 |

### PROCEDURAL HISTORY

Petitioner applied to the local Board of Review for a poverty exemption on July 20, 2010, and filed this appeal with the Tribunal on September 1, 2010.

Petitioner has not submitted any documentation or otherwise indicate that she requested a poverty exemption from Respondent's March 2011 Board of Review and, as such, the property's assessment for purposes of considering the granting of a poverty exemption for the 2011 tax year is not included in this proceeding, as provided by MCL 205.737(5)(b).

### ISSUES AND APPLICABLE LAW

The issues in this matter are:

**MTT Docket No.** 0411863
**Proposed Opinion and Judgment, Page 2 of 5**

Whether Petitioner's property qualifies for a property tax exemption due to reasons of poverty exemption pursuant to MCL 211.7u.

"In general, tax exemption statutes are to be strictly construed in favor of the taxing authority." *Michigan United Conservation Clubs v Lansing Twp*, 423 Mich 661, 664; 378 NW2d 737 (1985); *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 753-754; 298 NW2d 422 (1980). The petitioner must prove, by a preponderance of the evidence, that it is entitled to an exemption. *ProMed Healthcare v Kalamazoo*, 249 Mich App 490; 644 NW2d 47 (2002).

MCL 211.7u provides in pertinent part:

(1) The principal residence of persons, who, in the judgment of the supervisor and board of review, by reason of poverty, are unable to contribute toward the public charges is eligible for exemption in whole or in part from taxation under this act.  This section does not apply to the property of a corporation.

(2) To be eligible under this section, a person shall do all of the following on an annual basis…

(e) Meet the federal poverty guidelines updated annually in the federal register by the United States department of health and human services under authority of section 673 of subtitle B of title VI of the omnibus budget reconciliation act of the 1981, Public Law 97-35, 42 U.S.C. 9902, or alternative guidelines adopted by the governing body of the local assessing unit provided the alternative guidelines do not provide income eligibility requirements less than the federal guidelines.

## SUMMARY OF EVIDENCE

A. *Petitioner's Evidence*

Petitioner's Contentions of TCV, SEV and TV:

**Parcel Number:** 76-24-25-108-006

| Year | TCV | SEV | TV |
|------|-----|-----|------|
| 2010 | N/A | N/A | $0.00 |

Petitioner offered the following exhibits:

1. Property Tax Appeal Form.
2. Letter received on April 7, 2011.
3. Board of Review Decision.

**MTT Docket No.** 0411863
**Proposed Opinion and Judgment, Page 3 of 5**

    4. Notice of Property Tax Forfeiture.
    5. 2010 IRS 1040 Income Tax Return.

Based on the pleadings, the admitted exhibits, and sworn testimony, if any, Petitioner claims that she is entitled to a poverty exemption.

B. *Respondent's Evidence*

The property's TCV, SEV and TV, as confirmed by Board of Review, for the tax years at issue:

**Parcel Number:** 76-24-25-108-006

| Year | TCV | SEV | TV |
|------|------|--------|--------|
| 2010 | $59,790 | $29,895 | $40,980 |

Respondent offered the following exhibits which were admitted into evidence unless indicated otherwise:

    1. Property record card.
    2. Board of Review Decision
    3. Poverty Exemption Worksheet.
    4. City of Southfield Application for Homestead  Property Tax Relief

Based on the pleadings, the admitted exhibits, and sworn testimony, if any, Respondent claims that Petitioner is not entitled to a poverty exemption.

## FINDINGS OF FACT

The following facts were proven by a preponderance of the evidence:

    1. The subject property is located at 17357 New Hampshire Drive in the county of Oakland, is classified as residential real and has a principal residence exemption of 100% for the tax years at issue.
    2. Petitioner is an owner of the subject property.
    3. The number of persons residing in the subject household for the year at issue was one.
    4. The "federal poverty guidelines" or alternative guidelines adopted by Respondent for the subject household for the tax year at issue provide for an income level of $ 12,960.  Petitioner's annual household income pursuant to MCL 211.7u for the years at issue is $ 8,967.
    5. Respondent has adopted an "asset test" that provides for the maximum value household assets of $ 30,000 and the value of Petitioner's household assets is less than $ 30,000.

**MTT Docket No.** 0411863
**Proposed Opinion and Judgment, Page 4 of 5**

## CONCLUSIONS OF LAW

1. Petitioner has proven, by a preponderance of the evidence, that the subject property is qualified to receive a poverty exemption, under MCL 211.7u, for the tax years at issue.
2. The following authority and reasoned opinion supports this burden of proof determination:

Petitioner submitted affirmative evidence to establish or, more appropriately, verify her income and assets for the 2010 tax year. Both her income and assets qualify her for a poverty exemption under Respondent's guidelines for the 2010 tax year.

3. Based upon the findings of fact and conclusions of law, the property's poverty exemption for the tax years at issue is as listed in the Proposed Judgment Section of this Proposed Opinion and Judgment.

## EXCEPTIONS

This Proposed Opinion and Judgment (POJ) was prepared by the Michigan Administrative Hearings System. The parties have 20 days from date of entry of this POJ to notify the Tribunal in writing if they do not agree with the POJ and state in writing why they do not agree with the POJ (i.e., exceptions). The exceptions are *limited* to the evidence submitted prior to or at the hearing and any matter addressed in the POJ. There is no fee for filing exceptions.

A copy of a party's written exceptions *must* be sent to the opposing party and the opposing party has 14 days from the date the exceptions were sent to that party to file a written response to the exceptions.

After expiration of the time period for the opposing party to file a response to the exceptions, the Tribunal will review the case file, the POJ, the exceptions and responses, if any, and:

a. Issue a Final Opinion and Judgment adopting the POJ as a Final Decision.
b. Issue a Final Opinion and Judgment modifying the POJ and adopting the Modified Proposed Opinion and Judgment as a Final Decision.
c. Issue an Order vacating the POJ and ordering a rehearing or such other action as is necessary and appropriate.

Date Signed: _____   By _____

**MTT Docket No.** 0411863
**Proposed Opinion and Judgment, Page 5 of 5**

Date Entered by Tribunal:    JUL 1 8 2011

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Helping Michigan's Hardest-Hit Homeowners
A step forward when you're a step behind

**Decline Notification**

March 4, 2014
Marion Sinclair
17357 New Hampshire Dr
Southfield, MI 48075

MHA Case Number: 84573
Mortgage Account Number: _____

Dear Marion Sinclair

Step Forward Michigan has reviewed your application for all programs offered through Michigan's Hardest Hit Funds®. At this time we have determined you to be ineligible for assistance for the following applicable reason(s).

Acquired property without the ability to sustain payments.

If you have any program questions, please refer to the **FAQ** (Frequently Asked Questions) on our web site at www.stepforwardmichigan.org. If you believe you have been wrongfully denied assistance, please refer to **Contact Us** on our web site.

If your circumstances change, you may reapply for the Hardest Hit Funds® program on our website by clicking **LOGIN**. You must update your information before printing and submit the upated application with all supporting documentation necessary to overturn the declination reasons.

Michigan Homeowner Assistance Nonprofit Housing Corporation (MHA) is acting through the Michigan State Housing Development Authority

Michigan Homeowner Assistance Nonprofit Housing Corporation (MHA)

MSHDA

IN THE

Step Forward # from Joanne
866-946-7432
to check Status of ap

Joanne Hill brookdine
248-858-5407
Community & Home Improvement, Oakland County
250 Elizabeth Lake Rd
Suite 1900
Pontiac MI 48341
(248) 858-1891
Filed ap for Step Forward
F9-5-14
Spoke w/Carlos at Step Forward
refile update hardship letter
what happened causing non Pymt

2.

26

# EXHIBIT

2/16

# SOUTHFIELD HOME IMPROVEMENT PROGRAM
### 26000 Evergreen Road, Southfield, MI 48076
### (248) 796-4177 or FAX (248) 796-4105

July 26, 2016

Dear Southfield Home Improvement Program Applicant:

Your name is within the top five on the waiting list and I will be contacting you to schedule an interview after receiving the application. **Focus of repairs will only be roof, furnace, hot water tanks, and electrical hazards**.

In order to prepare your application for processing, please gather the following materials to be submitted at the time of your interview. **Please complete the enclosed application and mail it back by or before <u>Friday, August 5, 2016</u>.**

**PROOF OF INCOME**
1. Copies of the most recent federal income tax returns and W-2 for every adult household member.
2. Copies of three recent paycheck stubs for each employed member of the household.
3. In cases of self-employment, submit copies of income tax returns from the past two years.
4. Copies of documents which verify any monthly benefits that household members may receive such as pension or social security payments.

**PROOF OF OWNERSHIP**
1. A copy of your Warranty Deed or Quit Claim Deed.

**PROOF OF INSURANCE**
1. A copy of your homeowners insurance statement verifying that your insurance is current.

**PROOF OF ASSETS**
1. Copies of the most recent monthly statements for checking and savings accounts.
2. Copies of written reports which verify any other assets that household members may own such as an IRA, stocks, or bonds.
3. Copy of appraisal done on the home if one has been completed within the last three years.

**VERIFICATION OF MORTGAGE**
1. A copy of the most recent monthly statement or payment stub.

**CREDIT REPORT**
1. A copy of your credit report from one of the credit bureau.

**Please bring these items with you to the interview.**

*If you are no longer interested in the Southfield Home Improvement Program or if you need assistance, please feel free to call me at (248) 796-4177.*

Marion Sinclair                    p 1 of 2
17357 New Hampshire Dr
Southfield MI 48075
Nov. 3, 2015  ~~October 28, 2015~~
(313) 970-1259


Mr. Ken Siver, Mayor ~~To Be~~
18410 Magnolia Pkwy
Southfield MI 48075

Dear ~~Mr.~~ Mayor Siver,

I spoke with you as I was entering
my driveway on New Hampshire, a dead
end street. I told you I planned to
vote for you.

You were busy with your campaign,
I know. Maybe ~~after~~ since election you can
help me. If things continue on the path
they're going, my home will be taken in 2016.

I am 70 and will be 71 in December 2015.
Over $23,000 is owed in property taxes.
And, my roof won't make it over the
winter. I've tried agencies but no help.
Recently, I tried Reverse Mortgage and it
fell through. They said the $72,000 appraisal
needs to be at least $125,000.

Marion Sinclair ~~10-28-15~~ 11-3-15 p 2 of 2

I don't want to leave. Please guide me.

Thank you for your help.

Sincerely

Marion

Congratulations!!

Mayor Sives, much success ahead.

Marion Sinclair
17357 New Hampshire Dr
Southfield MI 48075
(313) 970-1259
July 11, 2016

Mayor Ken Siver
City of Southfield
18410 Magnolia Pkwy
Southfield MI 48075

Page 1 of 5

Dear Mayor Siver,

I wish I didn't need to bother you again; Unfortunately, here I am again, trying to save my home. It seems like I no win for me, but I'm still trying one more time.

Southfield has or is taking over my home from Andrew Meisner and his crew, Jody DeFoe and Christy Howard. It is my understanding they will renovate and sell it, possibly through Habitat For Humanity.

I have spoken with Mr. Rick Lampe. He said my home is on the list of houses Southfield will be taking possession of, and they will be sending notices

Marion Sinclair          July 11, 2016          Page 2 of 5

within a week or two. Before Meisner foreclosed
On my home, Mr. Lampi said he would have my
roof repaired if I could get a payment plan with
Andrew Meisner. Why can't some arrangement
be made with Southfield.

Someone thought Habitat For Humanity may get
the houses. It doesn't matter who gets possession.
If it's going to be repaired, why can't it be done
for me.

Once repaired, I can get a reverse mortgage. I have
contacted several. Give one 1½ years to arrange for
timely payment of taxes through the loan. They
have a program available that will pay
taxes and insurance through their agency.
If there's any problem, I will walk away knowing
I was given a real chance to keep my home.
Single and 71, how will I be able to purchase
another home if this one is taken from me?

Southfield has programs to aide homeowners,
why not me? Why replace one person in need
with another? It's not as if I've never paid

Marion Sinclair   July 11, 2016          Page 3 of 5

property taxes in Michigan. When I owned a home in Detroit, I did. Step Forward Michigan refused my request. They said I never paid taxes. Maybe I didn't here, but I did in Detroit from 1974-2007. Occasionally I had problems, however, when employed payments were resumed.

Once you tried to help me get my roof repaired through Mr. Lampi. I have been trying to get the roof repaired for a while in order to qualify for a reverse mortgage. At one time, 11-13-14, I was supposed to be last on a list of about 20 homeowners requesting assistance. I spoke with Ms. Lorna, 248-796-4177. Nothing came of that contact.

With one reverse mortgage application, there was even a HUD appraisal. It fell through in September 2016 because of the roof. County taxes were going to be paid through that program and I wouldn't be in this mess.

Since Southfield has a program to repair homes to keep residents in their home, why

Marion Sinclair    July 11, 2016    Page 4 of 5

can't they repair mine. Where is the assistance for me, a 71 year old female?

If Habitat For Humanity gets control of my home, they help those in need. I'm in need, I'm already here, and don't want to leave if I don't have to. Why, Mr. Siver, can't I be the one helped? I've been here 7½ years.

In June I was frightened by a company breaking locks off my door. They were told by Misner's group that the property was vacant. They were going to put a lock box on the door. I was in bed and scared. Oakland County sent me no correspondence after foreclosure. I have spoken with Andrew Misner and he hates me although he has never met me face to face.

Thank you for referring me to possible housing relocation, but the so called example I was shown at McDonnell was

Marion Sinclair      July 11, 2016        Page 5 of 5

like a small prison cell. It was claustrophobic.
There was hardly enough room to turn around
in.

Will you look into my situation, again;
And see if Anything can be done to keep me
in my home?.

Enclosed is a letter sent to Andrew Meisner
and a copy was sent to Judge Nanci J. Grant
I received no response

Somebody, somewhere can help me out. I
hope it's you.

I realize you're very busy with matters of
the City and I'm just a small pebble
in the rock pile. Please pick me up.

Thank you Mayor Siver for everything,

Marion
Copies enclosed

Page 1 of 6

Marion Sinclair
17357 New Hampshire Dr.
Southfield MI 48075
(313) 970-1259
~~July 29, 2016~~ August 4, 2016

Mr. Ken Siver
Mayor of Southfield
and
Mr Fred Zorn
City Administrator of Southfield
18410 Magnolia Pkwy
Southfield MI 48075

Dear Mayor Siver and Administrator Zorn,

Thank you for coming to my home to see if anything can be done to rectify my situation. You are the only ones who cared enough to investigate my problem.

I understand what you said about needing to repairs make the house whole. Those improvements are going to be made and someone will get the house. Again, I ask, why not me? It's not going to be torn down.

Marion Sinclair July 27, 2016 Page 2 of 6

Gentlemen, I'm asking that you make me a human project. You have many wealthy friends. How about a donation account where money can be sent to pay taxes, insurance, and repairs, like they do on "go fund me."

Once that is done, I can get a reverse mortgage. They have a program that will pay future taxes and insurance through their agency. There would be no more problems with taxes. I realize there are ridiculous fees for reverse mortgages, but I'm losing the house anyway and getting nothing.

At least with a reverse mortgage, I get some benefit from the home and a place to live. Walking away now, I get zero. I owe no mortgage. Your knowledge and expertise are needed to keep me here. You can do it, I cannot.

Even to move, I need money for movers, storage, first and last months rent, furniture cleaning for mold, and other necessities. How do I get that done with nothing coming from the home? It is all I have.

You are Southfield's Finest, The Creme of The Crop,
The Elite. Who better can I go to than you?
If I am to stay here, You too are whom I
must rely. Please gentlemen make it happen.
I'm asking, Mayor Siver and Administrator Zorn;
who do I turn to if not you?

I like it here and don't want to move. A high
rise is not for me. My home is a good size for me,
not too large, not too small. Neighbors are wonderful;
we look out for eachother. It's peaceful and I
like living at the end of the block. I told them
about my situation and they are praying for me.

Make this another beautiful Southfield home.
When I got this house, I said, "This house
looks like nobody loved it." Inside it was an
ugly mess. Paint and new carpet made it
liveable. When the roof leak was discovered,
there was no money left for replacement.
I put in those big beautiful plants on the
side of the house toward Southfield Road
myself.

Marion Sinclair     July 11, 2016          Page 1 of 6

Attempts have been made to get roofing done.
After several reverse mortgage contacts, denial
due to the needed roof repair and Step Forward
Michigan denial, I'm still trying. Southfield
and Oakland agencies have also been contacted.

Finally, I am in contact with you two gentlemen
who can keep me at home. You have the power.
You have the means. Please make an extra
extra effort.

Even though I am a 71 year old single female,
I don't want to be packed, like sardines,
in a high rise, seeing only old people like me.
Let me live these last years in the world,
with a lawn, trees, plants, peace and quiet,
with young and old. I want to come and go
as I please, have room for family and friends
to visit.

People keep telling me there is help out there for
me; I can't tell. Charity organizations haven't
worked for me. Once I purchased a book
which guaranteed assistance by contacting those
listed. After sending many letters, all were
refusals. It's as if donations go to top

Marion Kreuter                August 4,

organization executives and not enough to those designated. The book was such a scam; I later received a small cash settlement. The government filed a class action suit against them.

What is wrong with me? Why must someone else get my home? Because I'm not wealthy, I don't deserve to have a home? It's done for others. Once again, I ask, why not me?

Yesterday, July 28, I received an application from Southfield Home Improvement Program. A copy is enclosed. A reply is requested by August 5, 2016. I don't even know who owns my home. What do you want me to do with the application? I have no insurance.

I realize you are very busy men. It is not easy running a big city. Have it in your hearts, Mr Siver and Mr Zorn to help me. Don't put me out. Help me stay. Please. I know you can. Don't make this another dead end for me. It's not necessary for me to seek "Help me Hank" or "Charlie LeDuff." I have two men, you, who can make it happen.

Marion Sinclair

Maybe I can move to Woodbridge, while work is being done to the house. It will be wonderful feeling proud As I come home.

With Sincere Thanks

Marion

Copies enclosed

Marion Sinclair                        Page 1 of 4
17357 New Hampshire Dr
Southfield MI 48075
June 2__, 2016
(313)970-1259


Andrew E. Meisner
Oakland County Treasurer
1200 N. Telegraph Rd
Bldg 12E, First Floor
Pontiac MI 48341


Andrew Meisner:

You have taken my home. You and your
duo, Jody Weissler DeFoe backed up by
Christy Howard, I believe, are racists.
I don't believe you three would have
spoken to or treated a 71 year old
white person the way you have done me.

When I finally had a chance to repair
my house and get a reverse mortgage to
pay your taxes, you refused my request.
You even hung up on me. When I visit
your office, I only see token Black people
working there. I can't remember seeing
more than 2. So, why should you help
this one save her home?

Marion Sinclair 6-25-16 page 2 of 4

You and your agency say you want to save our homes. You appear to be liars. How am I supposed to pay $1700, plus over $8000, plus over $750 monthly. You know my income is $813 a month. Save my home, RIGHT! How can you save my home like that?

As long as I dealt with other representatives in your office, things moved along. My mistake was requesting contact with you after meeting with DeFoe. She jacked payments up from $50 monthly to $170. This is the first year I fell behind in payments.

On my last attempt to meet and save my home, Howard talked to me in front of everyone in the waiting room and other employees. All could hear our conversation. She stated my situation for anyone to hear, including your refusal to grant me a payment plan.

Howard told me I could contact Judge Nanci Grant, stating "She may have sympathy for you." There was no

Marion Sinclair 6-2-16    page 3 of 4

respect. She only gave me the info
for possible help after I asked for it.

How can you say you want to keep
us in our homes when you are doing
everything you can to put me out?

It's a shame you are in that position.
You don't deserve it. Your workers,
DeFoe and Howard, can only be as good
and compassionate as you. When it
comes down to it, you are the boss,
the leader. Those two follow your
example. Maybe one day, as Howard
said to me, you'll need someone's
"sympathy" and feel what I feel now.

Well, Congratulations, King Meisner!
One down. How many more to go?

I don't hate you. I just wish
someone held that position who really
wants to help ALL people in their
county stay in their homes. Obviously,
I'm not one of those people. However,
that's life. Yours is one more hurdle
I must leap. In so turn to, there are.

Marion Sinclair 6-2-16    page 4 of 4

people like you, De Foe, and Howard,
all over the world. Too bad one
of the other reps I have dealt
with don't have your position.


Regretfully,



Marion Sinclair

I am a human being. Treat me like one

**Note** You sent men to change locks on the doors.
You said the home was vacant. They were from
Property Preservation Specialists, GTJ,
800-385-0563, www.GTJonline.com. Why
would you do that. Auctions are in
August 2016. Now I find its moved up to July 19,
2016. They said I'm the second home today
that was occupied but was listed vacant.
You're not a very good man Mr. Andrew
"Ebenezer Scrooge" Meisner. Maybe someday
something like this will happen to you.
Miss Christy Howard wouldn't even give
me the courtesy of speaking with me today
6-2-16. Like boss, like representatives.

# EXHIBIT

# 3/6



**ANDREW E MEISNER**
**OAKLAND COUNTY TREASURER**
1200 NORTH TELEGRAPH ROAD, PONTIAC, MICHIGAN 48341

**Parcel Identification No:** 76   24-25-108-006

**Taxpayer:** MARION SINCLAIR

**Property Address:** 17357 NEW HAMPSHIRE DR SOUTHFIELD MI 48075-2754

**Property Description:**

T1N,R10E,SEC 25 203-4 SOUTHAMPTON SUB. LOTS 203 & 204

**Taxable Value:**      $31,450

**Statement**
**Statement No:**   5080
**Page:**      1 of   1
**Date:**  January 28, 2016

**Tax Payments:**

|  | ----------------- Due ----------------- | | | | |
| Year | Tax | Interest & Fees | Total | Sale No. | Status |
|---|---|---|---|---|---|
| 2007 | $0.00 | $0.00 | $0.00 |  | Paid |
| 2009 | $2,430.78 | $2,892.77 | $5,323.55 |  | Withheld-Extension Granted. Partial Payments allowed. |
| 2010 | $1,624.05 | $1,776.61 | $3,400.66 |  | Withheld-Extension Granted. Partial Payments allowed. |
| 2011 | $2,787.70 | $2,367.65 | $5,155.35 |  | Withheld-Extension Granted. Partial Payments allowed. |
| 2012 | $2,522.01 | $1,711.76 | $4,233.77 |  | Withheld-Extension Granted. Partial Payments allowed. |
| 2013 | $2,505.06 | $1,251.03 | $3,756.09 |  | Delinquent - partial payment allowed |
| 2014 | $2,558.22 | $424.32 | $2,982.54 |  | Delinquent - partial payment allowed |

**Total**                                              $24,851.96

**Statement Total**                    $24,851.96   If paid in February

RC            MARION
              SINCLAIR
              17357 NEW HAMPSHIRE DR
              SOUTHFIELD MI 48075-2754            (248) 858-0612

**17357 NEW HAMPSHIRE** SOUTHFIELD, MI 48075   (Property Address)

Parcel Number: 76-24-25-108-006



1   2    1 Image / 1 Sketch

**Property Owner:** SOUTHFIELD NEIGHBORHOOD REVITALIZAT

*Summary Information*

> Residential Building Summary

> 25 Invoices Found, Amount Due: 24.00

> Assessed Value: $0 | Taxable Value: $0
> Property Tax information found
> 24 Building Department records found

## Owner and Taxpayer Information

| Owner | | Taxpayer | |
|---|---|---|---|
| | SOUTHFIELD NEIGHBORHOOD REVITALIZAT 19785 W 12 MILE RD # 404 SOUTHFIELD, MI 48076 | | SEE OWNER INFORMATION |

## General Information for Tax Year 2018

| | | | |
|---|---|---|---|
| **Property Class** | 401 - RESIDENTIAL | **Unit** | 76 CITY OF SOUTHFIELD |
| **School District** | Southfield | **Assessed Value** | $0 |
| **MAP #** | Not Available Right | **Taxable Value** | $0 |
| **USER NUM IDX** | 0 | **State Equalized Value** | $0 |
| **USER ALPHA 1** | Not Available | **Date of Last Name Change** | Not Available |
| **USER ALPHA 3** | Not Available | **Notes** | Not Available |
| **Historical District** | Not Available | **Census Block Group** | Not Available |
| **USER ALPHA 2** | Not Available | **Exemption** | Not Available |

### Principal Residence Exemption Information

**Homestead Date**    02/21/2009

| Principal Residence Exemption | June 1st | Final |
|---|---|---|
| 2019 | 0.0000 % | . |
| 2018 | 0.0000 % | 0.0000 % |

### Previous Year Information

| Year | SEV | Taxable | Assessed |
|---|---|---|---|
| 2017 | $0 | $0 | $0 |
| 2016 | $42,770 | $42,770 | $32,040 |
| 2015 | $41,090 | $41,090 | $31,950 |

## Land Information

| | | | |
|---|---|---|---|
| **Zoning Code** | Not Available | **Total Acres** | 0.242 |
| **Land Value** | $0 | **Land Improvements** | $2,699 |
| **Renaissance Zone** | No | **Renaissance Zone Expiration Date** | No Data to Display |
| **ECF Neighborhood** | 425A NEIGHBORHOOD 25A | **Mortgage Code** | Not Available |
| **Lot Dimensions/Comments** | Not Available | **Neighborhood Enterprise Zone** | No |

| | Frontage | Depth |
|---|---|---|
| Lot 1 | 80.00 ft | 132.00 ft |
| | **Total Frontage: 80.00 ft** | **Average Depth: 132.00 ft** |

## Legal Description

Classification: 450 Residential 25 Residential

## Land Division Act Information

| Date of Last Split/Combine | | **Number of Splits Left** | 0 |
|---|---|---|---|
| **Date Form Filed** | | **Unallocated Div.s of Parent** | 0 |
| **Date Created** | | **Unallocated Div.s Transferred** | 0 |
| **Acreage of Parent** | 0.00 | **Rights Were Transferred** | |
| **Split Number** | 0 | **Courtesy Split** | |
| **Parent Parcel** | | | |

## Sale History

| Sale Date | Sale Price | Instrument | Grantor | Grantee | Terms of Sale | LiberPage |
|---|---|---|---|---|---|---|
| 09/22/2016 | $1.00 | QC | CITY OF SOUTHFIELD | SOUTHFIELD NEIGHBORHOOD REVITALIZAT | NOT REPRESENTATIVE | 49872/878 |
| 07/07/2016 | $28,425.00 | CTY | OAKLAND COUNTY TREASURER | CITY OF SOUTHFIELD | NOT REPRESENTATIVE | 49564/616 |
| 02/03/2016 | $0.00 | AFF | SINCLAIR, MARION | OAKLAND COUNTY TREASURER | COUNTY TAX SALE | 49465/731 |
| 01/27/2009 | $1.00 | QC | SINCLAIR, GEORGE | SINCLAIR, MARION | BEW'N RELATED ENTITY | 40858/584 |
| 01/23/2009 | $7,000.00 | CD | US BANK | SINCLAIR, GEORGE | NOT REPRESENTATIVE | 40865/891 |
| 02/26/2008 | $136,740.00 | SD | SMALLWOOD, KENNETH & LILLIAN | US BANK | SHERIFF'S DEED | 40042/821 |
| 05/22/2003 | $100.00 | QC | SMALLWOOD, KENNETH & LILLIAN | KENNETH/LILLIAN & MARK | BEW'N RELATED ENTITY | 29783/159 |

## Building Information - 1666 sq ft RANCH Resident at:

### General

| | | | |
|---|---|---|---|
| **Floor Area** | 1,666 sq ft | **Estimated TCV** | $79,114 |
| **Garage Area** | 280 sq ft | **Basement Area** | 0 sq ft |
| **Foundation Size** | 1,666 sq ft | | |
| **Year Built** | 1950 | **Year Remodeled** | 1957 |
| **Occupancy** | Single Family | **Class** | C |
| **Effective Age** | 32 yrs | **Tri-Level** | No |
| **Percent Complete** | 0% | **Heat** | Forced Hot Water |
| **AC w/Separate Ducts** | No | **Wood Stove Add-on** | No |
| **Basement Rooms** | 0 | **Water** | Not Available |
| **1st Floor Rooms** | 0 | **Sewer** | Not Available |
| **2nd Floor Rooms** | 0 | **Style** | RANCH |
| **Bedrooms** | 0 | | |

### Area Detail - Basic Building Areas

| Height | Foundation | Exterior | Area Station | |
|---|---|---|---|---|
| 1 Story | Slab | Brick | 1,666 sq ft | 1 Story |

### Basement Finish

| | | | |
|---|---|---|---|
| **Recreation** | 0 sq ft | **Recreation % Good** | 0% |
| **Living Area** | 0 sq ft | **Living Area % Good** | 0% |
| **Walk Out Doors** | 0 | **No Concrete Floor Area** | 0 sq ft |

### Plumbing Information

| | | | |
|---|---|---|---|
| **3 Fixture Bath** | 2 | **Ceramic Tile Wainscoat** | 1 |

### Fireplace Information

| | |
|---|---|
| **Exterior 1 Story** | 1 |

### Garage Information

| | | | |
|---|---|---|---|
| **Area** | 280 sq ft | **Exterior** | Siding |
| **Foundation** | 42 Inch | **Common Wall** | 1.5 Wall |
| **Year Built** | 1955 | **Finished** | No |
| **Auto Doors** | 0 | **Mech Doors** | 0 |

### Porch Information

| | | | |
|---|---|---|---|
| **CCP (1 Story)** | 112 sq ft | **Foundation** | Standard |

Record Details | Oakland-Southfield | BS&A Online

**Disclaimer:** BS&A Software provides BS&A Online as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2018 BS&A Software, Inc.



RECEIVED
JAN 30 2009
Ruth Johnson Register of Deeds
Oakland County, MI

```
                                                    14600
                                              LIBER 40858 PAGE  584
                                              $10.00 DEED - COMBINED
                                              $4.00 REMONUMENTATION
                                              02/02/2009 08:18:45 A.M.  RECEIPT# 7799
```

PAID    RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

## QUIT CLAIM DEED

The Grantor(s) George Sinclair, a single man

Whose address is 17537 Evergreen Detroit, MI 48219

Quit Claims to Marion Sinclair, a single women

Whose address is 17357 New Hampshire Drive, Southfield, MI 48075

The following described premises situated in the City of Southfield,
Oakland County and State of Michigan;
Lot(s) 203 And 204 Southampton Subdivision, According To The Plat There of As Recorded in Liber 35,
Page 36, Oakland County Records.

35 036

Commonly known as:  17357 New Hampshire Drive, Southfield, MI 48075
For the sum of $ One and 00/100 Dollars ($1.00).
EXEMPT UNDER MSA 7.456 (5) (a) MCL 207.526 (6)(a)
Subject to easements and building and use restrictions of record, if any.

Dated:   January 27, 2009

Signed in the presence of:                          Signed by:

_Brandon Atkinsh_                                   _George Sinclair_
                                                    George Sinclair

**State of Michigan**
County of

The foregoing instrument was acknowledged before me on _Jan 30, 2009_, by _George Sinclair, a single man_

Notary Public
State of Michigan
CeCe Jones
My appointment expires Nov. 11, 2012

_CeCe Jones_
Notary Public    County, Michigan
My commission expires: _Nov. 11, 2012_

| When recorded Return To: | Drafted By: George Sinclair |
|---|---|
| Marion Sinclair | |
| 17357 New Hampshire Drive, Southfield, MI 48075 | 17537 Evergreen |
| | Detroit, MI 48219 |

State Transfer Tax ____
County Transfer Tax ____

Tax I.D. No.:24-25-108-006 ___ Recording Fee ____

FEB 02 2009

O.K. - LG

# EXHIBIT

# 4



Posting Date 2016 Jul 07 Posting Check Number 2
Amount $800,155.95

Posting Date  2016 Jul 07 Posting Check Nu[...]
Amount  $800,155.95



**FIFTH THIRD BANK**
(EASTERN MICHIGAN)
P.O. BOX 630900 CINCINNATI OH 45263-0900



Statement Period Date: 7/1/2016 - 7/31/2016
Account Type: 5/3 Bus Standard Ckg
Account Number:

Banking Center: Southfield
Banking Center Phone: 248-353-3010
Business Banking Support: 877-534-2264

SOUTHFIELD NEIGHBORHOOD
REVITALIZATION INITIATIVE LLC
19785 W 12 MILE RD #404
SOUTHFIELD MI 48076-2584

0

7114

## Account Summary -

| | | | |
|---|---|---|---|
| 07/01 | Beginning Balance | $60.00 | Number of Days in Period | 31 |
| 1 | Checks | $(800,155.95) | |
| 1 | Withdrawals / Debits | $(3.00) | |
| 2 | Deposits / Credits | $810,500.00 | |
| 07/31 | Ending Balance | $10,401.05 | |

**Analysis Period: 06/01/16 - 06/30/16**

| | |
|---|---|
| Standard Monthly Service Charge | $11.00 |
| Standard Monthly Service Charge Waived (see below) | -$11.00 |
| PAPER ACCOUNT STATEMENT FEE | $3.00 |
| Service Charge withdrawn on 07/13/16 | $3.00 |

**Standard Monthly Service Charge waived if:**

Your business maintains a total monthly average balance of $3,500 across its business checking, savings, and certificate of deposit accounts.

**OR** your business spends at least $500 per month on its business credit card.

**Current Relationship Overview:**

Balance Criteria Met?                                      No
  Total Combined Monthly Average Balance        $60.00

Other Criteria Met?                                         No
  $500 Business Credit Card Spend?                    No

1 check totaling $800,155.9

**Check**
* indicates gap in check sequence    i = Electronic Image    s = Substitute Check

| Number | Date Paid | Amount |
|---|---|---|
| 21 | 07/07 | 800,155.95 |

1 item totaling $3.

**Withdrawals / Debits**

| Date | Amount | Description |
|---|---|---|
| 07/13 | 3.00 | SERVICE CHARGE |

2 items totaling $810,500

**Deposits / Credits**

| Date | Amount | Description |
|---|---|---|
| | | DEPOSIT |
| | | DEPOSIT |

| | | Amount | Date | Amount |
|---|---|---|---|---|
| | | | 07/13 | 10,401.0 |

# EXHIBIT
# 5

STATE OF MICHIGAN
DEPARTMENT OF LICENSING & REGULATORY AFFAIRS
MICHIGAN ADMINISTRATIVE HEARING SYSTEM
MICHIGAN TAX TRIBUNAL
SMALL CLAIMS DIVISION

Marion Sinclair,
    Petitioner,

v

                            MTT Docket No. 411863

City of Southfield,
    Respondent.
                            <u>Tribunal Judge Presiding</u>
                            Kimbal R. Smith, III

## <u>CORRECTED FINAL OPINION AND JUDGMENT</u>

A Final Opinion and Judgment was entered in the above-captioned case on October 19, 2011. On November 4, 2011, Respondent requested the Tribunal to make a correction to that Final Opinion and Judgment. In support of its request, Respondent states as follows:

    a. "We believe that reducing a taxable value to $0 would violate the intentions of the Southfield City Council guidelines to provide partial relief from property tax responsibility. Their right to establish partial exemptions is found in MCL 211.7u(1)...."

    b. "[T]he new taxable value should be set at 15,260 for 2010. This calculation was derived by taking 10% of the annual income of $8,001 (note the $8,967 used by the Tribunal) and dividing it by the prior year's tax rate to determine this year's derived taxable value...."

    c. "The City of Southfield follows the city council guidelines and applies them uniformly to all applicants to arrive at a fair and equitable value based on the hardship."

The Tribunal, having given due consideration to the case file, finds that the Hearing Referee erred in awarding Petitioner a 100% poverty exemption for the 2010 tax year, and further, that the Tribunal erred in adopting said determination as its final decision in the above-captioned case. Pursuant to MCL 211.7u(4), "[t]he

MTT Docket No. 411863
Corrected Final Opinion and Judgment, Page 2 of 3

governing body of the local assessing unit shall determine and make available to
the public the policy and guidelines the local assessing unit uses for the granting of
exemptions under this section. The guidelines shall include but not be limited to
the specific income and asset levels of the claimant and total household income
and assets." Respondent's adopted guidelines state that any "[a]pplicant is
responsible for property taxes exceeding 15% of the household income....At no
time will an applicant be granted a total exemption, therefore, applicant must be
responsible for 15% of household income." Nonetheless, Respondent's 2010
Poverty Exemption Worksheet indicates that the Board of Review utilized a
threshold of only 10% in determining Petitioner's exemption eligibility, though the
same was denied in whole on other grounds, and in as much as MCL 211.7u(5)
permits the Board to deviate from the adopted guidelines in instances where there
are "substantial and compelling reasons," the Tribunal accepts the Board's
determination in this regard. Further, and in light of this deviation, the Tribunal
finds that the Board's calculations and the figures utilized therein are more reliable
than those set forth in the Proposed Opinion and Judgment. As such, Respondent
has shown good cause to justify the modifying of the Final Opinion and Judgment.
As a result:

    d.  The property's TV as established by the Board of Review for the tax year
        at issue is as follows:

**Parcel Number**: 76-24-25-108-006

| Year | TV |
| --- | --- |
| 2010 | 40,980 |

    e.  The property's final TV for the tax year at issue is as follows:

**Parcel Number**: 76-24-25-108-006

| Year | TV |
| --- | --- |
| 2010 | 15,260 |

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the officer charged with maintaining the
assessment rolls for the tax years at issue shall correct or cause the assessment rolls
to be corrected to reflect the property's poverty exemption and taxable value as

MTT Docket No. 411863
Corrected Final Opinion and Judgment, Page 3 of 3

finally provided in this Final Opinion and Judgment within 20 days of the entry of
the Final Opinion and Judgment, subject to the processes of equalization. See
MCL 205.755. To the extent that the final level of assessment for a given year has
not yet been determined and published, the assessment rolls shall be corrected once
the final level is published or becomes known.

IT IS FURTHER ORDERED that the officer charged with collecting or refunding
the affected taxes shall collect taxes and any applicable interest or issue a refund as
required by the Final Opinion and Judgment within 28 days of the entry of the
Final Opinion and Judgment. If a refund is warranted, it shall include a
proportionate share of any property tax administration fees paid and of penalty and
interest paid on delinquent taxes. The refund shall also separately indicate the
amount of the taxes, fees, penalties, and interest being refunded. A sum determined
by the Tribunal to have been unlawfully paid shall bear interest from the date of
payment to the date of judgment and the judgment shall bear interest to the date of
its payment. A sum determined by the Tribunal to have been underpaid shall not
bear interest for any time period prior to 28 days after the issuance of this Final
Opinion and Judgment. Pursuant to MCL 205.737, interest shall accrue (i) after
December 31, 2005, at the rate of 3.66% for calendar year 2006, (ii) after
December 31, 2006, at the rate of 5.42% for calendar year 2007, (iii) after
December 31, 2007, at the rate of 5.81% for calendar year 2008, (iv) after
December 31, 2008, at the rate of 3.31% for calendar year 2009, (v) after
December 31, 2009, at the rate of 1.23% for calendar year 2010, and (vi) after
December 31, 2010, at the rate of 1.12% for calendar year 2011.

MICHIGAN TAX TRIBUNAL

By _____

Entered:   DEC 2 8 2011            12-13-4
ejg

**STATE OF MICHIGAN**
**DEPARTMENT OF ENERGY, LABOR & ECONOMIC GROWTH**
**MICHIGAN TAX TRIBUNAL**
**SMALL CLAIMS DIVISION**

Marion Sinclair,
      Petitioner

v                                                               MTT Docket No.      0411863

City of Southfield,
      Respondent                          <u>TRIBUNAL JUDGE PRESIDING</u>
                                 Kimbal R. Smith III

<u>**ORDER OF PARTIAL DISMISSAL**</u>

The Tribunal, having given due consideration to the file in the above-captioned case, finds that
(i) the underlying issue relates to the subject property's assessed and taxable values for the
current tax year and prior tax years (ii) the Tribunal has no jurisdiction over the property's
assessed and taxable values for tax years 2009 as the initial letter of appeal was not received
prior to the tax year involved pursuant to MCL 205.735a, therefore,

IT IS ORDERED that this case is PARTIALLY DISMISSED relative to Petitioner's appeal of the
subject property's assessed and taxable values for prior tax years 2009 only.

This appeal will continue for tax year 2010.

MICHIGAN TAX TRIBUNAL

ENTERED: 04/13/2011

# EXHIBIT

7/15

Approved
April 25, 2016

REGULAR MEETING

OF THE COUNCIL

CITY OF SOUTHFIELD

**February 29, 2015**

INDEX

| RESOLUTION | TOPIC | PAGE(S) |
|---|---|---|
| ***** | PRESENTATION of Proclamation to Southfield Regional Academic Campus - Trash to Treasure Recognition Day | 1 |
| ***** | PRESENTATION of Joint Resolution – Parenting Awareness Month | 2 |
| ***** | PRESENTATION from Spring Arbor University | 2 |
| 2016.25 | APPROVE Historic Preservation Resolution | 2-4 |
| ***** | PRESENTATION on Tax Foreclosure from Oakland County Treasurer | 5 |
| 2016.26 | APPOINTMENT of Betty C. Robinson to Economic Development Corporation | 5 |
| 2016.27 | REAPPOINTMENTS of Jack Pryor to Economic Development Corporation; Louis C. Poole, Jr.to Economic Development Corporation | 6 |
| 2016.28 | REAPPOINTMENTS of Bernard Cohen to Southfield Library Board; Carole J. McCollough, Ph.D. to Southfield Library Board; Eunice M. Rose to Southfield Library Board; Anthony Erebor to Southfield Library Board | 6 |
| 2016.29 | APPOINTMENT of Michael Schinke to Board of Review | 6 |
| 2016.30 | REAPPOINTMENT of Eric Edwards to Board of Review | 6 |

REGULAR MEETING                    2                    FEBRUARY 29, 2016

RESOLUTION                          TOPIC                               PAGE(S)

2016.31      REAPPOINTMENT (as alternate) of Shirley Lightsey to
             Administrative Civil Service..............................................................6

2016.32      REAPPOINTMENTS of Shaya Baum to Public Arts
             Commission; Philip Lucas to Public Arts Commission................................7

2016.33      APPOINTMENT of Tyrone Chatman to Veterans Commission ................7

2016.34      REAPPOINTMENTS of Dr. Rodney A. Caruthers to Veterans
             Commission; Gregory Pulliam to Veterans Commission..........................7

2016.35      APPROVE the minutes for the Regular Meeting
             (conducted as Committee-of-the-Whole) of
             January 11, 2016; the Regular Meeting (conducted as
             Committee-of-the-Whole) of January 19, 2016; and the
             Regular Meeting of January 25, 2016 .....................................................7

2016.36      APPROVE Expenditure to Shorten Median Island at
             Evergreen Road and 8 Mile Road...........................................................8

2016.37      APPROVE Council Authorization to Release Draft of
             *Sustainable Southfield* Master Plan ................................................. 8-9

2016.38      APPROVE Sale of Parcel 76-24-32-227-015 (Northwest
             Corner of Keefer Street and Hazelhurst) to Argus
             Acquisition, LLC ...................................................................................9

2016.39      APPROVE Purchase of Cold Patch Materials for the Public
             Works Department.................................................................................10

2016.40      APPROVE Purchase of Gasoline and Diesel Fuel through
             the Michigan Intergovernmental Trade Network (MITN)
             Purchasing Cooperative ................................................................. 10-11

2016.41      APPROVE Purchase of Truck and Camera System for the
             Water and Sewer Department ......................................................... 11-12

2016.42      APPROVE City/SNPHC Joint Effort to Acquire, Renovate
             and Sell Tax-Foreclosed Properties ............................................... 12-13

2016.43      APPROVE Receipt of Bids for Printing the *Southfield Living*
             Newsletter .................................................................................. 13-14

The SNPHC has agreed to provide the initial seed capital in the amount of $1,500,000. These funds will allow the City to facilitate the acquisition and form a joint entity between the City and the SNPHC to facilitate the renovation and sale of the properties.

Discussions ensued between Council and City Administrator Fred Zorn. Councilman Fracassi stated that in the past the city had purchased homes that were foreclosed and he does not believe that it was handled affectively. The City ended up hiring a real estate company to sell the homes. Councilman Fracassi stated that he does favor fixing up the homes that were tax foreclosed, but at the same time the City needs to have professional help. City Administrator Zorn stated that this program is working with a nonprofit and that there are items that still need to be worked out. This program will allow homes to be owner occupied and not have rentals. The City of Hazel Park runs a similar program where they renovate the property and sell it. In previous years, the City had HUD properties that had to turn away people due to having a higher annual income and with this program the City does not have to do that. Mr. Zorn stated that administration will have the lead in this program and may look into having a project manager.

It is recommended that Council approve the resolution authorizing the joint venture between the City of Southfield and the Southfield Non-Profit Housing Corporation, with the SNPHC providing the capital to finance the venture, allowing the City to acquire from the Oakland County Treasurer's office tax-foreclosed properties available in 2016 for the purpose of renovating and selling to owner occupants.

2016.42        Motion by Mandelbaum; seconded by Brightwell.

               **RESOLVED:** That Council authorizes the joint venture between the City of Southfield and the Southfield Non-Profit Housing Corporation, with the SNPHC providing the capital finance the venture, allowing the City to acquire from the Oakland County Treasurer's office tax-foreclosed properties available in 2016 for the purpose of renovating and selling to owner occupants.

               Motion passed.

Consent Item H. Receipts of bids on printing the *Southfield Living* Newsletter. Beginning in 2003, the Community Relations and Parks and Recreation Departments combined the former *Southfielder* newsletter with the Parks and Recreation Activities Booklet in an effort to save money on printing and postage costs. This change resulted in the new *Southfield Living* newsletter, which includes news and information on events sponsored by several departments. This change proved successful, yielding a savings of approximately $58,000 as compared to the previous approach.

Approximately 42,000 issues of *Southfield Living* will be printed and distributed to every mailing address in the City and also available in City offices. The lowest acceptable bid was received from Woodward Printing Services of Platteville, Wisconsin in the amount of $23,196.00 for two editions. The March, 2016 edition will be printed shortly, in fiscal year 2015-16, and the September, 2016 edition will occur in fiscal year 2016-17.

06/22/2016 1:38:59 PM -0400 DELEG FAXCOM                    PAGE 7  OF 8

CSCL/CD-541 (Rev. 08/15)

## MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
## CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU

| Date Received | (FOR BUREAU USE ONLY) |
|---|---|
| | This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document. |

| Name |
|---|
| Joseph G. Couvreur, c/o Pentiuk, Couvreur & Kobiljak, P.C. |

| Address |
|---|
| 2915 Biddle Avenue, Suite 200 |

| City | State | ZIP Code |
|---|---|---|
| Wyandotte | Michigan | 48192 |

EXPIRATION DATE:
DECEMBER 31,

Document will be returned to the name and address you enter above.
If left blank, document will be returned to the registered office.

### CERTIFICATE OF ASSUMED NAME
### For use by Corporations, Limited Partnerships and Limited Liability Companies
(Please read information and instructions on the last page)

Pursuant to the provisions of Act 284, Public Acts of 1972 (profit corporations), or Act 162, Public Acts of 1982 (nonprofit corporations), Act 213, Public Acts of 1982 (limited partnerships), or Act 23, Public Acts of 1993 (limited liability companies), the undersigned execute the following Certificate:

1. The name of the corporation, limited partnership, or limited liability company is:

   Southfield Neighborhood Revitalization Initiative LLC

2. The identification number assigned by the Bureau is:

3. The assumed name under which business is to be transacted is:

   Southfield NRI

4. This document is hereby signed as required by the Act.

COMPLETE ITEM 5 ON PAGE 3 IF THIS NAME IS ASSUMED BY MORE THAN ONE ENTITY.

Signed this _21_ day of _June_ 2016
By Southfield Nonprofit Housing Corporation

By _Mitchell K. Simon_
                  (Signature)

_MITCHELL K. SIMON_
(Type or Print Name)                          (Type or Print Title or Capacity)

(Limited Partnerships Only - Indicate Name of General Partner, if the General Partner is a corporation or other entity)

06/22/2016  1:39PM (GMT-04:00)

# MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS

## FILING ENDORSEMENT

This is to Certify that the CERTIFICATE OF ASSUMED NAME

for

SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE LLC

ID NUMBER: E8710X

to transact business under the assumed name of

SOUTHFIELD NRI

received by facsimile transmission on June 22, 2016 is hereby endorsed.

Filed on June 24, 2016 by the Administrator.



This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.

Expiration Date   December 31, 2016



Sent by Facsimile Transmission

In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 24th day of June, 2016.

*Julia Dale*

Julia Dale, Director
Corporations, Securities & Commercial Licensing Eureau

Vers 5.2(08/15)

## DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
### CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU
### LIMITED LIABILITY COMPANY ANNUAL STATEMENT

# 2017

| Identification Number | Limited Liability Company Name |
|---|---|
| E8710X | SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE LLC |

Resident agent name and mailing address of the registered office

FREDERICK E. ZORN

MI

The address of the registered office

26000 EVERGREEN RD

SOUTHFIELD MI 48076

## Electronic Signature

| Filed By | Title | Phone |
|---|---|---|
| JOSEPH G. COUVREUR | AUTHORIZED AGENT | 734-281-7100 |

[X] I certify that this filing is submitted without fraudulent intent and that I am authorized by the business entity to make any changes reported herein.

## Payment Information

| Payment Amount | Payment Date/Time | Reference Nbr |
|---|---|---|
| $ 25 | 12/05/2016 11:00:25 | 71315 6802 E8710X 2017 |

Required by Section 207, Act 23, Public Acts of 1993

## INFORMATION & INSTRUCTIONS

**Annual Statement must be signed in accordance with MCL 450.4103.**

**For Domestic Limited Liability Companies** - It may be signed by a member, if managed by members, by a manager if managed by managers, or by an authorized agent of the company.

**For Foreign Limited Liability Companies** - Must be signed by a person with authority to do so under the laws of the jurisdiction of its organization.

# EXHIBIT 9



SOUTHFIELD NEIGHBORHOOD
REVITALIZATION INITIATIVE LLC
19785 W. TWELVE MILE RD #404
SOUTHFIELD, MI 48076

FIFTH THIRD BANK
74-124/724

1007

10/18/2016

PAY TO THE
ORDER OF    Gerry Witkowski

Two Thousand Five Hundred and 00/100 ************************************    DOLLARS

Gerry Witkowski
1908 Tranquil Ct
Commerce Twp, MI 48390

MEMO    17357 New Hampshire moving cost

Posting Date 2016 Oct 26 Posting Check Number 1007 Amount $2,500.00

Posting Date  2016 Oct 26 Posting Check Nu
1007 Amount $2,500.00

Cashed by Witkowski's



# EXHIBIT 10



PAYER'S name, street address, city or town, state or province, country,
ZIP or foreign postal code, and telephone number

SOUTHFIELD NEIGHBORHOOD
REVITALIZATION INITIATIVE LLC
19785 W 12 MILE RD BOX 404
SOUTHFIELD, MI 48076
(248) 595-8219

| | | |
|---|---|---|
| OMB No. 1545-0115 | | |
| **2016** | | |
| Form 1099-MISC | | **Miscellaneous Income** |

**1 Rents**
$

**2 Royalties**
$

**3 Other income**
$

**4 Federal income tax withheld**
$

Copy B
For Recipient

PAYER'S Federal identification number

81-3081056

RECIPIENT'S identification number

***-**-4995

**5 Fishing boat proceeds**
$

**6 Medical and health care payments**
$

RECIPIENT'S name, street address, city or town, state or province, country, and ZIP or foreign postal code

MARION SINCLAIR

25325 GRODAN RD, APT 220

SOUTHFIELD, MI 48033

**7 Nonemployee compensation**
$          2500.00

**8 Substitute payments in lieu of dividends or interest**
$

**9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale** ☐

**10 Crop insurance proceeds**
$

**11**

**12**

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

**13 Excess golden parachute payments**
$

**14 Gross proceeds paid to an attorney**
$

Account number (see instructions)

FATCA filing requirement ☐

**15a Section 409A deferrals**
$

**15b Section 409A income**
$

**16 State tax withheld**
$
$

**17 State/Payer's state no.**

**18 State income**
$
$

Form **1099-MISC**     (Keep for your records)

· Department of the Treasury - Internal Revenue Service

# EXHIBIT 11

**17357 NEW HAMPSHIRE** SOUTHFIELD, MI 48075   (Property Address)

Parcel Number: 76-24-25-108-006

**Property Owner:** SOUTHFIELD NEIGHBORHOOD REVITALIZAT

*Summary Information*

> Residential Building Summary

> 25 Invoices Found, Amount Due: 24.00

> Assessed Value: $0 | Taxable Value: $0
> Property Tax information found
> 24 Building Department records found

1 - 1 / 2        1 Image / 1 Sketch

## Owner and Taxpayer Information

| Owner | | Taxpayer | |
|---|---|---|---|
| | SOUTHFIELD NEIGHBORHOOD **Taxpayer** REVITALIZAT 19785 W 12 MILE RD # 404 SOUTHFIELD, MI 48076 | | SEE OWNER INFORMATION |

## Legal Description

T1N,R10E SEC 25, 108 4 SOUTHAMPTON SUB LOTS 203 & 204

## Recalculate amounts using a different Payment Date

You can change your anticipated payment date in order to recalculate amounts due as of the specified date for this property.

Enter a Payment Date 12/26/2018        Recalculate

## Tax History

**Contact the Oakland County Treasurer at (248) 858-0611 for payoff on taxes for delinquent years.**

| Year | Season | Total Amount | Total Paid | Last Paid | Total Due | |
|---|---|---|---|---|---|---|
| 2018 | Winter | $0.00 | $0.00 | | $0.00 | |
| 2018 | Summer | $177.50 | $177.50 | 07/20/2018 | $0.00 | |
| 2017 | Winter | $0.00 | $0.00 | | $0.00 | *taxes reduced to zero* |
| 2017 | Summer | $157.68 | $157.68 | 07/10/2017 | $0.00 | |
| 2016 | Winter | $384.57 | $384.57 | 12/19/2016 | $0.00 | |
| 2016 | Summer | $2,394.96 | $2,394.96 | 09/28/2016 | $0.00 | |
| 2015 | Winter | $462.28 | $0.00 | | **$462.28** | ** Read Note Above |
| 2015 | Summer | $2,160.18 | $0.00 | | **$2,160.18** | ** Read Note Above |
| 2014 | Winter | $458.54 | $0.00 | | **$458.54** | ** Read Note Above |
| 2014 | Summer | $2,112.90 | $0.00 | | **$2,112.90** | ** Read Note Above |

Load More Years

**Disclaimer:** BS&A Software provides BS&A Online as a way for municipalities to display information online and is not responsible for the content or accuracy of the data herein. This data is provided for reference only and WITHOUT WARRANTY of any kind, expressed or inferred. Please contact your local municipality if you believe there are errors in the data.

Copyright © 2018 BS&A Software, Inc.

# EXHIBIT
# 12



Posting Date 2016 Sep 16 Posting Check Number 1002 Amount $21,600.00

# EXHIBIT 13

# HABITAT FOR HUMANITY OF OAKLAND COUNTY ELECTS NEW BOARD MEMBERS

Posted: Wednesday, April 6th, 2016

Habitat for Humanity of Oakland County (HFHOC) is pleased to announce the addition of three new board members:

Andy Meisner, Oakland County Treasurer,



Matthew Reynolds, Fiat Chrysler, Head of Design/Process Validation/Prototype Systems/Components,



and J. Grant Smith, President and CEO of Clarkston State Bank.



Each year, HFHOC is fortunate to receive applications from many diverse, highly-qualified individuals," said HFHOC, current Board President, John Carney. "We are delighted to welcome three prominent business people to our board of directors. Their enthusiasm and commitment will benefit our efforts to build, empower and bring together families and individuals in their community."

Habitat for Humanity of Oakland County (HFHOC) is a grassroots organization dedicated to the elimination of poverty and substandard housing. HFHOC accepts donated homes or lots, and builds or renovates in partnership with qualifying families, who pay an affordable mortgage to HFHOC. Since 1996, HFHOC has built and renovated homes in partnership with 200 families, with 62 more taking place this year. Donate, volunteer or learn more at www.HabitatOakland.org (https://www.habitatoakland.org/), or call 248.338.1843.


# # #


filed under: Announcement (https://www.habitatoakland.org/category/announcement/)
Tags: Andy Meisner (https://www.habitatoakland.org/tag/andy-meisner/), Board of Directors
(https://www.habitatoakland.org/tag/board-of-directors/), Clarkston State Bank
(https://www.habitatoakland.org/tag/clarkston-state-bank/), Fiat Chrysler
(https://www.habitatoakland.org/tag/fiat-chrysler/), Fiat Chrysler Design
(https://www.habitatoakland.org/tag/fiat-chrysler-design/), Habitat for Humanity of Oakland County
(https://www.habitatoakland.org/tag/habitat-for-humanity-of-oakland-county/), Habitat Oakland County
(https://www.habitatoakland.org/tag/habitat-oakland-county/), J. Grant Smith
(https://www.habitatoakland.org/tag/j-grant-smith/), Matthew Reynolds
(https://www.habitatoakland.org/tag/matthew-reynolds/), Oakland County
(https://www.habitatoakland.org/tag/oakland-county/)

## ReStore Waterford

## Hours

**Mon - Sat** 10 AM to 6 PM

**Sun** 12 PM to 5 PM

3653 Highland Rd
Waterford, MI 48328
248-338-8392 (tel:1-248-338-8392)
Donate/Pick-Up Call 248-365-4090 (tel:1-248-365-4090)



## ReStore Farmington

## Hours

**Tues - Sat** 10 AM to 5:30 PM.

**Sun** 12 PM to 5 PM

28575 Grand River Ave.
Farmington, MI 48336
248-442-2267 (tel:1-248-442-2267)
Donate/Pick-Up Call 248-365-4090 (tel:1-248-365-4090)



## Office

## Office Hours

Mon. - Fri.
9:00 AM- 5:00 PM

150 Osmun
Pontiac, MI 48342
248-338-1843

## Quick Links

Privacy Policy (https://www.habitatoakland.org/privacy-policy/)

Donate (https://www.habitatoakland.org/donate/)

ReStore (https://www.habitatoakland.org/restore/)

Homeownership Program (https://www.habitatoakland.org/housingprograms-information/homeownership-program/)

News and Events (https://www.habitatoakland.org/news-and-events/)

© 2018 Habitat for Humanity of Oakland County.



 (https://www.facebook.com/HabitatforHumanityOC?ref=ts&fref=ts)  (https://twitter.com/HabitatOakldCty?lang=en)
 (https://www.linkedin.com/company/habitat-for-humanity-oakland-county)
 (https://plus.google.com/u/0/b/103131641179733973708/?pageId=103131641179733973708)  (https://www.instagram.com/habitatoaklandcty/)
 (https://www.flickr.com/photos/132443299@N02/)  (https://www.youtube.com/channel/UCushl9LrGy6mFhPjbEcXbpA)





Posting Date 2017 Feb 02 Posting Check Number 1043 Amount $42,800.19

Posting Date  2017 Feb 02 Posting Check Number 1043 Amount  $42,800.19



Posting Date 2017 Feb 02 Posting Check Number 1039 Amount $13,013.93

Posting Date  2017 Feb 02 Posting Check Number 1039 Amount  $13,013.93



Posting Date 2017 Feb 02 Posting Check Number 1044 Amount $8,591.25

Posting Date  2017 Feb 02 Posting Check Number 1044 Amount  $8,591.25

Posting Date 2017 Feb 02 Posting Check Number 3325 Amount $653.83

Posting Date  2017 Feb 02 Posting Check Number 3325 Amount  $653.83

# EXHIBIT
# 14