UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARION SINCLAIR,
     Plaintiff,

v.

ANDY MEISNER, *et al.*,
     Defendants.
_____/

Case No. 18-14042

Ter1rence G. Berg
United States District Judge

Michael J. Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 13, 15, 17)

## I.    PROCEDURAL HISTORY

Plaintiff Marion Sinclair filed this action, *pro se*, challenging a state tax foreclosure action on property she owned in Southfield, Michigan, against various city and county defendants.  (ECF No. 1).  In March 2019, defendants filed motions to dismiss, largely challenging this Court's subject matter jurisdiction over this case.  (ECF Nos. 13, 15, 17).  The motions are fully briefed.  (ECF Nos. 22, 23, 2, 26).  In December 2019, the case was administratively reassigned to the undersigned as Magistrate Judge.  On January 3, 2020, District Judge Terrence G. Berg referred pretrial matters to the undersigned.  (*See* Text-Only Order dated 12/23/2019; ECF No. 33).

For the reasons stated below, the undersigned recommends this case be dismissed without prejudice.

## II.    FACTUAL BACKGROUND

From what can be gleaned from the pleadings, plaintiff, proceeding *pro se* in this case, was the former owner of a single-family residence at 15737 New Hampshire Drive in Southfield, Michigan which is located in Oakland County. After plaintiff fell behind in her property taxes the Oakland County Treasurer initiated forfeiture and foreclosure proceedings, on June 12, 2015, against the property pursuant to the General Property Tax Act, M.C.L. § 211.1 *et. seq*., (GPTA). The GPTA is a statutory procedure allowing public entities to foreclose on properties that are delinquent in taxes and, in one of several alternative means, return the properties to the public rolls. The GPTA foreclosure procedure is different from the general judicial foreclosure procedure provided for in Michigan law. M.C.L. § 600.3101, *et seq*. As part of the GTPA procedure, a judgment of foreclosure was entered in the Oakland County Circuit Court on February 2, 2016. (ECF No. 17-1, PageID.464). Documents attached to the judgment of foreclosure indicate that taxes had not been paid for years 2009-2013 and that the then existing delinquency, including unpaid taxes as well as interest and fees, was $22,047.46. (ECF No. 17-1, PageID.468). Under the terms of the GPTA, M.C.L. § 211.78k(5)(b), the judgment of foreclosure ordered that title to the property was vested in the Treasurer of the County of Oakland. The property was subsequently sold to the City of Southfield on July 7, 2016, for $28,424.84. (ECF No. 15-3,

PageID.381). This sale was permitted pursuant to the terms of the GPTA, M.C.L. § 211.78m(1), after the "state" failed to act on its right of first refusal.  Plaintiff did not appeal or otherwise challenge the judgment of foreclosure.

On September 22, 2016, the City of Southfield deeded the property to the Southfield Neighborhood Revitalization Initiative, LLC (NRI), a non-public entity. (ECF No. 15-4, PageID.383). According to the Southfield Non-Profit Housing Corporation, the transfer was part of an ongoing relationship with the City of Southfield whereby the NRI (a limited liability corporation with the Southfield Non-Profit Housing Corporation being the only member) would "[purchase] tax foreclosed and other properties, [improve] such properties, [then sell] such properties to persons of low to moderate income [thus] improving housing and homeownership opportunities in the City of Southfield and [thereby] restore tax-foreclosed properties to the tax-roll." (ECF No. 15-1, PageID.359).

Plaintiff alleges that she was "illegally evicted" from her house by various individuals and that some of these individuals "broke in and changed her locks … without the benefit of a court order." (ECF No. 8, PageID.120).  The specific date plaintiff left her residence is not entirely clear. At one point in her response to the motions to dismiss plaintiff states that the "illegal home invasion" occurred on October 6, 2016. (ECF No. 22, PageID.520). In the affidavit attached to her response plaintiff asserts that the event took place on October 4, 2016. (ECF No.

22, PageID.526). The photographs attached to the brief in support of the motion of the Southfield Non-Profit defendants to dismiss, which purport to show the condition of the premises at the time plaintiff left, bear the date November 14, 2016.  (ECF No. 15-5, PageID.385). Plaintiff alleges that employees of GTJ Consulting, LLC and JBR Disposal, LLC, "took" her from her home. (ECF No. 8, PageID.120). The Southfield Non-Profit defendants claim that plaintiff's home was "deplorable" and "unhealthy" and she was "assisted" in moving to a "safe, clean and affordable apartment" when she left the residence. (ECF No. 15-1, PageID.360). Defendants do not claim to have had a court order to enter her home and remove her.

Plaintiff filed the present amended complaint alleging a number of claims all arising out of the 2016 foreclosure of her residence in Southfield, Michigan, and her subsequent departure from that residence. The allegations include violations of the Fair Housing Act, violations of Michigan statutory and common laws regarding illegal property transfer, Constitutional violations actionable through 42 U.S.C. § 1983, violations of the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C.  § 1961, *et seq.*, forcible illegal eviction in violation of state law, and conversion in violation of Michigan statutory and common laws. (ECF No. 8, PageID.132-141).

The relief plaintiff requests includes (1) a declaratory judgment that defendants have violated the Fair Housing Act, and (2) injunctions that would (a) order the creation of new rules regarding the transfer of property sold in a tax sale, (b) return plaintiff to the position she was in prior to the foreclosure, (c) "reverse the tax foreclosure," (d) require an immediate forensic accounting, and (e) require that documents be produced that would relate to "all property sales" during 2016, 2017, and 2018.  In addition, plaintiff asks that defendants be enjoined from "usurping rights of African-Americans to bid on properties at public auctions." Besides the injunctive relief, plaintiff seeks money damages.  (ECF No. 8, PageID.145-48).

The responding defendants can be grouped into three categories including: (1) the City of Southfield defendants[1], (2) the Southfield Non-Profit Housing Corporation defendants[2], and (3) the Oakland County defendants[3]. The City of Southfield defendants (hereinafter Southfield) filed a motion to dismiss seeking dismissal of the amended complaint under Fed. R. Civ. P. 12(b)(1) claiming lack of

---

[1] These defendants include the City of Southfield, Frederick Zorn, Gerald Witkowski, Sue Ward-Witkowski, Irv Lowenberg, Michael Mandlebaum, Donald Fracassi, Daniel Brightwell, Myron Fraser, Lloyd Crews, and Nancy Banks.
[2] These defendants include the Southfield Non-Profit Housing Corporation, the Southfield Neighborhood Revitalization Initiative, LLC., Mitchell Simon, Rita Fulgiam Hillman, Lora Brantley-Gilbert, Earlene Trayler-Neal, and E'Toile Libbits.
[3] These defendants include Oakland County and Oakland County Treasurer Andy Meisner, in his official capacity.

subject matter jurisdiction. (ECF No. 13). The Southfield Non-Profit Corporation defendants (hereinafter Southfield Non-Profit) also filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) claiming lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) claiming failure to state a claim. (ECF No. 15). The Oakland County defendants (hereinafter Oakland) filed a motion seeking the dismissal of the amended complaint under Fed. R. Civ. P. 12(b)(1) claiming lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) claiming failure to state a claim. (ECF No. 17).

All three categories of defendants seek to have the amended complaint dismissed based on the provisions of the Tax Injunction Act (28 U.S.C. § 1341) and principles of comity. (ECF No. 13, PageID.290; ECF No. 15-1, PageID.365; and ECF No. 17, PageID.447).

In her response to the arguments regarding the Tax Injunction Act (TIA) and comity, plaintiff comments on the application of the TIA and comity but did not directly address the applicability of it to her circumstances. (ECF No. 22, PageID.520-21). In an apparent reference to the availability of adequate state remedies, plaintiff did mention that attempts by others to litigate similar claims in state court had been unsuccessful. (ECF No. 22, PageID.517-18). Plaintiff also responded to the defendants' motions to dismiss by arguing that the foreclosure of her residence was akin to the civil in rem forfeiture that the Supreme Court found

to be in violation of the excessive fines clause of the 8th Amendment citing *Timbs v. Indiana*, 568 U.S. 2 (2019). Additionally, plaintiff contended she was improperly denied a property tax exemption based on her income level which, if granted, would have allowed her to pay a reduced property tax. (ECF No. 22, PageID.516). With respect to the *Rooker-Feldman* doctrine, plaintiff contends she was not trying to have a state court judgment reversed – she was merely seeking to vindicate her constitutional rights in federal court. (ECF No. 22, PageID.523).

## III.   DISCUSSION

### A.   Motion to Dismiss

All three of defendants' motions include arguments that are characterized as motions to dismiss based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Two varieties of Rule 12(b)(1) motions exist: one is a facial challenge to the lawsuit where a defendant challenges the complaint on its face in an attempt to show the court lacks subject matter jurisdiction and the second variety is where a defendant challenges the factual basis of the complaint in an attempt to make the same showing. In the former circumstances the court takes the allegations of the complaint as true and in the latter circumstances the court is free to weigh the evidence and "no presumptive truthfulness" attaches to the allegations in the complaint. In either situation, the plaintiff has the burden of proof that the court has subject matter jurisdiction. *RMI titanium Co. v Westinghouse Electric Corp. et*

*al.*, 78 F.3d 1125, 1133-1135 (6th Cir. 1996). The motions to dismiss appear to be a facial challenge to the amended complaint where the allegations in the complaint are taken as true.

      B.    Tax Injunction Act and Comity

All three categories of defendants contend that the Tax Injunction Act, 28 U.S.C. § 1341, bars federal district courts from addressing certain types of cases that seek to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." To the extent a plaintiff is seeking damages other than injunctive relief, defendants must look outside of the TIA because that legislation is limited to injunctive relief. However, relief including money damages, as well as injunctive relief, is available under the principles of comity which is a separate, but related area of the common law that prohibits plaintiffs seeking money damages arising out of states attempting to collect taxes. *Wright v Pappas*, 256 F.3d 635, 637 (7th Cir. 2001).

Plaintiff is clearly an intelligent individual, but she is not a lawyer and therefore her pleadings are viewed differently than those drafted by an attorney. *Pro se* litigants are entitled to a more liberal reading than pleadings drafted by a lawyer. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  That being said, the pleadings must still generally comply with the legal standards for matters pending

in federal court. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012). The amended complaint sets out six causes of action as noted above. A separate section of the complaint addresses the relief plaintiff is requesting and, for the most part, the relief requested is not linked to the specific causes of action. The type of relief requested is critical in determining if the court has subject matter jurisdiction as limited by the TIA or the principles of comity.

Plaintiff's requested relief includes: (1) "declaring" the "policies and practices" of Oakland and Southfield violate the Fair Housing Act; (2) "enjoining" Oakland from continuing their current practices employed for disposing of tax foreclosed properties and requiring the creation of "rules" that would penalize some of those practices; (3) ordering all defendants to "return" plaintiff to the position she was in before the tax foreclosure process and award plaintiff monetary damages that are allowable under M.C.L. §§ 600.2918 and 600.2919(a); (4) ordering Oakland to "correct" discriminatory practices; (5) ordering Oakland and Southfield to "restore" plaintiff to the "position Plaintiff would have occupied but for discriminatory conduct;" (6) ordering Oakland to "reverse the tax foreclosure" and provide "marketable title" to plaintiff; (7) ordering "Defendant corporations" and Southfield Non-Profit to provide a "forensic accounting" of "all monies received and expended" relating to the foreclosure of plaintiff's property and that of 116 or more other properties that were foreclosed on in 2016, 2017, and 2018;

(8) ordering Southfield Non-Profit to "provide documentation" of all property sales regarding property transfers in 2016, 2017, and 2018 and to "rescind and revert" any of those transfers that were improper; (9) ordering Oakland to discontinue transferring foreclosed properties to private corporations contrary to M.C.L. § 213.23(2); ordering Southfield and Southfield Non-Profit, as well as other named defendants, to '"cease usurping the rights of African-American Southfield residents to bid on properties at the public auction; and (10) ordering Oakland and "all other Defendants" to return plaintiff's property to the tax roles [sic]" and award monetary damages to plaintiff. (ECF No. 8, PageID.145-149).

While couched in different claims, it is clear that plaintiff's complaint is focused on the state tax foreclosure procedure that resulted in the loss of her property. Most of her claims, in one way or another, seek to invalidate the tax foreclosure process employed in her case or obtain monetary damages from some or all of the defendants for the wrongs that she claims to have suffered. Two of her claims, illegal eviction and conversion, are state law-based claims that do not seek to invalidate the tax foreclosure process.

The TIA addresses any attempt to "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341. This federal statute "creates a jurisdictional barrier … for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its

taxing authority." *Pegross v. Oakland Cnty. Treasurer*, 592 F.App'x 380, 384 (6th Cir. 2014). Without doubt the tax foreclosure procedure at the heart of plaintiff's complaint is a core aspect of a "state's administration of its taxing authority." To the extent that plaintiff's amended complaint seeks to declare as improper or enjoin the tax foreclosure procedure that resulted in the loss of her home, those efforts would be barred by the TIA as long as there is a "plain, speedy and efficient remedy [that] may be had in the courts of such State." 28 U.S.C. § 1341.

Defendants also invoke a related, but independent, common-law principle that would, if applicable, serve to prevent a federal district court from taking jurisdiction of challenges to state tax administration. This principle, referred to as comity, is a form of abstention that prevents federal district courts from becoming entangled in state tax disputes. This principle is "substantially broader" than the bar imposed by the Tax Injunction Act. *In re Gillis*, 836 F.2d 1001, 1006 (6th Cir. 1988). A part of plaintiff's prayer for relief is a request for monetary damages. This type of relief is outside the scope of the "declaratory or injunctive" relief that is barred by the TIA but comes within the parameters of the comity principle. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 110 (1981). The comity principle also requires a state court remedy to be available to the plaintiff before the case will be barred from federal district court. Under the comity principle, the state court remedy must be "plain, adequate, and complete" in order for the case to

be barred. *Id*. 454 U.S. at 116. It is really the nature of the relief sought, rather than the specific claims, that determine the applicability of the TIA/comity standards. Attempts to challenge the state's tax administration are subject to those standards without regard to specific claims made.

While the definition of the state court remedy required by both the TIA and the comity principle differs in wording, there is "no significant difference" between the "plain, speedy, and efficient remedy" identified in the TIA and the "plain, adequate, and complete" state remedy identified in the comity principle. *Id*. 454 U.S. at 116 n. 8.  State "remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any … objections to the tax." *Gillis*, 836 F.2d at 1010.

On four recent occasions this court, speaking through four different judges, has addressed situations in which property owners have challenged state foreclosure proceedings under the GPTA. In each of these occasions the judges consistently determined that the court lacked jurisdiction to entertain claims pursued in federal court that would in some manner "enjoin, suspend, or restrain" the collection of state taxes or the enforcement of the GPTA. In *Rafaeli, LLC v. Wayne County,* 2015 WL 3522546 (E.D. Mich, June 4, 2015), Judge Berg concluded that the TIA and the principles of comity barred federal district courts from considering the plaintiffs' constitutional challenges to the GPTA. Judge Berg

determined that plaintiff's challenges were "for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority" and that "a plain, adequate, and complete remedy [was] available in the state courts." *Id.*, at 7-8.[4] Adequate state remedies were identified by Judge Berg as existing in the GTPA, M.C.L. § 211.78l, and the Oakland County Circuit Court. *Id.*

The following year Judge Levy considered claims of a purported class action that brought constitutional and statutory challenges regarding the Michigan GPTA. In *Hammoud v. County of Wayne*, 2016 WL 4560635 (E.D. Mich. 2016), *aff'd* 697 Fed. App'x 445 (6th Cir. 2017), Judge Levy, contrary to the plaintiff's argument, determined that the constitutional claims and some of the state statutory claims sought to "set aside the judgments of foreclosure, vest title back in plaintiffs' names, and permit plaintiffs to pay the back taxes owed" and therefore that relief "would certainly 'enjoin, suspend or restrain the assessment, levy or collection of a [ ] tax under State law'" thus triggering the prohibitions of the TIA and requiring the dismissal of those claims. *Id.* at 4. The opinion further noted that various state

---

[4] Plaintiffs in that case have pursued related constitutional claims in state court and leave to appeal from an unfavorable decision in the Michigan Court of Appeals has been granted by the Michigan Supreme Court, *Rafaeli, LLC v. Oakland County*, 503 Mich. 909 (2018), with oral argument scheduled to take place in November of 2019, *Rafaeli, LLC v. Oakland County*, 932 N.W.2d 1 (2019). The Michigan Supreme Court held oral argument, and on November 27th allowed the parties to file post-argument supplemental briefing by December 13th. *Id.* at 935 N.W.2d 354. Both parties filed supplemental briefs. *See* filings listed on state Supreme Court website, https://courts.michigan.gov/Courts/MichiganSupremeCourt/oral-arguments/2019-2020/Pages/156849.aspx.

court remedies were available to plaintiffs, citing a number of state court cases in which similar claims were adjudicated. The comity principle relating to federal district court jurisdiction of state tax administration was not a part of Judge Levy's analysis. A civil RICO claim and several state statutory claims were also dismissed in the ruling but for different reasons. Judge Levy concluded that these statutory claims did not directly threaten the state tax administration and therefore the TIA did not apply to these claims. The civil RICO claim was dismissed because the complaint did not properly allege the requirements of such a claim and the remaining state statutory claims were dismissed because all the federal claims were being dismissed and the court did "not have supplemental jurisdiction to address" the state statutory claims in the absence of a cognizable federal claim. *Id*. at 8. Adequate state remedies were identified in the ruling on these claims that were similar in many respects to the claims in the present case. *Id.* at 5.

In *Freed v. Thomas*, 2018 WL 5831013 (E.D. Mich. Nov. 7, 2018)[5] Judge Friedman dismissed, for lack of subject matter jurisdiction, constitutional claims regarding the Michigan GTPA based on the TIA and comity principles. *Id*. at 3. Judge Friedman, echoing the views of several other judges, characterized the GTPA as an "unfair tax collection regimen" but was bound by *Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017) to rule that the federal district

---

[5] This decision is currently on appeal to the Sixth Circuit.

courts, when adequate remedies exist in Michigan courts, did not have subject matter jurisdiction over challenges to the GTPA. *Id*. Citing *Wayside Church* again, Judge Friedman found that the plaintiff had adequate state remedies, even if those remedies were not likely to result in the relief plaintiff was seeking. *Id*. at 4, n. 1).

More recently, Judge Borman dismissed a complaint with a strikingly similar set of claims to the present amended complaint. In *Edwards v. Meisner*, 2019 WL 78890 (E.D. Mich. Jan. 2, 2019) the plaintiff had attempted to challenge the tax foreclosure sale of his residence in the City of Southfield through litigation in Oakland County Circuit Court. That effort proved unsuccessful for the plaintiff and the Southfield Neighborhood Revitalization Initiative, LLC, the title holder to the property following the foreclosure sale, obtained a judgment of eviction from a state district court. Plaintiff filed the complaint in federal court and sought a preliminary injunction to halt the eviction pursuant to the state court order. Judge Borman denied the motion for a preliminary injunction and, *sua sponte*, dismissed the complaint for lack of subject matter jurisdiction. The ruling was based initially on the *Rooker-Feldman* doctrine[6] in that the relief requested by plaintiff could not be granted without invalidating the state court judgment of foreclosure and the

---

[6] The *Rooker-Feldman* doctrine is based on two Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.* 263 U.S. 413 (1923), which stand for the proposition that under 28 U.S.C. § 1257(a) lower federal courts do not have subject matter jurisdiction to review the decisions of state courts.

state court judgment of eviction which, under *Rooker-Feldman*, the district court does not have jurisdiction to do. Judge Borman also ruled, even if *Rooker-Feldman* did not apply, that the TIA and comity principles barred the district court from assuming jurisdiction of plaintiff's claims in that in order to grant the relief plaintiff requested the court would have to "enjoin, suspend or restrain the assessment, levy or collection of [a] tax under State law." 28 U.S.C. § 1341. Judge Borman recognized the requirement, for application of the TIA and comity principles, that an adequate state court remedy must exist and pointed to plaintiff's efforts to litigate the same issues in state court prior to filing the action in federal court as proof that such remedies existed.  The decision that adequate state remedies existed, for purposes of imposing the jurisdictional limitations of the TIA and comity principles, was made regardless of whether those remedies had been successful, would be successful, or even if those remedies had lapsed.  As long as state remedies could have been pursued, they were adequate.  2019 WL 78890, at 8-9.

The above cases from this district establish a well-worn path for dismissing cases filed in the federal district court that challenge the tax foreclosure and revenue raising scheme of the State of Michigan under the TIA and principles of comity. That path should be followed here as well. While plaintiff presents as a sympathetic individual in unfortunate circumstances, federal law clearly

establishes jurisdictional barriers to challenges to the administration of state

taxation procedures. Plaintiff has the burden of proof to establish subject matter

jurisdiction and that burden has not been met here.  Counts One through Four of

the amended complaint allege violations of constitutional or statutory rights

relating directly to the tax foreclosure and sale of plaintiff's residence in 2016. The

relief plaintiff requests is not linked to specific claims but does include declaratory

relief, injunctive relief, and money damages.  To grant that requested relief would

require this court to "enjoin, suspend or restrain the assessment, levy or collection

of [a] tax under State law" which this court in not permitted to do under the TIA.

The TIA only prohibits declaratory or injunctive relief but a request for damages

arising out of a tax collection process is barred by the free-standing principle of

comity. *Pegross v. Oakland County Treasurer*, 592 F.App'x 380, 386 (6th Cir.

2014). Plaintiff does not claim that adequate state remedies do not exist – only that

such remedies are likely to be unsuccessful. Likelihood of success is not the test of

adequacy for purposes of the TIA or comity. Four judges in this district, as noted

above, found that adequate remedies existed in the Michigan state courts for the

grievances alleged in those cases and those are the same, or substantially similar, to

the grievances plaintiff here alleges.

Counts Five and Six of plaintiff's amended complaint present a different set

of circumstances. Those claims, "Forcible Illegal Eviction Under State Law"

(Count Five) and "Conversion" (Count Six) are based on alleged violations of Michigan statutory and common law. Plaintiff seeks money damages for both of these claims. An award of damages in either of these claims would not "enjoin, suspend or restrain the assessment, levy or collection" of a state tax. The TIA "operates 'particularly' to protect the States' 'revenue raising' mechanisms" through the taxation process. *BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499, 502 (6th Cir. 2008) (quoting from *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987)). Here, the revenue had already been raised by the time the plaintiff was allegedly removed from her residence and her personal possessions were taken by the private actors who had come to clean out her house. Although the TIA/comity broom does not sweep counts Five and Six away they have to be dismissed for another reason. State claims can only be pursued in federal court if they are "supplemental" to appropriate federal claims pending in the same action. 28 U.S.C. § 1367. With Counts One through Four dismissed there are no other federal claims remaining and Counts Five and Six must also be dismissed without prejudice.

C.     *Rooker-Feldman* Doctrine

Defendants Oakland and Southfield contend that a second basis for dismissal of the complaint for lack of subject matter jurisdiction is the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine reflects the statutory provisions of 28

U.S.C. § 1257(a) which provides that review of state court judgments lies in the Supreme Court, rather than federal district courts. The doctrine applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Nor does [*Rooker-Feldman*] stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal court plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which it was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH v. Vill. Of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (ellipses in original)).

In applying *Rooker-Feldman*, the appropriate "inquiry … is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third

party's actions, then the plaintiff asserts an independent claim" and *Rooker-Feldman* does not bar the claim in federal court. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

Both defendants that have raised *Rooker-Feldman* in their motions to dismiss seek to have the entire amended complaint dismissed on that basis. Their analysis does not reflect the nuanced approach that is necessary to properly consider the *Rooker-Feldman* doctrine as a basis for dismissing plaintiff's amended complaint.

In determining the applicability of the *Rooker–Feldman* doctrine, federal courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead "must pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original); *Berry v. Schmitt,* 688 F.3d 290, 299 (6th Cir. 2012). Where the plaintiff seeks injunctive and declaratory relief prohibiting the future application of a statute, and not to overturn the state court's judgment under that statute, *Rooker-Feldman* does not apply. *Hood v. Keller*, 341 F.3d 593, 598 (6th Cir. 2003). However, where the plaintiff seeks to overturn the state court rulings, and not just a declaration that the applicable state law is unconstitutional, *Rooker-Feldman* applies.

Plaintiff alleges six distinct claims in her amended complaint. (ECF 8).
Those claims include: (1) race discrimination, (2) illegal property transfer in
violation of state law, (3) due process, (4) RICO, (5) forcible illegal eviction, and
(6) conversion. The only state court judgment in the history of this case is the
judgment of foreclosure entered on February 2, 2016. Counts 5 and 6 of the
amended complaint relate to allegations regarding plaintiff's removal from her
residence in approximately October of 2016 and these counts include specific
requests for money damages. With respect to these two counts, the injury claimed
is not based on a state court judgment and therefore these claims are not barred by
*Rooker-Feldman*.

The first four counts of plaintiff's amended complaint raise claims that, it
could be argued, are not based directly on the state court judgment of foreclosure.
However, the general prayer for relief seeks, among other things, relief that
includes "return[ing]" plaintiff to the position she was in, "restor[ing]" plaintiff to
the position she was in before defendants' conduct, and "revers[ing] the tax
foreclosure against" her. (ECF No. 8, PageID.146-47). As noted above, the relief
requested is more the measure of the application of *Rooker-Feldman* than the
specific claims made. In that the relief requested is generally alleged it cannot be
determined, from the face of the amended complaint, whether the request to

"restore" plaintiff to the position she was in before the judgment of foreclosure is applicable to a single claim or all four of claims alleged in Counts 1-4.

Plaintiff's amended complaint is almost a word-for-word copy of the complaint in *Edwards v. Meisner*, Case No. 18-cv-13488 (E.D. Mich.). As noted above, Judge Borman dismissed that complaint for lack of subject matter jurisdiction in part based on *Rooker-Feldman*. In his ruling on the *Rooker-Feldman* question, Judge Borman stated that if the plaintiff was seeking the reversal of the state court judgment of foreclosure then dismissal under *Rooker-Feldman* was appropriate. Judge Borman went on to state that he could not "award [plaintiff's requested] relief without invalidating the state court judgment of foreclosure and order of eviction [and therefore] *Rooker-Feldman* applies and bars this Court from exercising jurisdiction over Plaintiff's claims seeking to invalidate these state court judgments." 2019 WL 78890, at 7.[7]

The undersigned agrees with Judge Borman's ruling in *Edwards*. The same claims were made in that case as were made in Counts 1-4 of the present amended complaint. The same relief was requested there as well and it sought to invalidate the prior state court judgment of foreclosure just as plaintiff is attempting to do

---

[7] The *Edwards* case had two state court judgments to consider, one for foreclosure and a second judgment for eviction. The present case does not include an eviction judgment but that does not change the application of *Rooker-Feldman* to the facts of this case because the relief requested necessarily reached the foreclosure judgment even if there was no eviction judgment.

here. On that basis, Counts 1-4 of the present amended complaint should be dismissed pursuant to *Rooker-Feldman* for lack of subject matter jurisdiction in this court. Counts 5-6 should not be dismissed on the same basis.

Res Judicata

The Oakland and Southfield Non-Profit defendants assert that the amended complaint should be dismissed based on principles of res judicata. In essence, these defendants contend that the claims plaintiff has raised in her amended complaint should be dismissed because they could have been raised in the tax foreclosure proceedings that resulted in a judgment of foreclosure in state court. "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken.'" *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), quoting from 28 U.S.C. § 1738. "'It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'" *Id*., quoting from *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482 (1982).

"Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Sewell v. Clean Cut Mgmt, Inc.*, 463 Mich. 569, 575 (2001). "The test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions." *Jones v. State Farm Mut. Auto. Ins. Co.*, 202 Mich. App. 393, 401 (1993). Defendant Southfield Non-Profit alleges that "the relief sought by Plaintiff in this case is the same as in her State Court proceedings." (ECF No. 15-1, PageID.370). It is not entirely clear what counsel meant by that statement because there is nothing in this record to suggest that plaintiff actually appeared in state court and made any particular claims regarding the tax foreclosure of her former residence. If plaintiff did not appear in state court, as would appear to be the case here, the only issue actually addressed in the state court proceeding was whether the property was delinquent in taxes, interest, penalties, and fees and whether the property had been redeemed. M.C.L. § 211.78g-211.78h. If these findings were made the final judgment of foreclosure would issue under M.C.L. § 211.78k(5).

There is at least one exception to the broad application of the doctrine of res judicata in Michigan. In *J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161

(1999) the Michigan Supreme Court reviewed a situation in which the plaintiff had previously litigated a matter under the Michigan summary proceedings law, M.C.L. § 600.5701 *et seq.*, in state district court and then later pursued other claims in state circuit court. In the court's analysis of a res judicata defense to the circuit court action, it was noted that a section of the summary proceedings law, MCL § 600.5750, "evidences the Legislature's intent that summary proceedings for possession of property be handled expeditiously. Plainly the Legislature took these cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obligated to fasten all other pending claims to the swiftly moving summary proceedings." *Id.* at 168-69. Later the court noted that "in light of the first sentence of MCL 600.570 … clarifying that the remedy in these summary proceedings, no matter who prevails, does not bar other claims for relief" and reversed the decisions of lower courts, that had ruled res judicata barred the claims made by plaintiff in circuit court. *Id.* at 170-71.

The Michigan tax foreclosure law bears some resemblance to the summary proceedings law with respect to a perceived legislative intent to create an expedited procedure for foreclosure in tax delinquency cases, as compared to the general foreclosure procedure. The tax foreclosure procedure condenses the process for obtaining a judgment, has a shorter redemption period than the general Michigan

foreclosure procedure,[8] and eliminates the possible payment of a surplus to the

delinquent party.[9] These factors evidence an intent to streamline the foreclosure

process in tax delinquency circumstances. Additionally, and particularly significant

for a res judicata analysis, is the statutory limitation on the issues that can be

litigated in the tax foreclosure process. M.C.L. § 211.78k(2) identifies only six

issues that can be raised by "the person claiming an interest in a parcel of property"

subject to the tax foreclosure process and none of these limited issues are

comparable to the issues raised by plaintiff in Counts 1-4 of her amended

complaint. Litigating the claims made in plaintiff's amended complaint would

clearly involve facts beyond those that were, or could have been litigated in the

state court tax foreclosure proceeding.

     While without question the Michigan res judicata law is "broad" and

includes issues that were raised in a prior litigation as well as issues that "could"

have been raised, it does not appear that plaintiff could have raised her claims in

the tax foreclosure process given the jurisdictional limitations on that process

---

[8] The general foreclosure procedure calls for a six-month redemption period, M.C.L. § 600.3140(1), whereas the tax foreclosure procedure calls for a 21-day redemption period in contested cases.  M.C.L. § 211.78i(6)(g).

[9] The general foreclosure procedure provides for the payment of any surplus generated after subtracting the delinquency owed from the proceeds of the public sale whereas the tax foreclosure procedure does not require such payment. This aspect of the tax foreclosure procedure has sparked judicial criticism of the process including, as noted earlier, Judge Friedman's characterization of the process as an "unfair tax collection regimen." *Freed v. Thomas*, 2018 WL 5831013 at 3 (E.D. Mich. Nov. 7, 2018).

provided for in M.C.L. § 211.78k(2). Counts 5-6 of the amended complaint are obviously outside the scope of what could have been litigated in the tax foreclosure matter because they took place months after the tax foreclosure judgment was entered.

Both of these groups of defendants cite *Anderson v. County of Wayne*, 2011 WL 2470467 (E.D. Mich. Jun 20, 2011) in support of their arguments that plaintiff's amended complaint should be dismissed based on principles of res judicata. *Anderson* did involve a matter previously litigated in a Michigan tax foreclosure proceeding that was brought to federal district court by the plaintiff in an attempt to have the federal court "vacate" the state foreclosure judgment. In ruling that the federal claim was barred by res judicata principles, Judge Borman stated that the exact issue raised in the federal case - whether plaintiff should be permitted to make partial payments on the tax liabilities - had been litigated in state court and it was the only issue litigated in the state court. That fact distinguishes it from the present case in that Judge Borman did not address the scope of what could have been raised in the state court tax foreclosure case.

Based on the above analysis, the undersigned concludes that res judicata does not bar plaintiff's amended complaint.

D.     Failure to State a Claim

Defendants Oakland and Southfield Non-Profit also seek to have the amended complaint dismissed due to the plaintiff's failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In light of the undersigned's conclusion that this case should be dismissed in its entirety based on the TIA, principles of comity, as well as the *Rooker-Feldman* doctrine, it is not necessary to address the defendants' arguments under Rule 12(b)(6).

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the case be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:   January 9, 2020                    s/Michael J. Hluchaniuk
                                           Michael J. Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 9, 2020, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record and by regular first-class mail to NON-ECF
Participant: Marion Sinclair, 25325 Grodan Dr., Apt. 220, Southfield, MI  48022.

s/Durene Worth
Case Manager
(810) 341-7881
 durene_worth@mied.uscourts.gov