UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARION SINCLAIR,**<br><br>Plaintiff,<br><br>vs.<br><br>**ANDY MEISNER*, et al.*,**<br><br>Defendants. | **2:18-CV-14042-TGB-MJH**<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND (ECF NO. 81)** |

Now before the Court is Plaintiff Marion Sinclair's motion for leave to file a third amended class-action complaint. ECF No. 81. The Court ordered Sinclair to file this motion after the Sixth Circuit Court of Appeals vacated in part this Court's ruling denying her leave to file a second amended class-action complaint. *Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473 (6th Cir. Dec. 29, 2022).

Defendants oppose the motion on various grounds. ECF Nos. 82, 83, & 84. For the reasons below, the motion will be **GRANTED IN PART** and **DENIED IN PART**. The claims against Oakland County may proceed, but the claim for civil conspiracy must be dismissed as futile.

**I.   BACKGROUND**

Marion Sinclair owned a home in Southfield, Michigan. After she fell behind on her property taxes, the Oakland County Treasurer initiated forfeiture and foreclosure proceedings against her under Michigan's General Property Tax Act, MCL §§ 211.1-211.157, eventually taking absolute title to her home. Though the market value of her home

1

was allegedly more than she owed, the county never reimbursed her for it after her delinquent taxes were satisfied. In 2018, she sued the county, its treasurer, and several other government officials, private entities, and individuals, asserting that they had conspired to deprive her and other similarly-situated homeowners in Southfield and Oakland County of the equity value of their homes.

The procedural history of this case is long and complex. Sinclair started this case on her own. Later, she found a lawyer, and her legal theories—as well as the defendants she named—changed.

In a proposed second amended class-action complaint, Sinclair sought to proceed on behalf of "all the owners of real property in Southfield, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold for more than the Tax Delinquency, and who was not refunded the Equity." ECF No. 51-1, ¶ 62. She outlined five claims: (1) a federal takings claim against Oakland County and the City of Southfield; (2) a state-law takings claim against Oakland County and Southfield; (3) a procedural due-process claim against Oakland County and Southfield for failing to provide a process to secure the return of equity value; (4) an unjust-enrichment claim against Oakland County, Southfield, and various other defendants for refusing to compensate property owners subject to foreclosure proceedings for the equity in their homes; and (5) a civil conspiracy claim against all these defendants. *Id.*, ¶¶ 72-120.

2

In February 2022, the Court entered an order denying Sinclair leave to file this proposed complaint. ECF No. 64. On the basis of the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020), and other decisions from this District, it reluctantly concluded that Sinclair's proposed claims were futile. Her theories all relied on the premise that there was a vested property right to equity held in property, and both *Rafaeli* and federal caselaw distanced themselves from such a notion. *See, e.g.*, *Rafaeli*, 952 N.W.2d at 466 n.134 ("[W]e are unaware of any authority affirming a vested property right to equity held in property generally.").

Sinclair appealed this denial and, during the pendency of her appeal and its immediate aftermath, the legal landscape changed.

*First*, the Sixth Circuit decided *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), which concerned the same tax foreclosure scheme in Southfield at issue in this case. In *Hall*, the Sixth Circuit held—after reviewing traditional Anglo-American property law principles, historical practice, and early United States Supreme Court precedent—that homeowners *did* have property rights in the equity of their homes. *Id.* at 196. To the extent that Michigan statutory law allowed a governmental unit to take absolute title to a home as payment for a tax delinquency, it "flatly contravened" long-settled rules governing equitable interests in real property. *Id.* at 194.

*Second*, the United States Supreme Court decided *Tyler v. Hennepin County*, 598 U.S. 631 (2023). *Tyler* holds that, while the government may seize and sell a homeowner's property to satisfy delinquent tax debts, it violates the Takings Clause when it provides no opportunity for a taxpayer to recover the excess value from such a sale. *Id.* at 639. In other words, *Tyler* confirmed unequivocally what the Sixth Circuit held in *Hall*: homeowners have recognizable property interests in the equity of their homes, and a governmental unit cannot take more property than it is owed to satisfy an outstanding debt to it. *Id.* at 641.

In between these two decisions, the Sixth Circuit vacated in part this Court's order denying Sinclair leave to file her second amended class-action complaint. On the basis of *Hall*, the Court of Appeals concluded that the following causes of action proposed against Oakland County were not futile: (1) the federal takings claim; (2) the state-law takings claim; (3) the procedural due-process claim; and (4) an unjust-enrichment claim. The Sixth Circuit explained that, by asserting that Oakland County took her home without compensating her for its equity, Sinclair had stated cognizable claims—but only against Oakland County, because *it* was the entity that actually did the allegedly wrongful taking. As to Sinclair's fifth proposed claim, for civil conspiracy, the Sixth Circuit left open the question whether it adequately stated a claim, merely instructing this Court to "reevaluate [it] in light of *Hall*." 2022 WL 18034473, at *5.

4

Following that decision, this Court ordered Sinclair to file a motion for leave to file a third amended class-action complaint.

In July 2023, Sinclair filed her motion, attaching a proposed third amended complaint naming the following defendants: Oakland County; the City of Southfield; the Southfield Non-Profit Housing Corporation (SNPHC); the Southfield Neighborhood Revitalization Initiative LLC (SNRI); and Frederick Zorn and Kenneth Siver (two City of Southfield officials who were also board members of SNPHC and SNRI). ECF No. 81-1, ¶¶ 14-19. Consistent with the Sixth Circuit's decision, the proposed third amended complaint seeks to assert four claims:

- <u>Count I</u>: a federal takings claim against Oakland County;
- <u>Count II</u>: a due-process claim against Oakland County;
- <u>Count III</u>: an unjust enrichment claim against Oakland County;
- <u>Count IV</u>: a civil conspiracy claim against all defendants.

It does not include a state-law takings claim.

According to the complaint, the alleged conspiracy proceeded as follows: Oakland County's Treasurer generally sold tax delinquent properties at auctions, so that a municipality would be able to recoup the delinquent amounts. But the City of Southfield, SNPHC, Zorn, and Siver all knew that—under the General Property Tax Act as it existed at that time—the City of Southfield had a statutory first right of refusal to buy a tax-delinquent property for a bid equal to the delinquent tax amount plus any fees owed *before* the treasurer put the property up for auction. ¶ 32; *see also* MCL § 211.78m(1) (2015) (allowing municipalities to

5

purchase foreclosed property for a "minimum bid," that is, the amount of delinquent taxes plus certain other charges).[1] Accordingly, Zorn, Southfield's City Administrator and an SNPHC board member, recommended to the Southfield City Council that the city enter an agreement with SNPHC to create SNRI, a for-profit corporation whose only purpose was to purchase tax-foreclosed properties at minimum bid and resell them at a substantial profit. ¶¶ 33-34.

Under Zorn's scheme, SNPHC would give funds to Southfield to buy tax-delinquent properties through its first right of refusal. ¶ 35. SNRI, SNPHC, Southfield, Zorn, and Siver deliberately asked Southfield to buy properties that had a large amount of equity in relation to their unpaid taxes. ¶ 39. Once Southfield obtained title to the properties, it would transfer ownership to SNRI for the sum of $1.00. ¶ 36. The properties would then be "flipped" and sold to third-party buyers at market value, allowing defendants to pocket tens of thousands of dollars while the original homeowners received nothing. ¶¶ 37-38. In short, because of Zorn's influence, tax delinquent properties in Southfield were never sold at foreclosure sales; Defendants instead used Southfield's statutory right of first refusal to buy them at minimal cost and sell them at considerable profit with no concern for the homeowners' equities.

---

[1] The statute has since been amended. *See* MCL § 211.78m(1) (2021) (requiring municipalities to pay "the greater of the minimum bid or the fair market value of the property" to purchase foreclosed property).

Regarding Sinclair's own home, Southfield exercised its right of first refusal to buy it for $28,424.84 after the Oakland County Circuit Court entered a judgment of foreclosure against her based on her delinquent taxes. ¶¶ 55-57. In September 2016, Southfield deeded the home to SNRI for $1.00. ¶ 58. SNRI allegedly remains in possession of the home at this point and has not yet resold it for profit. *Id.* Sinclair has not received any reimbursement for the difference between the fair market value of her home and the amount of her delinquent taxes.

In her proposed third amended complaint, Sinclair has altered the definition of the class she wishes to represent. She now seeks to bring claims "on behalf of the owners of real property in Oakland County during the relevant statutorily-limited time period who were subject to the unconstitutional process which resulted in the taking and/or unconstitutional forfeiture of their Equity, but excluding those who have separately filed their own personal post-forfeiture legal actions in state or federal courts." ¶ 59. The now-proposed class "consists of all the owners of real property *in Oakland* whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was more than the Tax Delinquency, and who was not refunded the Equity," as opposed to only Southfield property owners. ¶ 60 (emphasis added).

All Defendants oppose the amendment. Oakland argues that some of the newly proposed claims are barred by a prior class action settlement and others are untimely. ECF No. 82. The Southfield government

7

defendants (Southfield, Zorn, and Siver) and non-profit/corporate defendants (SNPHC & SNRI), meanwhile, contend that the civil conspiracy claim is doomed to fail. ECF Nos. 83 & 84.

## II. LEGAL STANDARD

A court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require amendments to be permitted when there is "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of amendment." *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 918 (E.D. Mich. 2022) (quotations and alterations omitted). To that end, decisions over amendments are "left to the sound discretion of the trial judge." *Id.* (quotations omitted)*; see also Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) ("[T]he thrust of Rule 15 is to reinforce the principle that cases should be tried on the merits rather than the technicalities of the pleadings" (quotations omitted)).

## III. DISCUSSION

### A. Res Judicata

Oakland County says that it "does not object to [Sinclair]'s amendment and will address its deficiencies by way of a motion to dismiss or motion for summary judgment." ECF No. 82, PageID.1455. Nonetheless, it filed an opposition to Sinclair's motion for leave to amend.

8

The Court will begin with its argument that res judicata bars the claims of certain absent class members. *Id.* at PageID.1461.

The doctrine of res judicata is intended to promote the finality of judgments and discourage multiple litigation. *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). A final judgment on a claim is res judicata and "bars relitigation between the same parties or their privies on the same claim" and "on every issue actually litigated or which could have been raised with respect to that claim." *Id.* The Sixth Circuit has observed that, in the context of class actions, these principles "apply with equal and even greater force" as defendants would have no incentive to settle if they could not rely on the binding effect of class settlements to protect them from continuing claims of the same ilk. *King v. South Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524, 528 (6th Cir. 1986).

Oakland County argues that the claims of some class members are barred by the settlement in *Bowles v. Sabree*, No. 20-12838 (E.D. Mich.). In *Bowles*, two plaintiffs sued Wayne County, Oakland County, and their treasurers, asserting violations of state law and the Fifth, Eighth, and Fourteenth Amendments of the federal and state constitutions in connection with tax foreclosure auction sales. They sought to proceed on behalf of "owners of real property in Oakland and Wayne Counties whose real property, during the relevant time period, was seized through a real property tax foreclosure by Defendants and which was worth and/or sold

9

at tax auction for more than the total tax delinquency and was not refunded the excess equity." No. 20-12838, ECF No. 15, ¶ 61.

Oakland County settled the claims in *Bowles* in 2022. (Wayne County and its treasurer were not part of the settlement.) The Honorable Linda V. Parker—to whom the case was assigned—preliminarily approved the settlement in September 2022, *Bowles v. Sabree*, 2022 WL 4078891, at *6-*7 (E.D. Mich. Sept. 6, 2022), and entered a final judgment as to Oakland County in December 2022. No. 20-12838, ECF No. 106. The settling class was defined as:

> All real property owners formerly owning real property within the County of Oakland who had their real property foreclosed for non-payment of taxes pursuant to the Michigan General Property Tax Act, MCL 211.78, et seq., which was sold at tax auction for more than the amount owed in unpaid taxes, interest, penalties and fees and were not refunded the surplus amount. The period at issue is June 8, 2009 through July 17, 2020.

The judgment excluded "[a]ny former property owner who has filed their own post-foreclosure civil lawsuit which has become final or has otherwise settled with Oakland County."

Oakland County is correct that, insofar as Sinclair's complaint purports to sue on behalf of Oakland County property owners whose homes were sold at auction, res judicata would bar those claims.

Sinclair responds that the putative class members she is seeking to represent would be persons whose homes were *not* sold at auction but whose homes were acquired by SNRI through Southfield's right of first

10

refusal. ECF No. 85, PageID.1650. While Sinclair's class allegations are not framed as precisely as they could be, they are clear enough at this stage to cover a sufficiently distinct class so that res judicata would not bar such claims. To the extent her class allegations are overbroad, this may be addressed during the process of class certification, should this lawsuit progress to that stage. But that problem does not present a ground justifying a denial of Sinclair's motion to amend.

### B. *Timeliness of Claims Regarding Properties Outside of Southfield*

Oakland County next argues that Sinclair's newly proposed class includes putative plaintiffs with claims that are time-barred.

Specifically, Oakland County contends that, to the extent Sinclair seeks to raise claims on behalf of property owners throughout Oakland County and not merely from the City of Southfield, the county-wide claims are untimely. ECF No. 82, PageID.1461-62. It notes that the original complaint filed in this action in 2018 raised claims only on behalf of property owners from Southfield—and that no claims were raised on behalf of property owners in Oakland County outside of Southfield until Sinclair filed her motion to amend on July 6, 2023. *Id.* Accordingly, in Oakland County's view, only claims accruing during the three-year period prior to July 6, 2023 would be timely.[2]

---

[2] Oakland County further adds that, since the General Property Tax Act was amended on January 1, 2021 to change the challenged foreclosure

11

Sinclair's § 1983 claims are subject to a three-year limitations period. "Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005) (quotations omitted). In Michigan, "the appropriate statute of limitations to be borrowed … is the state's three-year limitations period for personal injury claims." *Id.* at 714. The Sixth Circuit held in *Hall* that the County's act of taking "absolute title" to a plaintiff's home is what starts the three-year clock. *Hall*, 51 F.4th at 196. (Of course, a different, six-year limitations period applies to Sinclair's unjust-enrichment claims. *See Estate of Tyner by Hickman v. O'Bey*, No. 351784, 2021 WL 2769820, at *5 (Mich. Ct. App. July 1, 2021)).

Under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551 (1974), the timely filing of a class-action complaint tolls the applicable limitations period for the claims of all persons encompassed by the complaint. This tolling is equitable in nature and generally lasts until a decision on class certification. It derives from the principle that Federal Rule of Civil Procedure 23 (which governs class actions) "is not designed to afford class action representation only to those who are active

---

procedure, the only claims Sinclair could raise on behalf of absent class members in greater Oakland County would have to have accrued between July 6, 2020 and January 1, 2021. *Id.* at PageID.1463.

12

participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action." *Id.* at 552.

Determining when and whether there was a properly filed class-action complaint is a challenge here, however, as Sinclair represented herself for many years—and both her legal theories and the definition of the set of similarly-situated individuals on whose behalf she seeks to proceed have changed over time. In her original complaint, filed on December 16, 2018, Sinclair alleged that she:

> seeks to stop Defendants from discriminating against her and other similarly situated African-American homeowners now and in the future. Plaintiff also seeks injunctive relief to reverse the tax foreclosure on her property and pending eviction, to prevent Defendants from continuing to transfer properties to private corporations ahead of the MI-GAP required public a[u]ction in July of every year. Plaintiff also seeks to assist *African American homeowners in Southfield and across Oakland County* in gaining the opportunity to preserve the equity built up in their homes and afford these other residents the opportunity to continue to participate in the American dream of home ownership and their piece of the American pie.

ECF No. 1, PageID.8-9, ¶ 6 (emphasis added). In her amended complaint, filed in 2019, she did not make clear whether she was still pursuing a class action, but she sought various forms of relief impacting both herself, "other African Americans in Southfield," and "African Americans in Oakland County especially." *See, e.g.*, ECF No. 8, PageID.145, ¶¶ 62, 65. It was not until she asked for leave to file her second amended class-action complaint on May 28, 2021, when she became represented by a

13

lawyer, that she expressly pleaded a class of "owners of real property in Southfield." ECF No. 51-1, PageID.825, ¶ 61.

Sinclair's proposed amendment does appear to expand the size of the previously proposed class and potentially assert some untimely claims. But the key question here is not the applicability of the statute of limitations; it is whether leave to amend should be granted. And the Sixth Circuit has, in a similar instance, rejected the argument that such a proposed amendment worked an unfair prejudice on a defendant. *See Eddleman v. Jefferson County*, 96 F.3d 1448 (Table), 1996 WL 495013, at *2 (6th Cir. 1996) ("The addition of some class members that might otherwise be time barred due to the amendment when the class is already concededly large … does not constitute the type of 'undue' prejudice that would outweigh the rule that complaints are to be freely amended."); *but see Hall v. Oakland County*, No. 20-12230, 2024 WL 209702, at *16 (E.D. Mich. Jan. 19, 2024) (Borman, J.) (declining to permit amendment to class allegations where claims of putative class members would be time-barred). Here, considering that Sinclair's allegations pertain to a Southfield-based course of conduct, it appears that the litigation is likely to center only on properties in Southfield notwithstanding her amendment to the class allegations.

In light of these factors, and because problems with the scope of class definitions ultimately will be litigated at class certification, the Court does not find sufficient grounds to deny leave to amend on the basis

14

that Sinclair has slightly altered her proposed class definition. *See Jones v. Allen*, No. 11-00380, 2014 WL 12577014, at *2 (S.D. Ohio Dec. 8, 2014) ("[I]t is usually a sound exercise of discretion to permit [the claim or defense] to be pleaded and to allow its merits to be tested."). This is so in large part because Oakland County makes no argument the amendment was made in bad faith or is unduly prejudicial. The Court takes no position on whether amending the definition so late in time causes timeliness issues with the claims of any new putative class members.

### C. Civil Conspiracy Claim

Separately, the Southfield defendants (Southfield, Zorn, and Siver) and non-profit/corporate defendants (SNPHC & SNRI) contend the civil conspiracy claim cannot be plausibly maintained and that amendment regarding this claim would be futile.

As the Sixth Circuit noted in its opinion vacating the Court's prior order in this case, a § 1983 civil conspiracy claim requires plaintiffs to allege: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Sinclair*, 2022 WL 18034473, at *5 (quoting *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020)). A civil conspiracy claim is a claim that two or more persons agreed to injure another by unlawful action. *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021). Conspiracy claims must be pleaded with some degree of

factual specificity. *Marvaso*, 971 F.3d at 606; *see also Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (discussing heightened pleading standard for conspiracy claims to curb frivolous litigation).

The constitutional violation being asserted here is the taking of property without just compensation through retaining the entire value of a residence that exceeds the amount of a tax debt.

SNPHC and SNRI argue that "Defendants did not get together and agree to injure the Plaintiff and the actions of the Defendants were lawful." ECF No. 83, PageID.1540-41. They further urge that Sinclair's conspiracy-related allegations are conclusory, and that Oakland County was acting independently of the other Defendants in carrying out what it understood to be its duty under the General Property Tax Act as it existed at that time. *Id.* at PageID.1541.

Southfield, Zorn, and Siver raise similar arguments. They contend that, under *Hall*, they cannot be held liable for any actions taken after Oakland County obtained absolute title to tax-delinquent properties. ECF No. 42, PageID.1582. In short, as they see it, the County acted independently in foreclosing on properties, so it alone was responsible for any loss—and any actions they took in concert with SNPHC and SNRI had no effect on Sinclair's legal rights. *Id.*

Sinclair retorts that "Southfield Defendants do not provide any sort of substantive analysis of [her] proposed amended complaint, but instead

16

direct the court's analysis" to the *Hall* opinion. She further observes, correctly, that *Hall* did not involve any claim for civil conspiracy.

But Defendants have the stronger position. *Hall* explained that nothing occurring after Oakland County took absolute title to a property had any impact on a plaintiff's rights because, after that event, the plaintiff no longer held any title to her home. *Hall*, 51 F.4th at 196 ("Before that event, the plaintiffs held equitable title; after it, they held no title at all."); *see also Taylor v. Oakland County*, No. 19-12458, 2024 WL 188376, at *5 (E.D. Mich. Jan. 16, 2024). The constitutional violation occurred when absolute title vested in the county and the county failed to reimburse property owners for the difference between their delinquent taxes and the value of the equity in a property. Oakland County alone was charged by statute with dealing with tax delinquencies and would have foreclosed on the properties regardless of how the other defendants later chose to buy and sell them. Defendants therefore could have not shared a common conspiratorial objective to deprive homeowners of the equity value of their homes—even though they may have shared a single plan with respect to what they did with the homes afterwards.

As alleged in the proposed complaint, there is no question that the scheme Sinclair describes is suspicious at best and nefarious at worst. If what she says about Zorn and Siver's use of their positions of influence on the boards of SNPHC and SNRI and in the City of Southfield to turn profits is true, their conduct may verge on abuse of public trust. But it

17

does not change the fact that any legal wrong occurred solely due to the action taken by Oakland County. *Hall v. Meisner*, No. 21-1700, 2022 WL 7478163, at *1 (6th Cir. Oct. 13, 2022) ("The relevant actions of these defendants came after the County took absolute title to plaintiffs' homes. That was the action that caused the injury giving rise to this suit; what happened afterward had no effect upon their legal rights.") Any scheme by defendants to turn profits by using Southfield's right of first refusal to buy tax-delinquent properties necessarily occurred *after* Oakland County had already stripped homeowners of their properties without just compensation; there is no plausible allegation to the contrary.

Accordingly, there is no set of facts upon which Sinclair can state a claim for civil conspiracy against the Defendants she has named, and her attempt to add the claim must be denied as futile.

## IV. CONCLUSION

For the reasons explained above, Sinclair's motion to amend is hereby **GRANTED IN PART** and **DENIED IN PART**. Sinclair's third amended class-action complaint shall be **ACCEPTED FOR FILING**, and Sinclair may proceed on Counts I through III.

Defendants' opposition to Sinclair's motion for leave to amend the complaint to add the civil conspiracy claim in Count IV is **SUSTAINED**, and Count IV is hereby **DISMISSED**. The City of Southfield, Southfield Non-Profit Housing Corporation, Southfield Neighborhood Revitalization

Initiative, Frederick Zorn, and Kenneth Siver are consequently **TERMINATED** as defendants in this action.

**IT IS SO ORDERED**, this 19th day of March, 2024.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge