# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **MARION SINCLAIR, _et al.,_** | **2:18-CV-14042-TGB-APP** |
| Plaintiffs, | HON. TERRENCE G. BERG |
| **v.** | **ORDER DENYING DEFENDANT'S MOTIONS TO STRIKE DUE PROCESS COUNT (ECF NO. 120), TO EXCLUDE TAX ASSESSMENTS (ECF NO. 122), AND FOR PARTIAL JUDGMENT ON THE PLEADINGS (ECF NO. 130) AND DENYING PLAINTIFF'S MOTION TO DISALLOW DEDUCTION OF TAX AMOUNT (ECF NO. 128)** |
| **COUNTY OF OAKLAND,** | |
| Defendant. | |

This Order addresses several motions in limine filed by both parties in anticipation of trial. Plaintiffs have filed a Motion for an Order to Disallow Deduction of the Unpaid Taxes from the Just Compensation Award. ECF No. 128. Defendant has filed a Motion to Strike Plaintiff Sinclair's Due Process Count (ECF No. 120), a Motion to Exclude Tax Assessments related to Plaintiff Sinclair's property (ECF No. 122), and a Motion for Partial Judgment on the Pleadings (ECF No. 130).

After careful consideration of the authorities and the parties' arguments advanced in oral argument before the Court on May 16, 2025, Defendant's Motions to Strike Plaintiff Sinclair's Due Process Count

(ECF No. 120), to Exclude Tax Assessments (ECF No. 122), and for Partial Judgment on the Pleadings (ECF No. 130) will be **DENIED**, and Plaintiff's Motion for an Order to Disallow Deduction of Tax Amount (ECF No. 128) will be **DENIED**.

## I.    BACKGROUND

Plaintiffs owned properties in Southfield, Michigan and were foreclosed by Oakland County for their failure to pay their property taxes. According to the Complaints, Plaintiff Marion Sinclair owed $22,047.46 in delinquent property taxes, Plaintiff Tawanda Hall and her deceased husband owed $22,642.00, Plaintiffs Curtis Lee and Coretha Lee owed $30,547.00, and Plaintiff Kristina Govan owed $45,350.00.

Following the foreclosures, the City of Southfield claimed the properties pursuant to its then-existing statutory "right of first refusal" under Michigan's General Property Tax Act ("GPTA") by paying Oakland County a bid equal to the delinquent tax amount plus any fees owed. *See* MCL § 211.78m. Southfield later deeded the properties for $1.00 to a for-profit entity, Southfield Neighborhood Revitalization Initiative ("SNRI"), formed for the purpose of purchasing, improving, and reselling foreclosed properties at market value.

SNRI allegedly remains in possession of Plaintiffs Sinclair and Govan's properties and has not yet resold them for profit. Plaintiffs Coretha and Curtis Lee's property was sold for $155,000. Plaintiff Hall's property was sold for $308,000. None of the Plaintiffs have received any

reimbursement for the difference between the fair market value of their homes and the amount of their delinquent property taxes. Oakland County has admitted liability for taking Plaintiffs' surplus equity.

These cases were consolidated before this Court on January 5, 2025. Trial is to commence on May 27, 2025.

## II. DEFENDANT'S MOTION TO STRIKE PLAINTIFF SINCLAIR'S DUE PROCESS COUNT (ECF NOS. 120 & 127)

A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Striking is a drastic remedy and is viewed with disfavor. *Yannotti v. City of Ann Arbor*, No. 19-11189, 2019 WL 5540982, at *3 (E.D. Mich. Oct. 28, 2019)(Edmunds, J.) (citing *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015)); *see also Olagues v. Timken*, 908 F.3d 200, 204 (6th Cir. 2018) (stating that "Rule 12(f) is neither an authorized nor proper way to procure the dismissal of all or a part of a complaint") (internal quotations and citation omitted). "The purpose of striking redundant material from a pleading is to improve efficiency and expedite the case." *Sanchez v. Burlington Coat Factory Warehouse Corp.*, No. 11-12241, 2012 WL 1205856, at *1 (E.D. Mich. Apr. 11, 2012)(Cohn, J.) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Ultimately, the decision to strike a pleading is firmly within the

discretion of the court." *Spizizen v. Nat'l City Corp.*, No. 09-11713, 2010 WL 419993, at \*2 (E.D. Mich. Feb. 1, 2010)(Rosen, J.) (citation omitted).

As Plaintiff's counsel points out, Defendant's motion to strike Plaintiff Sinclair's Due Process Count is untimely, as it was not made before responding to the challenged pleading. *See* Fed. R. Civ. Proc. 12(f)(2). Nonetheless, a court may act on its own in striking a pleading and will consider the arguments presented here. Fed. R. Civ. Proc. 12(f)(1).

Defendant seeks to strike the Procedural Due Process Count (Count II) in Plaintiff Marion Sinclair's Third Amended Complaint because a plaintiff cannot recover twice for the same injury. *See Atlas*, 93 U.S. 302, 311 (1876) ("None can recover compensation twice in respect of the same injury."). Here, the damages sought for Sinclair's Takings Count are the same—the amount of surplus equity owed to Plaintiff—as those sought for the Due Process Violation Count. *See Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 452 (2020) ("The remedy for a taking of private property is just compensation, while the remedy for being deprived of property without due process of law is the return of the property.").

However, Plaintiff Sinclair claims that she could seek nominal damages for the separate and distinct injury arising from the "denial of any procedure to secure the return of her equity." *See Sinclair Complaint*, ECF No. 89, PageID.1736; *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("The denial of procedural due process should be actionable for nominal

damages without proof of actual injury."). Thus, even if Plaintiff's pecuniary gain would be limited, striking the Due Process Count would not prevent a recovery for the same injury—the injuries are discernably different. *See also Yannotti*, 2019 WL 5540982, at *3 (citing approvingly to *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) (noting that the Ninth Circuit found that a "plaintiff's claim for damages, even if potentially barred as a matter of law, did not qualify as a 'defense or any redundant, immaterial, impertinent, or scandalous matter'")).

For the first time during oral argument at the Pretrial Conference held on May 16, 2025, however, Plaintiff Sinclair asserted that she may be seeking *more* than nominal damages, suggesting obliquely that she may have suffered emotional distress and would seek punitive damages. But such damages are not alleged in such terms in Sinclair's Complaint:

> 82. Oakland has denied Plaintiff . . . these rights by failing to provide for any procedure at all for Plaintiff . . . to secure the return of [her] Equity after [her] propert[y's] sale or transfer.

> 83. As a direct and proximate result of Oakland's failure to provide adequate procedural due process, Plaintiff . . . ha[s] been injured and ha[s] suffered damages.

ECF No. 89, PageID.1736. The Complaint requests "full compensatory damages . . . including disgorgement of Equity for each respective property" as well as "punitive damages," but does not request additional damages for emotional distress. *See id.*, PageID.1740. Punitive damages

may only be sought if Plaintiffs can present evidence showing the kind of extreme and egregious conduct by Defendant that would support such damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). Plaintiffs have not alleged such conduct in the Complaint, so it is unknown whether the evidentiary predicate for such damages will be presented. As the record currently stands, Plaintiffs may recover compensatory damages of surplus equity, and only nominal damages for the Due Process violation. At the completion of the trial, the Court will consider whether Plaintiffs have adduced sufficient evidence supporting a request for punitive damages.

Defendant also points out that the Procedural Due Process Count raised by the other consolidated Plaintiffs was previously dismissed for failure to state a claim in the *Hall* case, No. 20-12230, ECF No. 62, PageID.2214. This is correct, so that only Plaintiff Sinclair has a claim for violation of Due Process. At oral argument during the Pretrial Conference, Defendant suggested that Plaintiffs' counsel intends to litigate the due process claim for the sole purpose of painting Defendant in a bad light. Nonetheless, it appears that under the law-of-the-case doctrine, Sinclair's due process count must be allowed to forward. *See Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (noting that the

law-of-the-case doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (internal quotations omitted).

To establish a prima facie procedural due process claim, a plaintiff must allege (1) a protected property interest, (2) the deprivation of that interest by the Oakland County Defendants, and (3) the failure of the Oakland County Defendants to afford "adequate procedural rights prior to" deprivation. *Med. Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). As to the procedure that would be adequate to deprive a property owner of their property for unpaid taxes, the Michigan Supreme Court explained:

> The United States and Michigan Constitutions dictate that before the government may take property for unpaid taxes, it must provide the property owner sufficient notice of the delinquency and foreclosure proceedings as well as an opportunity to contest those proceedings. To this end, the GPTA explicitly states its intent to comply with minimum requirements of due process and not create new rights beyond those prescribed in the Constitutions of our nation or this state. As long as defendants comply with these due-process considerations, plaintiffs may not contest the legitimacy of defendants' authority to foreclose on their properties for unpaid tax debts, nor may plaintiffs contest the sale of their properties to third-party purchasers.

*Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 451 (2020) (citing to MCL § 211.78(2)). However, in *Rafaeli*, the plaintiffs did not dispute the

government's authority to foreclose on their properties nor the adequacy of the government's efforts to notify them of the tax delinquency, forfeiture, and foreclosure, such that the court construed their claim only as a taking without just compensation, not a deprivation of property without due process of law. *Id.* at 453. *Rafaeli* therefore did not directly address the question of what process was due to mount a challenge to the County's retaining the homeowner's surplus equity.

In Sinclair's case, however, the Sixth Circuit held that Sinclair sufficiently alleged that Oakland County had no "procedure at all" to challenge the forfeiture of her home equity interest to survive a Rule 12(b)(6) motion to dismiss. *Sinclair v. Meisner*, 2022 WL 18034473, at *3 (6th Cir. Dec. 29, 2022) (vacating district court's judgment which denied leave to file second amended complaint alleging a procedural due process claim among other claims). In other words, alleging that Sinclair was provided "no procedure at all" to challenge the taking of her surplus equity would state a claim for a due process violation according to the Sixth Circuit.

Defendant points out that this appears inconsistent with the Sixth Circuit's earlier affirmance of the district court's dismissal of Hall, Govan, and the Lees' procedural due process claim. But a close examination of the procedural due process claim in those cases shows that the claim in *Hall* was different from the claim in *Sinclair*. *See Hall v. Meisner*, No. 20-12230, 2021 WL 2042298, at *15 (E.D. Mich. May 21,

2021), *aff'd in part, rev'd in part and remanded*, 51 F.4th 185 (6th Cir. 2022). While the *Hall* plaintiffs claimed that Oakland County "did not take additional reasonable steps when it knew its efforts at providing notice [of tax foreclosures] had failed," the plaintiffs did not cite to any controlling authority "requiring additional notice of default of the payment plans." *Id.* This was the procedural due process claim stated in the Complaint that the district court found inadequate and dismissed. *Id.*

At oral argument, plaintiffs changed their argument to a claim that Oakland County "did not provide notice to Plaintiffs that they would be 'taking' the equity in the properties." *Id.* The district court recognized that this due process denial was not alleged in the Complaint, and even *if* such a claim had been made, Judge Borman pointed out in dicta that it would still fail because the plaintiffs did not have a property interest in the lost equity. *Id.* While the Sixth Circuit later recognized such a property interest in the properties' surplus equity, it still affirmed the district court's dismissal of the procedural due process count "for substantially the reasons stated by the district court." *Hall v. Meisner*, 51 F.4th 185, 195-97 (6th Cir. Oct. 13, 2022). Upon a close reading, then, *Hall* is not inconsistent with *Sinclair*, because in *Hall* the due process claim, as alleged in the Complaint, related to failing to provide notice regarding payment plans—not the failure to provide due process in connection with seeking surplus equity. "[T]he reasons [for dismissal]

stated by the district court" in *Hall* that were found sufficient by the Sixth Circuit differed from the district court's reasons in *Sinclair*.

For the reasons stated above, Defendant's Motion to Strike Sinclair's Procedural Due Process Count (ECF No. 120) is **DENIED**. Sinclair therefore may present this claim to the jury and seek nominal damages. Whether Sinclair may seek punitive damages will depend on the nature and quality of evidence she can present to support such a request.

### III. DEFENDANT'S MOTION TO EXCLUDE TAX ASSESSMENTS (ECF NOS. 122 & 126)

"The purpose of a motion in limine is to eliminate evidence that is clearly inadmissible for any purpose before trial." *Wright v. Best Recovery Servs. LLC*, No. 14-12476, 2015 WL 6468135, at *1 (E.D. Mich. Oct. 27, 2015)(Drain, J.) (internal quotations omitted). The rulings on these motions are preliminary and may be "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984). Only relevant evidence is admissible at trial. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Parties have a right to introduce before the jury evidence that is relevant to the weight or credibility of other evidence. Fed. R. Evid. 104(e). Nonetheless, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger

of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Jackson v. Trierweiler*, No. 18-cv-11384, 2021 WL 308112, at *10 (E.D. Mich. Jan. 29, 2021) (noting that "[a]ll relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded" and evidence is unfairly prejudicial when "marginally probative evidence will be given undue or preemptive weight by the jury").

Defendant seeks an order excluding evidence of tax assessments. The Court already partially ruled on the issue when *Plaintiff* Sinclair sought to exclude testimony regarding the state equalized value ("SEV") of the property from the Oakland County Tax Equalization Department based on the risk of confusing the jury. Because Defendant explained it did not intend to introduce such testimony, and the parties' appraisals did not mention the SEV for Sinclair's property, the Court ruled that "[i]n the absence of either party presenting a persuasive argument that the SEV is probative of the actual fair market value, such evidence will not be admitted." ECF No. 124, PageID.2859.

But in response to Plaintiff's proposed jury instruction regarding the consideration of the assessed value of the property, *Defendant* now seeks the exclusion of such tax assessments. Plaintiff's proposed "Assessed Value" jury instruction provides:

> The owners of certain parcels have introduced in evidence the assessed values placed on the property. The assessed values are not controlling, but you have a right to consider these assessments in connection with all other evidence in arriving at the market value of the property.

M Civ JI 90.08. This is an accurate description of the law in the context of *condemnation* proceedings when a property owner has introduced evidence of the *condemning authority*'s assessed valuation of the property for *real estate taxes* purposes. *See id.*

But Defendant argues that while such assessments are usually admissible as an admission against the interest of a defendant who performed the assessment, here the City of Southfield, rather than Defendant Oakland County, performed the tax assessments on Plaintiff Sinclair's property in 2016. *See In re Site for Memorial Hall*, 316 Mich. 215, 220 (1946) (finding tax assessments *made by the defendant*, though not controlling, could be "considered in connection with all other evidence in arriving at the fair market value"); *In re Site for Memorial Hall*, 316 Mich. 360, 362 (1947) ("When offered by the defendants in condemnation proceedings, the assessed valuation for the current year placed by the city on the property in question is in the nature of an admission against interest.").

In response, Plaintiff relies on a 1932 case from the Louisiana Court of Appeal to argue that the *City*'s assessment can be deemed an admission of the *County* regarding the *minimum* value of Sinclair's

property. In *Louisiana Highway Commission v. Giaccone*, the court found it "reasonable to permit [the landowner to use the assessed value] where the state itself, which, through one department, made the assessment, is, through another, attempting to take the lands for less than the assessment." 19 La. App. 446, 451 (1932). The state court continued, "If the state has for years accepted taxes based on the assessment, it hardly lies in the mouths of its own officials to attempt to deprive the owner of his [condemned] property for less than the amount at which it has been valued for the purpose of fixing those taxes." *Id.*

While the City of Southfield is not an entity of Oakland County in the same way a state department is an entity of the state itself, Oakland County did use the SEV to calculate Sinclair's property taxes in 2016—one half of the tax assessment market value[1]—which failure to pay led to the property's foreclosure. Indeed, the City of Southfield performed the initial assessment of the property's value (the "assessed value"), the Oakland County Board of Commissioners then applied an adjustment factor to such value (the "equalized value"), and the State Tax Commission later applied another adjustment to the county assessments (the "state equalized value").

---

[1] *See Michigan Property Tax*, A TAXPAYER'S GUIDE 1 (2024), available at https://www.legislature.mi.gov/Publications/TaxpayerGuide.pdf. The tax assessment market value of Plaintiff Sinclair's property in 2016 was $85,540. ECF No. 122, PageID.2792.

However, in other similar surplus equity takings cases, courts within the Sixth Circuit have made it clear that, if admissible, the evidence of a property's assessed value should not be used—contrary to Plaintiff's contention—as evidence of the "minimum" value of the property in the foreclosure context. Rather, evidence of a property's assessed value can be a "starting point" or a "data point," *Tarrify properties LLC v. Cuyahoga Cnty.*, Ohio, 37 F.4th 1101, 1107 (6th Cir. 2022), in determining whether the foreclosed property's fair market value is greater or lower, based on consideration of other evidence, such as interior conditions. *See Taylor v. Cnty. of Oakland*, No. 19-12548, 2024 WL 188376, at *7 (E.D. Mich. Jan. 16, 2024)(Lawson, J.) (noting that "tax valuation is merely one data point that may have a bearing on market value, not a determination of market value per se" and "tax valuations, unlike market sales, do not include any component of value based on the interior condition of the premises").

Thus, in order for either party to introduce evidence of Sinclair's property's State Equalized Value or SEV, that party must present testimony establishing the relevance of such evidence to a question that is in issue in the trial. If the SEV was relied upon by a witness to assess the property's fair market value or to calculate the amount of taxes owed, the party could ask the Court to allow the SEV to be admitted, and the Court will decide whether or not to permit the evidence depending on the sufficiency of the foundation that is laid. And, if allowed, such evidence

of the property's assessed value may be considered as a "data point," but not as proof of the "minimum value" of Sinclair's property. Should evidence of the SEV be admitted, Defendant may be permitted, if it chooses, to introduce testimony from the Oakland County Tax Equalization Department regarding the assessment, despite the Court's prior order to the contrary (ECF No. 124, PageID.2859).

Therefore, Defendant's Motion to Exclude Tax Assessments (ECF No. 122) is **DENIED** subject to the qualifications of this Order. This ruling applies generally to any evidence of the SEV of any property, regardless of the fact that only Plaintiff Sinclair made the motion.

## IV. PLAINTIFFS' MOTION TO DISALLOW DEDUCTION OF UNPAID TAXES FROM JUST COMPENSATION AWARD (ECF NOS. 128 & 129)

The parties dispute whether the delinquent tax amount due on Plaintiffs' properties at the time of foreclosure should be deducted from their just compensation award or not. "[A] property owner found to have a valid takings claim is entitled to compensation as if it had been 'paid contemporaneously with the taking.'" *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 190 (2019) (citation omitted). While just compensation "generally consist[s] of the total value of the property when taken, plus interest from that time," *id.*, in takings cases such as this one, had Plaintiffs been paid "contemporaneously with the taking," they would have only received their *surplus equity*, that is the total value of

15

their property when taken, plus interest from that time, *minus the delinquent property taxes*.

This is consistent with prior rulings in similar takings cases. *See, e.g.*, *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023) (noting that "a taxpayer is entitled to the *surplus in excess* of the debt owed" and that the "*excess value* [must] be returned to the taxpayer whose property is sold to satisfy outstanding tax debt") (emphasis added); *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 474 (2020) (holding that "defendants could only collect the amount plaintiffs owed and nothing more," such that "any surplus resulting from those sales belonged to plaintiffs" and "defendants were required to return that property to plaintiffs"); *Bowles v. Sabree*, 121 F.4th 539, 549 (6th Cir. 2024) (noting that the "right to collect *surplus proceeds* from a tax sale is a cognizable, vested property right") (emphasis added).

Indeed, the Plaintiffs themselves defined their injury as the loss of their "*surplus* equity" above the delinquent taxes they owed. *See Sinclair Complaint*, ECF No. 89, PageID.1719—24 (defining "equity" as "the amount by which a property's value exceeds its Tax Delinquency," and alleging that "the excess value (equity) was not refunded," thereby "depriv[ing] Plaintiff of that surplus [above the amounts owed for property taxes and fees] and [her] equity in [her] propert[y]"); *Hall Complaint*, ECF No. 130-2, PageID.2949 (alleging that Defendant took their "property in the form of equity and/or monies *beyond* the amount of

16

unpaid taxes and administrative expenses, costs and interest," and that Plaintiffs have an interest in the windfall for which the properties were sold *above the amount of the delinquent taxes*") (emphasis added).

Plaintiffs understandably question the fairness of Oakland County figuratively recovering Plaintiffs' delinquent property taxes twice—a first time when Southfield paid them, and a "second time" by allowing the County to deduct the tax amount from the just compensation awards. But the injury to Plaintiffs is the loss of equity that was in excess of the taxes owed—it is not the total value of the equity. Plaintiffs can only receive what they should have been paid at the time of the taking, that is their surplus equity above the delinquent tax amount owed.

Finally, Plaintiffs argue the delinquent tax amount should not be deducted for pre-judgment interest purposes. The goal of a prejudgment interest award is to place a plaintiff in the "position he would have occupied but for the defendant's wrongdoing," *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998), by "fully compensat[ing] a plaintiff for the loss of the use of funds to which he or she was legally entitled," *Jones v. Elite Emergency Servs.*, LLC, No. 12-0203, 2018 WL 1399585, at *2 (M.D. Tenn. Mar. 20, 2018), *aff'd*, 768 F. App'x 313 (6th Cir. 2019). The award, rate, accrual date, and amount of pre-judgment interest is in the Court's discretion. *See Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999) ("[U]nder federal law, in the absence of explicit statutory direction on the issue, the award of prejudgment interest is . . .

17

in the discretion of the court."). Plaintiffs here are not entitled to the use of funds they owed on their delinquent taxes, but they are entitled to the surplus equity in their properties from April 1 of the year of the foreclosure—the date the takings claim accrued.

All things considered, the jury will be asked to determine the fair market value of each property as of April 1 of the foreclosure year, and to deduct from that amount the unpaid delinquent tax amount. To the extent such tax amount is in dispute, the jury will decide what tax amount to subtract.[2] The Court will then determine the amount of pre-judgment interest to which Plaintiffs are entitled starting on April 1 of the year of the foreclosure until the date of judgment, based on that just compensation award less the delinquent tax amount. Therefore, Plaintiff's Motion to Disallow Deduction (ECF No. 128) is **DENIED**.

---

[2] The parties agree that, at the time of foreclosure, Hall owed $22,642.18 and Govan owed $45,349.97 in taxes to the County. However, the parties contend there is an issue of fact as to the amount the Lees and Sinclair owed. Sinclair alleges that she owed $22,047.46. Complaint, ECF No. 89, ¶ 56. Defendant argues Sinclair owed $28,424.84, including interests, fees, and foreclosure costs—which is the amount the property was transferred for. *See id.* at ¶ 57; *see also id.* at ¶ 25 (defining "tax delinquency" as "the past due tax owed on a property plus additional compounding interest, fees, penalties, and costs"). The parties agree the Lees owed $30,547.00, but there is a dispute regarding whether a third-party organization paid $16,000 towards that amount before the foreclosure.

## V.   DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (ECF NOS. 130, 132 & 134)

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant requests the Court to enter judgment in its favor and dismiss the Fifth Amendment/Section 1983 takings claim of Plaintiffs Kristina Govan, Curtis Lee, and Coretha Lee as time barred. This motion does not address Plaintiffs Marion Sinclair and Tawanda Hall's takings claims.

### A. PROCEDURAL BACKGROUND

Plaintiffs Curtis Lee, Coretha Lee, and Kristina Govan joined Tawanda Hall in filing a class action complaint against Defendant on August 18, 2020. *Hall Complaint*, ECF No. 130-2. The case was dismissed in May 2021, but the Sixth Circuit reversed the dismissal of the Plaintiffs' takings claim. *See Hall v. Meisner*, 51 F. 4th 185, 197 (6th Cir. 2022) ("We reverse the district court's dismissal of the plaintiffs' takings claim under the U.S. Constitution (Count I) against Oakland County, and remand for proceedings consistent with this opinion."). On remand, the Court struck the class allegation and later consolidated the case with *Marion Sinclair v. Oakland County*. Trial is scheduled to start on May 27, 2025.

### B. LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings can be made at any time after the close of pleadings, even at trial, but it may not delay trial. Fed. R. Civ. Proc. 12(c), (h)(2)(B)-(C). "The Sixth Circuit has long held that judgment on the pleadings under Fed. R. Civ. P. 12(c) is

uniquely suited to disposing of a case in which a statute of limitations provides an effective bar against a plaintiff's claim." *Taylor v. Bringman*, 2023 WL 2563662 at *5 (W.D. Mich. Feb. 10, 2023), citing *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994); *see also Stoner v. Percell*, 2014 WL 6611557 at *3 (W.D. Ky. Nov. 20, 2014) ("When the complaint's allegations affirmatively show that a claim is time-barred, . . . judgment on the pleadings under Rule 12(c) is appropriate."). "We assess a Rule 12(c) motion using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 386 (6th Cir. 2022). If the complaint is time barred, "the plaintiff may come forward with allegations explaining why the statute of limitations should be tolled." *Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 949, 948–49 (E.D. Mich. May 6, 2021)(Cleland, J.).

Section 1983 claims generally borrow the personal-injury statute of limitations from the state in which the claim arose, *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017), as well as the state's tolling provisions, *Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010), and equitable tolling principles, *Wershe v. City of Detroit*, 112 F.4th 357, 371 (6th Cir. 2024), *cert. denied sub nom.*, 145 S. Ct. 1128 (2025) (collecting cases), except when they are "inconsistent with the Constitution and [federal] laws," *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980) (citing to 42 U.S.C. § 1988(a)). Thus,

Michigan law presumptively governs the tolling of Plaintiffs' Section 1983 takings claim.

## C. DISCUSSION

Defendant argues Plaintiffs Kristina Govan, Curtis Lee, and Coretha Lee's Section 1983 takings claim is time-barred and should be dismissed. But Plaintiffs argue their claim is not time-barred under state and federal class action tolling rules and equitable tolling principles.

### 1. Michigan's Statute of Limitations

The three Plaintiffs' complaint was filed on August 18, 2020. The parties do not dispute that Michigan's three-year statute of limitations for personal-injury claims applies. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (citing MCL § 600.5805(2)). The parties similarly do not dispute that the Lees' claim accrued on April 1, 2016, and Govan's claim accrued on April 1, 2017.[3] Thus, applying the three-year statute of limitations, without any tolling, the Lees and Govan's claims expired on April 1, 2019, and April 1, 2020, respectively—before the complaint was filed.

### 2. Class Action Tolling

Plaintiffs rely on Michigan Court Rule 3.501(F)(3) to argue that their claims are not time-barred because a class action (as to which

---

[3] Defendant effected a taking of the Plaintiffs' surplus equity when it took "absolute title" to their homes, *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022), which occurs on April 1 in a tax foreclosure, MCL § 211.78k(5).

Plaintiffs would be class members) is still pending. Michigan Court Rule 3.501(F)(3) provides in relevant part that,

> (1) The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.

> (2) The statute of limitations resumes running against class members other than representative parties and intervenors:

> > (c) on entry of an order denying certification of the action as a class action;

> > (e) on final disposition of the action.

> (3) If the circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court, by reversal on appeal, or otherwise, the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action.

MCR 3.501(F) (Statute of Limitations). Numerous Michigan and federal courts applying Michigan law have relied on this class action tolling court rule to toll a statute of limitations. *See, e.g.*, *Cowles v. Bank W.*, 476 Mich. 1, 42-43 (2006)(Corrigan, J., dissenting on other grounds) ("The tolling of the period of limitations in class actions is governed by MCR 3.501(F)(1). . . . In Michigan, class actions are governed by court rule."); *Colvin v. Detroit Ent., LLC*, No. 296753, 2011 WL 2586321, at *2 (Mich. Ct. App. June 30, 2011) ("MCR 3.501(F)(2) governs when tolling ceases[.]"); *Lewis v. City of Detroit*, No. 05-70667, 2006 WL 800743, at *2-4 (E.D. Mich. Mar.

28, 2006)(Duggan, J.) (applying MCR 3.501(F) to evaluate the timeliness of plaintiffs' claims after denial of class certification).

Here, both parties agree that, under Michigan Court Rule 3.501(F)(3), the Plaintiffs could benefit from class action tolling based on *Louis Jackson, et al. v. Oakland County Treasurer, et al.*, Oakland County Circuit Court Case No. 2018-162877-NZ, a similar takings class action filed on January 3, 2018 "on behalf of all residents and/or property owners of the City of Southfield." *Jackson Complaint*, ECF No. 130-3, PageID.3010, ¶ 194. But they disagree on whether the Court Rule governs, and if so, *when* tolling ceased—if at all.

This is because the *Jackson* complaint was originally dismissed by the Circuit Court on May 10, 2018 as it was "not supported by law or the facts presented." ECF No. 130-4, PageID.3042. Defendant argues any tolling under the class action rule stopped after this first dismissal. But under MCR 3.501(F)(3), if the circumstance that brought about the resumption of the running of the statute (here, dismissal or "final disposition of the action") is superseded by reversal on appeal, the statute of limitations "shall be deemed to have been tolled continuously from the commencement of the action." This is precisely the situation here: in *Jackson*, the Circuit Court was reversed several times and ultimately, on September 21, 2023, the Michigan Court of Appeals, in a published opinion, held that the plaintiffs had stated a valid § 1983 takings claim against Oakland County and reversed the dismissal. *See Jackson v.*

*Southfield Neighborhood Revitalization Initiative*, 348 Mich. App. 317, 354 (2023) ("Because the trial court determined that plaintiffs had not pleaded an unjust-takings claim under the United States Constitution, it erred."). Furthermore, class allegations are still pending in *Jackson* since the Circuit Court has yet to decide class certification, such that the statute of limitations has not yet resumed running for the Lees and Govan—even though every other court considering whether  to certify similar takings class actions have denied class certification.[4] Under MCR 3.501(F)(3), therefore, the statute of limitations for Plaintiffs' § 1983 takings claims was tolled continuously from the commencement of the *Jackson* action on January 3, 2018, making the claims timely.

Defendant rejects this analysis, asking the Court to ignore the Michigan Class Action Tolling Court Rule in favor of Michigan's Tolling Statute, MCL § 600.5856. That statute provides:

> The statutes of limitations or repose are tolled in any of the following circumstances:
>
> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.
>
> (b) At the time jurisdiction over the defendant is otherwise acquired.

---

[4] *See Sinclair v. Oakland County*, 2025 WL 42956 (E.D. Mich. Jan. 7, 2025)(Berg, J.); *Taylor v. Oakland County,* 2024 WL 188376 (E.D. Mich. Jan. 16, 2024)(Lawson, J.); *Hall v. Oakland County*, 2024 WL 209702 (E.D. Mich. Jan. 19, 2024)(Borman, J.).

(c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

MCL § 600.5856. Because the statute is silent as to class action tolling, Defendant argues not only that the statute and the court rule are in conflict, but that the statute governs and the Court should ignore the court rule.

While common law that is contrary to substantive statutes, like statutes of limitation, "must yield," *Gladych v. New Family Homes, Inc.*, 468 Mich. 594, 600 (2003), because the Court is not authorized to enact court rules that "establish, abrogate, or modify the substantive law," *McDougall v. Schanz*, 461 Mich. 15, 27 (1999), the Legislature similarly may not supplant the Michigan Supreme Court's authority to "establish, modify, amend and simplify" or otherwise "control practice and procedure in the courts," *id.* at 24 (citing to Michigan Const., art. VI § 5). In fact, in evaluating the constitutionality of COVID-19 court administrative orders suspending deadlines applicable to the commencement of civil actions, the Michigan Supreme Court recognized that "[s]tatutes of limitations are at the intersection of the shared separation of powers contemplated by" the state constitution. *Carter v. DTN Mgmt. Co.*, --- N.W.3d ---, 2024 WL 3573516, at *8 (Mich. July 29, 2024) ("The overlapping powers are obvious—the Legislature makes the policy determination of the time

25

limit that plaintiffs have for seeking relief in our courts, and this Court instructs how the time limits will be calculated.").

While Defendant relies on *Trentadue v. Buckler Lawn Sprinkler* to argue that the Legislature "comprehensively establish[ed] limitations periods, times of accrual, and tolling for civil cases," the *Trentadue* court only addressed "the relevant sections" at issue before it—that is, common-law discovery-based tolling—and never discussed the relevant section *in this case*—MCL § 600.5856. *See* 479 Mich. 378, 390 (2007) (discussing MCL §§ 600.5827, 5838, 5838a, 5839, 5855, but not § 600.5856, and noting that "rather than destroy the *discovery rule*, we recognize that the Legislature has comprehensively established the circumstances under which *the rule* should be applied") (emphasis added). While the statutory scheme "simultaneously authorize[d] and limite[d]" discovery-based tolling, rendering the more expansive common law doctrine in conflict with the plain language of the statute at issue in *Trentadue*, *id.*, the availability and duration of class action tolling is not addressed in the statutory scheme. *See also Gladych*, 468 Mich. at 601 ("There is no reason to continue to adhere to *Buscaino*'s tortured reading of § 5856 that contradicts the statute's plain and unambiguous language.").

While Defendant would like the Court to find that silence implies conflict, the Michigan Supreme Court stated it "duly considered" the "inherent tension that may appear to exist between the class-

action mechanism and a statute of limitations" in adopting MCR 3.501(F). *Cowles*, 476 Mich. at 21 (2006). And the United States Supreme Court also held that the federal class action tolling rule—upon which MCR 3.501(F) is modeled, *Cowles*, 476 Mich. at 15—"is in no way inconsistent with the functional operation of a statute of limitations." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). That is because "the purpose of a statute of limitations is generally satisfied when a class action is filed." *Cowles*, 476 Mich. at 22 (citing to *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983); *see also Mair v. Consumers Power Co.*, 419 Mich. 74, 83 (1984) ("Tolling occurs in situations where the extension of time will not disadvantage the defendant as a result of his unawareness of the need to preserve evidence and prepare a defense.").

Thus, the Michigan Supreme Court held that, "crucial to whether the period of limitations is tolled under . . . MCR 3.501(F) is notice to the defendant of both the claims being brought and the number and identities of the potential plaintiffs." *Cowles*, 476 Mich. at 22; *see also American Pipe*, 414 U.S. at 554 ("The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights' are satisfied when" a class action has been commenced "within the period set by the statute of limitations, [such that] the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation[.]"). Here, there is no dispute that upon the commencement of the *Jackson* class action, Defendant received

adequate notice of the claims being brought and the number of potential plaintiffs—that is, "all residents and/or property owners of the City of Southfield . . . who have suffered . . . as a result of the Defendants' action" as alleged in the complaint. *See Jackson Complaint*, ECF No. 130-3, PageID.3010, ¶ 194.

Furthermore, federal law supports the application of MCR 3.501(F) to this case, as the court rule is "modeled after" the United States Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *See Cowles*, 476 Mich. at 15. While Defendant claims that the federal class action tolling doctrine only applies until a class action is dismissed or class certification is denied, the issue here is what happens to tolling if such dismissal or denial is reversed—and that issue has not been settled.

It is true that the federal doctrine precludes tolling *during the pendency of an appeal. Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 380 (6th Cir. 2021) ("[A]ppealing an unfavorable class-action decision does not preserve *American Pipe* tolling."); *see also Stone Container Corp. v. United States*, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000) (noting the "lengthy delays that would be created if the limitations period were tolled until the appellate process was complete"). That step—resuming the running of the statute of limitations upon dismissal or denial of class certification—parallels MCR 3.501(F)(2).

However, just as MCR 3.501(F)(3) provides that tolling should apply from the time the class complaint was filed when the dismissal or denial of class certification is *reversed*, multiple federal courts have stated the same or left the question open in dicta. *See Potter*, 9 F.4th at 380 n.5 ("We do not foreclose the possibility of an exception to this rule when the appellate court reinstates the action's class character, as some courts have suggested in dictum."); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 330 n.3 (1980) ("Reversal of the District Court's denial of certification by the Court of Appeals may relate back to the time of the original motion for certification for the purposes of tolling the statute of limitations on the claims of the class members."); *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 376 n.8 (5th Cir. 2013) ("If a denial of certification is *reversed* on appeal, the putative class members can claim the benefit of uninterrupted tolling from the original class action filing date."); *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("If the denial of class certification were improper then the class still exists and the class members retain the opportunity to seek recourse through litigation."); *Bobbitt v. Milberg LLP*, 338 F.R.D. 607, 627 (D. Ariz. May 18, 2021) ("When an order denying class certification is reversed and remanded, tolling applies from the time the class complaint was filed to the date of reversal.") (citing to *Roper*, 445 U.S. at 330 n.3).

Thus, on one hand, the effect of a dismissal or class certification denial is such that "absent class members can no longer reasonably rely on the named class representative to protect their rights and must take action themselves." *Potter*, 9 F.4th at 380. But on the other hand, while the dismissal or denial of class certification "puts [the defendants] back at ease," *Potter*, 9 F.4th at 380, defendants are still on "notice of the nature and scope of the claims against them" which could be reinstated upon reversal on appeal, *see Hall*, 727 F.3d at 376. And here, the Lees and Govan did take action to protect their interests after the dismissal of the *Jackson* complaint and before such dismissal was reversed by the Michigan Supreme Court.[5]

Thus, on the facts of this case, it appears consistent with principles of due process to hold that when the dismissal of a class action or denial

---

[5] The Lees' claim accrued on April 1, 2016, and Govan's claim accrued on April 1, 2017. The *Jackson* class action was filed on January 3, 2018, and the Oakland Circuit Court first dismissed it on May 10, 2018. *See* ECF No. 130-4. The Michigan Court of Appeals affirmed the dismissal a year and a half later on December 19, 2019. *See Jackson v. Southfield Neighborhood Revitalization Initiative*, 2019 WL 6977831, at *1 (Mich. Ct. App. Dec. 19, 2019), *judgment vacated in part, appeal denied in part*, 507 Mich. 866 (2021). The Lees, Govan, and Hall subsequently filed their own class action on August 18, 2020, before the Michigan Supreme Court reinstated the *Jackson* action on February 2, 2021. *See Jackson v. Southfield Neighborhood Revitalization Initiative*, 507 Mich. 866,866 (2021) ("[I]n lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Oakland Circuit Court for reconsideration of the defendants' motions for summary disposition in light of *Rafaeli*[.]").

of class certification is reversed by the appellate court, absent class members should still be able—under Michigan law and federal law—to rely on class action tolling relating back to the commencement of the class action. For the reasons explained above, the Lees and Govan's takings claim is not time-barred, and Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 130) is **DENIED**.

### 3. Equitable Tolling

Plaintiffs also claim that their actions should not be time-barred under the doctrine of equitable tolling while Defendant's unsurprisingly respond that equitable tolling does not apply.

Defendant is correct that under Michigan law, an express statute of limitations—like the one here—ordinarily cannot be equitably tolled. *See Wershe*, 112 F.4th at 371. But some Michigan courts have equitably saved time-barred claims when a "[p]laintiff's failure to comply with the applicable statute of limitations is the product of an understandable confusion about the legal nature of her claim, rather than a negligent failure to preserve her rights." *Bryant v. Oakpointe Villa Nursing Center, Inc.*, 471 Mich. 411, 432 (2004) ("[T]he procedural features of this case dictate that plaintiff should be permitted to proceed with her . . . claims" because the legal issue presented "is one that has troubled the bench and bar in Michigan, even in the wake of" additional caselaw); *Trentadue*, 479 Mich. at 406 ("[O]ur use of equity in *Bryant* is limited to those circumstances when the courts themselves have created confusion. In

*Bryant,* the use of equity was appropriate because of 'the preexisting jumble of convoluted caselaw through which the plaintiff was forced to navigate.'") (citations omitted).

Furthermore, federal courts can apply federal equitable tolling rules when a state's tolling rules are "inconsistent with the federal policy underlying § 1983." *See Wershe*, 112 F.4th at 371. The Sixth Circuit considers five (non-exhaustive) factors in evaluating whether to apply equitable tolling to a late claim: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Zappone*, 870 F.3d at 556.

Because the Court found that MCR 3.501(F)(3) governs and the claims are not time-barred, it need not reach the question as to whether equitable tolling is available to Plaintiffs in this case. But the Court must not fail to acknowledge that the slew of cases claiming Oakland County effectuated an unconstitutional taking of homeowners' surplus equity created some degree of confusion or uncertainty as to both the procedural

and substantive law that applied to these claims as they worked their way through the courts.[6]

## VI.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Strike Plaintiff Sinclair's Due Process Count (ECF No. 120) is **DENIED**, Defendant's Motion to Exclude Tax Assessments (ECF No. 122) is **DENIED**, Plaintiff's Motion for an Order to Disallow Deduction of Unpaid Taxes (ECF No. 128) is **DENIED**, and Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 130) is **DENIED**.

**SO ORDERED**.

Dated: May 23, 2025            /s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

---

[6] *See, e.g.*, *supra* n.5 (describing the lengthy appellate process in the *Jackson* action—and its effect on potential plaintiffs such as the Lees and Govan—due to the intervening change in substantive law in *Rafaeli*).