UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARION SINCLAIR, et al.,** | **2:18-CV-14042-TGB-APP** |
| Plaintiffs, | HON. TERRENCE G. BERG |
| **v.** | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES (ECF NO. 150)** |
| **OAKLAND COUNTY, et al.,** | |
| Defendants. | **AND GRANTING IN PART AND DENYING IN PART MOTION TO ENTER DISMISSAL ORDER, EXCLUDE COSTS, AND IMPOSE SANCTIONS (ECF NO. 151)** |

Defendant Oakland County foreclosed on Plaintiffs' properties because they failed to pay their property taxes. The plaintiffs filed two separate actions, *Sinclair* (No. 18-cv-14042) and *Hall* (No. 20-cv-12230), which were consolidated for trial after class certification was denied. The parties settled on the eve of trial, and part of the settlement allowed Plaintiffs to seek attorney's fees as a prevailing party under 42 U.S.C. § 1988. Plaintiffs request attorney's fees in a total amount of $4,187,349.50, including an enhancement request, plus $76,235.54 in costs. Defendant argues Plaintiffs' request for fees is unreasonable and

their request for costs should be rejected because the settlement included all costs.

For the following reasons, Plaintiffs' Motion for Attorneys' Fees will be **GRANTED IN PART** and **DENIED IN PART** (ECF No. 150) and Defendant's Motion to Exclude Costs, Impose Sanctions, and Enter Dismissal Order will be **GRANTED IN PART** and **DENIED IN PART** (ECF No. 151).

## I. BACKGROUND

Until 2020, counties throughout Michigan were legally empowered to foreclose on tax-delinquent properties and keep the surplus equity. This meant that, if a homeowner fell behind on property taxes, the County could foreclose on the property, sell it, and even if it made more on the sale than that amount of owed taxes, it could keep the surplus and the homeowner lost whatever equity was in the house. Plaintiffs like Sinclair, Hall, Lee, Govan, and others, filed lawsuits challenging the constitutionality of such procedures, and eventually both Michigan and federal courts concluded that the seizure of surplus equity without just compensation amounted to an unconstitutional taking in violation of state and federal law.

On December 26, 2018, Marion Sinclair filed a complaint without a lawyer's help in federal court. ECF No. 1. Tawanda Hall also filed a pro se complaint on December 28, 2018. *See* No. 18-cv-14086 (E.D. Mich.). While these cases were pending, on July 17, 2020, Michigan courts

recognized a surplus equity takings claim under the Michigan constitution. *See Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020). But federal courts had yet to recognize such a takings claim under the United States Constitution, nor had the Sixth Circuit decided whether federal courts had jurisdiction to review state takings claims at all. Therefore, Sinclair's case was stayed in March 2020 pending the Sixth Circuit's decision in *Freed v. Thomas*, No. 18-2312, which would decide whether federal courts could hear state takings claims. ECF No. 39. While Hall's complaint was dismissed without prejudice for failure to effectuate service, she filed another complaint in federal court on August 18, 2020, this time with the help of attorney Scott Smith, and joined by Plaintiffs Curtis Lee, Coretha Lee, and Kristina Govan. *See* No. 20-cv-12230 (E.D. Mich.).

On September 30, 2020, the Sixth Circuit issued its opinion in *Freed* clarifying that federal courts had jurisdiction to hear state takings claims such as the ones at issue in *Sinclair* and *Hall*. *See* 976 F.3d 729, 737 (6th Cir. 2020). On or about April 2021, the McAlpine, PC firm joined Mr. Smith in representing the *Hall* Plaintiffs, and together they also started representing Ms. Sinclair in her individual case. But the Court dismissed *Hall* again on October 4, 2021, and dismissed *Sinclair* on February 28, 2022, both for failure to state a claim under the takings clause of the United States Constitution. The *Hall* Plaintiffs appealed first, on November 3, 2021, and Sinclair followed on March 30, 2022.

3

On October 13, 2022, the Sixth Circuit recognized a new surplus equity takings claim in *Hall* and reinstated the case. *See Hall v. Meisner*, 51 F.4th 185 (6th Cir. Oct. 13, 2022). The United States Supreme Court denied the petition for a writ of certiorari. Shortly thereafter, relying on *Hall*, the Sixth Circuit reinstated *Sinclair* on December 29, 2022.

By that point, Oakland County admitted liability. Upon remand, the *Hall* Plaintiffs filed a class certification motion on September 5, 2023, and Sinclair filed a motion for leave to file a third amended complaint with class allegations on July 6, 2023. The *Hall* class certification motion was denied on January 19, 2024, but Sinclair's class action complaint was allowed to proceed on March 19, 2024. Sinclair filed a motion to certify the class on May 30, 2024, which was also denied on January 7, 2025.

The two cases were consolidated for purposes of trial in January 2025. On the eve of trial, the parties reached a global settlement, which was recorded in court on May 27, 2025. The Court ordered Plaintiffs to submit their attorney's fees petition by June 24, 2025, and ordered the parties to submit stipulated closing documents by June 26, 2025.

Plaintiffs' fee petition is now before the Court. *See* ECF No. 150; Smith Billing Report, ECF No. 150-1, PageID.3282-3319; McAlpine Amended Billing Report, ECF No. 156-2, PageID.3989-4028. Defendant argues the fees are unreasonable and costs are not recoverable pursuant to the settlement agreement. ECF Nos. 151 & 154.

## II. LEGAL STANDARD

The prevailing party in an action under 42 U.S.C. § 1983 can recover attorney's fees under 42 U.S.C. § 1988(b). The prevailing party may also recover costs for "incidental and necessary expenses incurred in furnishing effective and competent representation." *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979), *holding modified by Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268 (6th Cir. 1983). The party seeking attorneys' fees bears the burden of establishing and documenting his or her entitlement to the award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In the Sixth Circuit, courts use the lodestar method to calculate a reasonable fee, which involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). Courts have discretion in determining what fee amount is reasonable, and other considerations "may lead the district court to adjust the [lodestar] fee upward or downward." *Hensley*, 461 U.S. at 434. Courts may consider the following factors:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and,
(12) awards in similar cases.

*Id.* at 430 n.3.

Courts may attempt to identify specific hours that should be eliminated or may make "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Currier v. PDL Recovery Grp., LLC*, 2017 WL 3581181, at *7 (E.D. Mich. Aug. 18, 2017)(Cox, J.); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). In any event, the district court must "provide a concise but clear explanation of its reasons for the award." *Hensley*, 461 U.S. at 437.

## III. DISCUSSION

### A. ATTORNEY'S FEES

Oakland County has conceded that Plaintiffs are the "prevailing party" under 42 U.S.C. § 1988 and are entitled to recover attorneys' fees. As such, the only question presented here is the reasonableness of Plaintiffs' $4,187,349.50 request for attorneys' fees. This includes a 2.0 multiplier or 100% enhancement of Plaintiffs' proposed lodestar amount

6

of $2,093,674.75 to compensate 4,821.15 hours at an hourly rate ranging from $125 to $625. *See* ECF No. 150, PageID.3262.

| Timekeeper | Number of Reasonable Hours | Reasonable Hourly Rate | Regular hourly rate comparison to market rate (Civil litigation)[3] | Total Fee per Timekeeper |
|---|---|---|---|---|
| Scott F. Smith | 1458.7 | $494.29 | 75th-95th percentile | $721,029.50 |
| Mark L. McAlpine | 999.15 | $625 | 95th percentile[4] | $624,468.75 |
| Adam T. Schnatz | 314.30 | $370 | 50-75th percentile | $116,291.00 |
| Jayson E. Blake | 772.30 | $450 | 75-95th percentile | $347,535.00 |
| Arthur N. Dore | 244.40 | $185 | 0-25th percentile | $45,214.00 |
| Daniel J. Pifko | 386.20 | $165 | 0-25th percentile | $63,723.00 |
| Douglas W. Eyre | 108.40 | $460 | 75-95th percentile | $49,864.00 |
| Mark W. Oszust | 525.10 | $235 | 0-25th percentile | $123,398.50 |
| Lynette T. McAlpine | 9.60 | $185 | 0-25th percentile | $1,776.00 |
| Naomi Sawade | 3.00 | $125 | N/A (Paralegal) | $375.00 |
| **Total** | | | | $2,093,674.75 |

## 1. Hours

Courts must "exclude . . . hours that were not reasonably expended." *Hensley*, 461 U.S. at 434. The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n., Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). Hours are not "reasonably expended" when they are "excessive, redundant, or otherwise unnecessary." *Pucci v. Somers*, 834 F. Supp. 2d 690, 702 (E.D. Mich. Dec. 16, 2011)(Lawson, J.) (citation and quotations omitted). Similarly, the district court may reduce the award if the documentation of hours is inadequate. *Id.*

Plaintiffs' Counsel's verified time records specify the date that time was billed, the individual billing the time, the fractional hours billed, and the subject-matter or task completed. *See* ECF No. 150; Smith Billing Report, ECF No. 150-1, PageID.3282-3319; McAlpine Amended Billing Report, ECF No. 156-2, PageID.3989-4028. Defendant asserts that Plaintiffs' fee request is excessive, vague, and likely duplicative of other cases, warranting an across-the-board reduction of 80% to account for unreasonable hours.

### (a) Excessive Entries

Defendant argues Plaintiffs' Counsel seek excessive fees, in that some entries appear to be inflated, include work expended on unsuccessful motions and dismissed defendants, as well as appellate work primarily conducted by another counsel.

First, Defendant argues the lodestar request of $2,093,674.75 is excessive because it is four times (if not more) larger than the $500,000 global settlement, which would customarily support a contingency fee of $166,500. *See Pianko v. Gen. R.V. Ctr., Inc.*, No. 2025 WL 546935, at *9 (E.D. Mich. Feb. 19, 2025)(Parker, J.) (emphasis added) ("Counsel's initial fee request of almost $1.5 million is five times more than Plaintiff's $300,000 recovery and, on that basis alone, is excessive."). But "in the civil rights area, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v.*

*Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 824 n.5 (6th Cir. 2013) ("[O]ur precedents establish that an attorney fee award in a civil rights case is not unreasonable merely because it is greater than the damages awarded to the plaintiff."). Instead, "the amount of the actual award is not controlling" because "the value of the rights vindicated goes beyond the actual monetary award." *McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir. 1990) (upholding attorneys' fees that were "more than five times the amount of damages awarded"). Here, there is no question that *Hall* and *Sinclair* "obtained excellent results" in that they "succeeded in 'remedying a civil rights violation.'" *See Waldo*, 726 F.3d at 824 (citations omitted). Therefore, a downward departure is not necessarily justified *solely* based on the amount of damages awarded.

Second, and more specifically, Defendant identified entries it deemed excessive,[1] and while it did not calculate those hours, it provided a sample of them in its Response, which sample amounted to about 228.1 hours, or about 4.73% of the total number of hours Plaintiffs' Counsel billed. *See* ECF No. 154, PageID.3617, 3629-30. By way of examples,

---

[1] Defendant highlighted those entries in blue in Exhibit K. ECF No. 154, PageID.3629. Where a line-by-line analysis was impracticable, the Court estimated the number of hours as best as possible. *See Curier*, 2017 WL 3581181, at *7 ("The fundamental flaws in Plaintiff's fee petition–excessive, duplicative, unnecessary hours, overstaffing, vague descriptions–make a line-by-line analysis of the billing statement impractical.").

Plaintiffs' Counsel failed to justify the reasonableness of spending over 172 hours to draft the complaint in *Hall*, 2.1 hours to review a short email regarding settlement in *Hall*, 1.7 hours to review a short notice of hearing from the Court, 17.5 hours on a vague "Sinclair Memo," 50.7 hours to draft a Reply to a Motion to Amend, or 6.1 hours to review a two-page order. Reviewing these examples, the Court agrees that these hours appear excessive considering the nature of the work described.

Third, Defendant takes issue with Plaintiffs' Counsel billing 1,643 hours (or about 34% of the total number of hours expended) during the time the *Hill* and *Sinclair* actions were dismissed and on appeal, between May 2021 until their reinstatement in October 2022. Defendant claims the appellate legal work and subsequent success were primarily performed and obtained by Christina Martin from the Pacific Legal Foundation, which provided free appellate services, and not from Mr. Smith or McAlpine, PC.

While "[m]ultiple-lawyer litigation is common and not inherently unreasonable," courts should evaluate whether a case is "overstaffed." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 704 (6th Cir. 2016). Plaintiffs explain that while only one counsel was allowed to make appellate oral argument, the rest of the team helped generate the successful underlying arguments and briefing and spent significant time and effort on the appellate process which went up to the Supreme Court. But Plaintiffs failed to explain the "distinct contribution each attorney

made to the task of drafting the briefs," *ACLU v. Barnes*, 168 F.3d 423, 433 (11th Cir. 1999), despite Defendant's explicit objection to billing 92.2 hours (or about 1.91% of all hours expended) for the *Sinclair* appeal brief, which it argues was substantively similar to the *Hall* appeal brief Christina Martin allegedly wrote earlier. Furthermore, the Court is skeptical that a paying client would have accepted to pay Mr. Smith and McAlpine, PC for such work when Christina Martin offered to take on the appeals free of charge. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (citations omitted) (emphasis in original). Therefore, the hours billed related to the appellate process in *Hall* and *Sinclair* also appear to be excessive.

Fourth, Defendant argues Plaintiffs' Counsel cannot recover fees for unsuccessful motions, such as work on class certification which was denied in both *Hall* and *Sinclair*. Plaintiffs' Counsel accumulated approximately 483 hours on class action certification efforts prior to the denial of class certification in *Hall* in January 2024.[2] After that, Plaintiffs still filed a motion for class certification in *Sinclair* and accumulated another 90 hours related to litigating that (unsuccessful) motion. Those

---

[2] Defendant identified the hours expended on class-related efforts in green in Exhibit K. ECF No. 154, PageID.3629. Plaintiffs' Counsel did not dispute the identification of those hours.

hours represent about 11.89% of the hours expended on the case.[3] Defendant's argument for excluding those hours is two-fold: first, the class was not a "prevailing party," and second, it would be excessive to bill those hours to a paying client.

As to the first argument, Defendant cites to *Graveley v. Philadelphia*, 1998 WL 476196 (E.D. Pa. Aug. 12, 1998). In that case, the court denied fees related to class claims because class certification was denied, and plaintiff only went to trial on individual claims. There the court concluded that "[t]he hours in pursuit of class certification [could] not be deemed to have been expended in pursuit of the ultimate result achieved." 1998 WL 476196, at *8 (quotations and citations omitted). Plaintiffs respond that as a result of the settlement they were compensated for all the claims they planned to present to the jury on May 27, 2025, and that the pursuit of the class claims likely played a role in the settlement recovery, such that those fees should be recovered as well, because the *possibility* that Plaintiffs could appeal the denial of class certification may have borne some weight on the County's decision to settle—the "ultimate result achieved." *Id.*

Courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on

---

[3] Plaintiffs' Counsel also spent about 27 hours litigating issues related to class action tolling after the denial of *Hall*, which is different from the issue of class certification.

the litigation," especially where the claims could not have been "raised in separate lawsuits," such as the class claims here. *Hensley*, 461 U.S. at 435 (noting that a court's rejection of an "alternative legal grounds for a desired outcome" raised in good faith is not a "sufficient reason for reducing a fee"). Defendant argues caselaw pointed to the fact that class certification would be denied when counsel filed *Hall*'s motion for class certification. *See Tarrify Properties, LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106-07 (6th Cir. 2022) (upholding the denial of class certification in a materially identical case due to the "individualized nature of each inquiry into the fair market value of each property at the time of transfer"); *Taylor v. Cnty. of Oakland*, No. 19-12548, 2025 WL 40858, at *6 (E.D. Mich. Jan. 6, 2025)(Lawson, J.) ("[T]he issues presented at the post-reopening phase of the case were neither complex nor legally controversial, after the controlling decisions in *Hall* and *Tarrify* were handed down."). But it was not frivolous to present the issue and preserve it for appeal in *Hall*. It is true that the law became clearer once the district court denied class certification in *Hall*. But the Sixth Circuit had not yet ruled on the particular situation presented and Sinclair also needed to preserve the issue for appeal, especially since this Court granted the motion for leave to file a class action complaint. Thus, it was not frivolous in that respect either in *Sinclair*, and Plaintiffs' Counsel could raise class claims in good faith.

Nevertheless, saying that class claims could be raised in good faith does not necessarily mean that spending 573 hours on such claims was *reasonable* or that an attorney should expect a fee-paying client to compensate counsel for such unsuccessful efforts. As Plaintiffs admit,

> The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). Accordingly, attorneys generally exercise "billing judgment to account for unsuccessful efforts." *See Truesdell v. Thomas*, 2018 WL 6983508, at *5 (M.D. Fla. Nov. 8, 2018) (applying a limited 75% reduction to account for unsuccessful class efforts because "the time and effort spent [on class-related issues] 'would not be customary for an individual action of this nature'"); *see also Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich. Jan. 3, 2001)(Lawson, J.) ("It appears that plaintiff has attempted to avoid the evils of moderation by presenting a glutton's plate."). Here, even where raising the class certification question was not frivolous, it would not be customary to ask a fee-paying client to pay fees amounting to nearly 12% of the total hours billed on unsuccessful class certification motions which were not overly complex.

14

Finally, Defendant argues that the attorneys should not be awarded fees for dismissed claims against Southfield and SNRI or on behalf of Miller, American Internet Group, Dell Johnson, and Anthony Akande. Plaintiffs' Counsel only respond that they included time "processing how dismissing those defendants would affect these cases," and on the *Johnson* appeal because the Sixth Circuit consolidated that appeal with *Hall*. ECF No. 156, PageID.396. But they failed to show how those individual claims relate to the ultimate result.[4]

### (b) Vague Entries

Defendant also claims that Plaintiffs' Counsel billed thousands of hours that involved other cases or general legal research, or whose entries are too vague to discern what was accomplished.[5]

While this Court told Plaintiffs they could consolidate their fee request for *Hall* and *Sinclair*, "as long as the fee petition . . . is sufficiently detailed so that the Court can assess the amount that was billed for the work that you did for the different clients, and the type of work that was

---

[4] Defendant highlighted those entries in yellow on Exhibit K but did not provide the exact number of hours. ECF No. 154, PageID.3629. Defendant referred to one entry explicitly in its Response, indicating that on May 5, 2022, Jayson Blake excessively billed 5.4 hours in part to review two emails from SNRI's attorney regarding a motion for summary judgment. ECF No. 154, PageID.3630.

[5] Defendant highlighted hours that are vague or involve other cases in pink in Exhibit K. ECF No. 154, PageID.3629. While Mr. Smith's records separate the work on *Sinclair* and *Hall*, McAlpine, PC's records generally do not, further confusing both cases and possibly other cases.

done," Plaintiffs' Counsel (particularly McAlpine, PC) have failed to sufficiently do so, making it more difficult for the Court to evaluate the reasonableness of the work done on the individual cases. ECF No. 151-4, PageID.3547. Because of the vagueness of many of the entries, Defendant and this Court were forced to spend an inordinate amount of time attempting to understand what the entries related to.

When read "in conjunction with the timeline of the litigation," the Court was able to determine that some of the hours described were "actually and reasonably expended" in relation with the litigation. *See Imwalle*, 515 F.3d at 554. For instance, the Court could piece together that on December 30, 2020, five days after Smith's billing records recorded 7.30 hours[6] under the vague description "Draft Brief Oakland," ECF No. 150-1, PageID.3294, the record of action shows that the *Hall* Plaintiffs filed a Response Brief to the County's Motion to Dismiss. *See* ECF No. 150-3, PageID.3373.

However, many of the entries are still too vague for the Court to know which case the work related to—*Hall*, *Sinclair*, or completely different cases—casting doubt on the reasonableness of the fee request. As Defendant noted, "fees under § 1988 are not recoverable for work performed in a completely separate case, even if, as here, that case

---

[6] The Court notes that this entry thus documented nearly a full day's work on Christmas Day 2020, which followed a ten-hour billing day on Christmas Eve. *See* ECF No. 150-1, PageID.3294.

involves the same defendant . . . . If attorneys want fees for work performed in the separate action, whether for discovery or time spent drafting a brief, they can seek fees in that separate action." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013).

For instance, multiple entries mention work that does not appear to be related to *Hall* or *Sinclair* at all, such as work on "related matters," analyzing a memorandum regarding "Bowles pleadings," considering retroactivity issues in state cases, researching about amendments under state law, reviewing "Jackson MSD," editing "Johnson brief," emailing about "Jackson oral argument," considering "overall settlement" in *Hall*, *Sinclair*, *Jackson*, and *Taylor*, reviewing "motions for expedited consideration in Jackson," or following-up on "MSC arguments in Jackson." ECF No. 154, PageID.3625.[7] Defendant also points to 61 entries that bill for "paying attention to" cases. *Id.* at PageID.3627. Because the entries do not explain how the work on these related cases supported litigation efforts in *Hall* and *Sinclair*, it is difficult for the Court to evaluate the reasonableness of such fees and whether Plaintiffs should be permitted to recover them under the law. To the extent Plaintiffs' counsel seek fees for work on the appeals in *Johnson*, which

---

[7] Plaintiffs admitted including one improper entry which related to *Taylor*, consisting of final preparations for oral argument and drafting the amended complaint. Plaintiffs filed an amended billing report removing that entry. ECF No. 156, PageID.3965 n.1.

was consolidated with the appeals in *Hall*, they should have done so in *Johnson*, not here.

Furthermore, Plaintiffs' Counsel billed (at least) 32.5 hours, or 0.67% of all hours, for work on an alleged Motion to Reopen in *Hall* around April 2021, but there never was such a motion. ECF No. 154, PageID.3625-26. And Plaintiffs also admitted seeking about 28.90 hours (or 0.6% of all hours) from March 15, 2021 to April 13, 2021 that they also sought in *Taylor*. *Compare* Amended Billing Report, ECF No. 156-2, PageID.4003 *with* Taylor's Fee Petition, ECF No. 154-13, PageID.3923-24. Those entries vaguely describe work entailing "continued review of background materials" and "related cases," "filings," or "dockets" without specifying which case the work was for, casting doubt on whether the work was actually expended in *Hall* or *Sinclair*. Partly for that reason, the district court in *Taylor* reduced the hours by 62% to account for non-compensable billings, vague and unspecific entries, and failure to counter Defendant's arithmetic or otherwise submit a revised segregated accounting. *Taylor*, 2025 WL 40858, at *6. Given that Plaintiffs' Counsel asked for compensation relating to a variety of different cases in *Taylor*,[8]

---

[8] In *Taylor*, Judge Lawson concluded it was "impossible to determine with any certainty which of the numerous entries . . . were incurred directly in this litigation, since none of the entries was accompanied by any cause code or other designation of the specific civil action involved." 2025 WL 40858, at *5 (reducing hours by 62% and applying a $300 average hourly rate for a total award of $112,800).

the Court is skeptical that those entries relate solely to *Hall* or *Sinclair* in the instant request as well.

Plaintiffs' Counsel explain that it would have been malpractice not to monitor these related foreclosure cases at the state and federal level and "take[ ] developments in other cases into account when moving [Hall and Sinclair] along." ECF No. 156, PageID.3964-65. They also argue that some of the work done for *Hall*, the lead case, was helpful for *Sinclair* and other cases, including *Taylor*, such that the legal research expenses cannot be segregated between files because they benefited all of the files. *Id.* at PageID.3969. But it is not so clear that a reasonable lawyer would spend that many hours simply *monitoring* cases, especially when Plaintiffs' Counsel claim to be experienced in this specific legal area and represent many of the plaintiffs in those related cases. Counsel's experience and expertise is usually correlated with a more efficient resolution of cases, as reflected in a higher hourly rate. *See Mehney-Egan*, 130 F. Supp. 2d at 886 (finding it was "inconceivable . . . that any reasonable lawyer or team of lawyers–other than those engaged in a training exercise–could amass the volume of hours that plaintiff's counsel claim[ed] to have devoted" to a relatively straightforward motion). And it is also not so clear that a fee-paying client in an individual case would agree to compensate counsel for efforts in "coordinating takings cases in Michigan and around the country." ECF No. 150, PageID.3269.

All of those discrepancies and failings raise doubts as to whether the hours can be compensated under the law as part of *Hall* and *Sinclair* specifically.

### (c) Across-the-Board Reduction

All told, counsel claim 4,821 hours for legal work from December 18, 2020 to June 23, 2025 for two cases. That represents about 4.3 hours a day (counting 1,112 business days) or 20.5 hours a week (counting 235 weeks), or 89.3 hours a month (counting 54 months) on average. Defendant suggests the lawyers' hours should be reduced by 80% for a total of 964 compensable hours, stating that the 62% cut in *Taylor* did not go far enough to account for the excessive and vague entries. *See* 2025 WL 40858, at *6. But it must be noted that the district court in *Taylor* agreed to apply Defendant's proposed 40% cut to account for plainly non-compensable entries (those that related to work in the instant case, for instance) and an additional 33% cut for vague entries. *Id.* Other courts have found a 10% reduction to be appropriate to account for "vague entries and to fairly represent duplicative services." *See N. Atl. Operating Co. v. Ebay Seller dealz_f0r_you*, 2020 U.S. Dist. LEXIS 250397, *9 (E.D. Mich. Nov. 17, 2020)(Parker, J.).

Accordingly, an 80% cut is not warranted in this case. To account for the *excessive* entries (Part (a) above), which cannot be isolated given the number of overall entries, the Court will apply an across-the-board percentage reduction of 20% for inflated hours, unsuccessful motions and

claims, and failure to explain counsel's distinct contributions during the appellate process. To account for *vague* entries, and possibly non-compensable entries related to other cases (Part (b) above), the Court will apply an additional percentage reduction of 20%, for a total of 40% reduction in the hours billed, resulting in 2,890.89 hours reasonably expended, as further described below. *See Currier*, 2017 WL 3581181, at *8 (finding a "40% reduction to the overall lodestar award is reasonably necessary to account for . . . excessive, duplicative, unnecessary hours, over-staffing, vague descriptions"). This reduction is necessarily an exercise in discretion intended to avoid overcompensation while approving a fair recognition of Plaintiffs' Counsel's time and effort.

## 2. Rate

The second component of the lodestar calculation is determination of a reasonable hourly rate. Plaintiffs provided survey data and previous fee awards[9] to explain the reasonableness of the rates and why each attorney is entitled to their specific rate ranging from $125 to $625. *See* ECF No. 150, PageID.3624-28.

---

[9] While Plaintiffs referred to the fee award Counsel received in *In re Flint Water Cases*, they wisely did not claim such high fees. Indeed, it would not be proper for the Court to award such high fees where Counsel in *In re Flint Water Cases* acted as class counsel and secured a historic $626.25 million settlement, as opposed to representing individual plaintiffs and securing a half a million settlement in this case. *See Graveley*, 1998 WL 476196, at *5 (rejecting hourly rate based on class action rate as class certification was denied).

While Defendant challenges the reasonableness of the number of hours expended on the case, it does not put forth any argument that the *rates* of Plaintiffs' Counsel are unreasonable. Defendant takes issue with the number of lawyers on the case, but "[m]ultiple-lawyer litigation is common and not inherently unreasonable." *City of Riverview v. Operating Eng'rs Loc. 324 Pension Fund*, No. CV 18-11370, 2019 WL 8301970, at *5 (E.D. Mich. Nov. 14, 2019)(Stafford, M.J.), *report and recommendation adopted sub nom.*, 2020 WL 1443203 (E.D. Mich. Mar. 23, 2020)(Hood, J.) (cautioning courts to consider whether a case is "overstaffed"). Plaintiffs explain that because this litigation has taken over five years, five of the attorneys who initially worked on the cases no longer work for McAlpine, PC, and needed to be replaced by additional attorneys. And while Scott Smith focused his efforts on communicating with clients, opposing counsel, and the Court, McAlpine, PC handled most of the research and brief writing. And any potential over-staffing issue is already reflected in the 40% reduction in the hours sought to be compensated.

Furthermore, while Defendant would like this Court to follow *Taylor*'s approach, that is, applying a $300 average hourly rate, without a specific argument addressing Plaintiffs' proposed rates, this Court believes the proposed hourly rates are appropriate.

Thus, the Court will cut each attorney's hours by 40% and calculate the lodestar amount using each attorney's proposed hourly rate. The

lodestar amount in this case is $1,255,974.64, including $432,612.49 for Mr. Smith and $823,362.15 for McAlpine, PC.

| Attorney | Proposed hours | Adjusted hours (downward 40%) | Hourly rate | Total fee |
|---|---|---|---|---|
| Scott F. Smith | 1458.7 | 875.22 | $494.29 | $432,612.49 |
| Mark L. McAlpine | 999.15 | 599.49 | $625 | $374,681.25 |
| Adam T. Schnatz | 314.30 | 188.58 | $370 | $69,774.60 |
| Jayson E. Blake | 772.30 | 463.38 | $450 | $208,521 |
| Artur N. Dore | 244.4 | 146.64 | $185 | $27,128.40 |
| Daniel J. Pifko | 386.2 | 231.72 | $165 | $38,233.80 |
| Douglas W. Eyre | 108.4 | 65.04 | $460 | $29,918.40 |
| Mark W. Oszust | 525.1 | 315.06 | $235 | $74,039.10 |
| Lynette T. McAlpine | 9.6 | 5.76 | $185 | $1,065.60 |
| **Total** | 4,818.15 | 2,890.89 | N/A | $1,255,974.64 |

### 3. Enhancement

Plaintiffs argue a 2.0 multiplier (a 100% increase, or doubling of the actual fee amount) is warranted under the *Hensley* factors, as described above, notably because of the "momentous results obtained in the form of the landmark decision in *Hall* and the subsequent global settlement for the Plaintiffs." ECF No. 150, PageID.3277; *see Hensley*, 461 U.S. at 430 n.3.

In determining the overall reasonableness of an attorney fee award, the Court has discretion to consider enhancing the lodestar amount by applying a multiplier if the litigation achieved "exceptional success."

23

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). In *Barnes*, the Sixth Circuit cited approvingly to cases granting enhancements of between 10% to 100% (or 1.1 to 2.0 multipliers) based on various reasons, including: "the undesirability and exceptional nature of the case;" achieving "exceptions results" where counsel was active in the case for 15 years; taking an unpopular case as a solo practitioner when others turned it down and bringing to light a previously unrecognized cause of action; the groundbreaking nature of the case; providing superb representation "under the most adverse circumstances;" plaintiffs' counsel's "imagination and creativity . . . to invoke judicial protection of constitutional rights which previously had not been clearly recognized by the courts. *Id.* at 746 (collecting cases).[10] After reviewing these cases, the Sixth Circuit held in *Barnes* that a multiplier of 1.75 or 75% enhancement was not an abuse of discretion because of the novelty and difficulty of the case and the "immense skill requisite to conducting this case properly." *Id.*

---

[10] *See Guam Soc. Of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (2.0 multiplier); *McKenzie v. Kennickell*, 875 F.2d 330, 338–39 (D.C. Cir. 1989) (25% enhancement); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913 (S.D. Ohio Feb. 21, 2001) (50% upward adjustment); *Quinn v. Nassau Cnty. Police Dept.*, 75 F. Supp. 2d 74 (E.D.N.Y. Nov. 20, 1999) (10% upward adjustment); Hollowell v. Gravett, 723 F. Supp. 107, 110 (E.D. Ark. Aug. 24, 1989) (75% enhancement); *Shakman v. Democratic Org.,* 677 F. Supp. 933, 945 (N.D. Ill. Dec. 16, 1987) (fee enhancement equal to one third of the lodestar or 1.333 multiplier).

Considering the nature of these cases, it can be clearly seen that *Hall*, in particular, produced excellent results. It marked a clear turn in federal takings law when it recognized the constitutional right to surplus equity, allowing a new claim that was vital not only to the success of Plaintiffs in *Hall* as well as *Sinclair*, but potentially thousands of other homeowners in Michigan. Defendant claims that it was apparent from the earlier Michigan Supreme Court decision in *Rafaeli*, rather than from *Hall*, that the tide was turning and the law was likely to change. But *Rafaeli* was a state case, and even after it was decided, both *Sinclair* and *Hall*'s complaints were dismissed for failure to state a claim under the federal Constitution. The Sixth Circuit acknowledged that although a federal surplus equity takings claim "may have been bolstered by *Rafaeli*," a similarly-situated plaintiff "made an additional and distinct logical leap" in raising claims "under the Fifth . . . Amendment as opposed to the Michigan Constitution." *Freed v. Thomas*, 137 F.4th 552, 562 (6th Cir. 2025). Defendant itself recognized the significant role played by the *Hall* decision in paving the way for success in *Hall* and other cases:

> Once *Hall* was decided, there was no novelty. *Hall* involved Oakland County based on facts which were not materially different than this case. Once *Hall* became final, the County had no defense to liability.

Exhibit 10, Taylor Fee Response, ECF No. 150-10, PageID.3520. So significant was the *Hall* decision that after it was rendered, Oakland

County conceded liability as to the takings claim in both *Hall* and *Sinclair*. Its persuasiveness was such that in its own excess equity-takings case, the United States Supreme Court directly quoted the Sixth Circuit's opinion in *Hall* for the proposition that "the Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the State wished to take." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023).

But the question is whether, even considering the degree of success of *Hall* in recognizing a new constitutional right, the Court should increase the attorney fee award by the generous 2.0 enhancement requested by Plaintiffs. While Plaintiffs cited to *Barnes*, in which the Sixth Circuit found that a 1.75 multiplier (75%) enhancement was not an abuse of discretion, the appellate court also noted that "this figure, (1.75), is near the upper end of what we consider 'reasonable.'" *Barnes*, 401 F.3d at 746–47 n.4 ("[D]istrict courts should not view the decision to uphold the multiplier in this case as an explicit or implicit approval of this large or larger multipliers across the board, or assume that a multiplier, like the one used in this case, could never constitute an abuse of discretion.").

Some of the other cases cited by the Sixth Circuit in *Barnes* include *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio Feb. 21, 2001), which applied a 1.5 multiplier or 50% enhancement to the lodestar amount based on the "exceptional" success of class counsel, a solo practitioner, who "took a case with compelling facts, but scant case-law

26

and brought to light a previously unrecognized cause of action." *See Barnes*, 401 F.3d at 746; *see also Gonter v. Hunt Valve Co.*, 510 F.3d 610, 622 (6th Cir. 2007) (noting the "difficulties" of "discovering a novel cause of action") (citing *Brotherton*, 141 F. Supp. 2d at 913). While Plaintiffs' Counsel's efforts in *Hall* helped recognize a new federal right, Counsel cannot claim to be in the same position as *Brotherton*'s counsel who litigated a class action for eleven years as class counsel on his own. Furthermore, this is not a situation where plaintiffs had "trouble obtaining counsel," even though Ms. Sinclair and Ms. Hall first filed their complaint pro se. *See Graveley*, 1998 WL 476196, at *10.

The Sixth Circuit also cited approvingly to *Quinn v. Nassau Cnty. Police Dep't*, 75 F. Supp. 2d 74, 79 (E.D.N.Y. Nov. 20, 1999), which applied a 10% lodestar enhancement (or 1.1 multiplier) based on the risks of failure involved in bringing a sexual orientation discrimination claim under Title VII, which generally does not enjoy favorable legal protection, such that there was a "significant likelihood" the plaintiff "might not have prevailed in this somewhat groundbreaking case." *See Barnes*, 401 F.3d at 746. Plaintiffs here argue that in charging a contingent fee, Mr. Smith and McAlpine, PC faced the significant risk that they would never be paid for the hundreds of hours expended to recognize a new federal constitutional right. Indeed, when Counsel started representing Plaintiffs in *Hall* and *Sinclair*, neither Michigan nor the Sixth Circuit had recognized a vested property right to equity held in property. As

such, Plaintiffs' counsel assert they faced a significant up-hill battle in this case given the legal landscape regarding surplus equity, including litigating *Hall* all the way to the Supreme Court of the United States.

The Court agrees that a similar enhancement to the one in *Quinn* is appropriate here given Counsel's creativity, diligence, persistence and risk-taking in fighting an up-hill battle against a government process that this Court some time ago decried as a "manifest injustice," but one for which the then-existing law afforded no remedy. *Rafaeli, LLC v. Wayne Cnty.*, No. 14-13958, 2015 WL 3522546, at *3 n.2 (E.D. Mich. June 4, 2015). For these reasons, the Court finds a 10% enhancement (or 1.1 multiplier) is justified, for work pertaining to *Hall* only. The result in *Sinclair* was achieved because of the success in the *Hall* case. As the district court mentioned in *Taylor*, Plaintiffs' adjustment request "concerns the applicability of the [*Hensley*] factors to the challenges and rigors of the lengthy appellate proceedings [in *Hall*], not the work directly incurred" in *Taylor* or *Sinclair*. 2025 WL 40858, at *7. Here, it was work in the *Hall* case that set the table for the appellate decision reinstating *Sinclair*, which merely followed the reasoning and result of *Hall*. *See Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473, at *3 (6th Cir. Dec. 29, 2022) ("In light of our recent decision in *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), the district court partially erred by finding that this claim would not survive dismissal under Rule 12(b)(6).").

While Mr. Smith segregated his hours between work done on *Sinclair* and *Hall*, the McAlpine, PC attorneys did not. The Court therefore cannot tell with certainty what portion of the McAlpine, PC fees merit an enhancement. Because legal teams were working together, and Mr. Smith's billing records indicate he spent about 16% of his time on *Sinclair* and 84% on *Hall*, the Court will assume the same division for the McAlpine, PC entries. As a result, the Court will apply a 10% (or 1.1) enhancement, but only to 84% of McAlpine, PC's and Mr. Smith's respective lodestar amounts. This is equivalent to applying a 1.084 multiplier to the entire lodestar amount. The enhancement is intended to account for the exceptional results achieved in *Hall* recognizing a federal constitutional right to surplus equity. Therefore, the Court calculates that Plaintiffs are entitled to recover $1,361,476.51 in attorney's fees pursuant to § 1988 as follows:

| Attorney | Proposed hours | Adjusted hours (downward 40%) | Hourly rate | Adjusted lodestar | 10% *Hall* enh.[11] | Total fee |
|---|---|---|---|---|---|---|
| Scott F. Smith | 1458.7 | 875.22 | $494.29 | $432,612.49 | $36,339.45 | $468,951.94 |
| Mark L. McAlpine | 999.15 | 599.49 | $625 | $374,681.25 | $31,473.22 | $406,154.47 |

---

[11] The formula used to calculate the *Hall* enhancement is as follows: lodestar + ((lodestar x 84%) x 10%) = lodestar x 1.084. By way of illustration, 84% of Mr. Smith's lodestar amount ($432,612.49) is $363,394.49, and 10% of that amount is $36,339.45. This enhancement amount is then added to the lodestar amount to determine that Mr. Smith's total fee is $468,951.94.

| Adam T. Schnatz | 314.30 | 188.58 | $370 | $69,774.60 | $5,861.07 | $75,635.67 |
| Jayson E. Blake | 772.30 | 463.38 | $450 | $208,521 | $17,515.76 | $226,036.76 |
| Artur N. Dore | 244.4 | 146.64 | $185 | $27,128.40 | $2,278.79 | $29,407.19 |
| Daniel J. Pifko | 386.2 | 231.72 | $165 | $38,233.80 | $3,211.64 | $41,445.44 |
| Douglas W. Eyre | 108.4 | 65.04 | $460 | $29,918.40 | $2,513.15 | $32,431.55 |
| Mark W. Oszust | 525.1 | 315.06 | $235 | $74,039.10 | $6,219.28 | $80,258.38 |
| Lynette McAlpine | 9.6 | 5.76 | $185 | $1,065.60 | $89.51 | $1,155.11 |
| **Total** | 4,818.15 | 2,890.89 | N/A | $1,255,974.64 | $105,501.87 | **$1,361,476.51** |

### B. COSTS

Plaintiffs also seek $76,235.54 in out-of-pocket expenses, including $3,636.76 in deposition transcript costs,[12] $67,789.82 in Westlaw charges, and the remaining in travel expenses, telephone expenses, filing costs, pleading copies, deed copies, appraisal fees, and mailing fees. *See Smith Costs*, ECF No. 150-1, PageID.3315 (requesting $3,589.71); *McAlpine Costs*, ECF No. 150-11, PageID.3525-26 (requesting $72,648.83). Plaintiffs also seek to recover paralegal expenses.[13]

Defendant responds that the settlement already included all costs, and that in any event, the costs requested are unreasonable. ECF No. 151. Defendant considers Plaintiffs' request to be so far outside of the

---

[12] McAlpine, PC and Mr. Smith respectively seek $681.25 and $2,955.51 in deposition transcript costs. *See* ECF No. 150-11, PageID.3525-26; ECF No. 150-1, PageID.3315.

[13] While McAlpine, PC included paralegal expenses in the attorneys' fees calculation, those costs are more properly considered as § 1988 expenses.

parties' settlement agreement that it not only asks that the request be denied, but that sanctions be imposed on Plaintiffs for taking such an outlandish position. *Id.*

### 1. Settlement Agreement

The parties dispute whether the settlement included costs usually recoverable under 42 U.S.C. § 1988.

Bill Horton, Defendant's Counsel, sent an email to Scott Smith, Plaintiffs' Counsel, on May 25, 2025, asking to confirm in writing the terms of the settlement:

> [W]e will pay your clients a total of $500,000 in full and final settlement of their claims, *including all costs* and interest. You are entitled to file a petition for attorney fees and we will be entitled to subtract a total of $30,000 from that award. . . . [D]ismissal of the lawsuit [will be] with prejudice and *without costs*, reserving your right to file a fee petition.

Exhibit A, ECF No. 151-2, PageID.3534 (emphasis added). Scott Smith responded shortly thereafter that "[t]here are no more conditions" and "Plaintiffs accept." Exhibit B, ECF No. 151-3, PageID.3536. When the settlement agreement was placed on the record two days later, on May 27, 2025, at a hearing before the Court, John Fleming, Defendant's Counsel stated:

> So I'll put the terms on the record and then Mr. Smith can confirm. So the County on a global basis is going to pay $500,000 to the plaintiffs in this case. That's Marion Sinclair, Kristina Govan, Curtis and Coretha Lee, and Tawanda Hall. That will be paid within 30 days. It is a global settlement for all plaintiffs. *That includes all costs and all interest.*

> However, the plaintiffs will file their 1983 and 1988 statutory attorney fee petition separately. . . .

> The County shall receive a $30,000 credit deduction in the ultimate attorney fee award. . . . [T]he $500,000 . . . will be . . . paid to Mr. Smith's client trust account, and then he will be obviously responsible for delineating those funds and disbursing them to his clients. . . .

> [B]oth parties reserve all rights to raise any claims, objections, defenses with respect to the attorney fee petition.

Exhibit C, ECF No. 151-4, PageID.3541-43 (emphasis added). Scott Smith, Plaintiffs' Counsel, responded that "[w]hat Mr. Fleming said is correct, we've agreed to that." *Id.* at PageID.3545.

Each plaintiff's subsequent written settlement agreement expressly stated that "[o]n receipt of the Settlement Amount, Plaintiff shall file with the court a stipulation for dismissal of the Subject Action, with prejudice and without interest or costs. Separately, Defendant acknowledges Plaintiff is entitled to file a petition for statutory attorney fees." Exhibit D, ECF No. 151-5, PageID.3556.

On June 11, 2025, after paying the settlement amount, John Fleming, Defendant's Counsel, emailed Scott Smith a draft stipulation to dismiss pursuant to the terms of the settlement:

> The parties stipulate that, pursuant to the terms of the settlement placed on the record on May 27, 2025, this case should be dismissed with prejudice. This dismissal is without costs or interest (since they are included in the settlement) but Plaintiff may file a motion for attorney fees pursuant to 42 U.S.C. § 1988.

32

Exhibit E, ECF No 151-6, PageID.3569-70. Plaintiffs' Counsel did not sign the above stipulation, and instead sent a revised draft stipulation to Bill Horton, Defendant's Counsel, stating:

> This dismissal is without taxable costs under Fed. R. Civ. Proc. 54(d)(1) or interest (since they are included in the settlement) but Plaintiffs have filed a motion for attorney fees and expenses pursuant to 42 U.S.C. §1988.

Exhibit A, ECF No. 152-1, PageID.3589. Around the same time, Plaintiffs filed a fee petition including $76,235.54 in costs. ECF No. 150, PageID.3254. Mr. Smith acknowledged their different positions in an email to Mr. Horton:

> I know your position is that all costs are included in the settlement. . . . Our position is that taxable costs and interes[t] are included in the Settlements. [B]ut we maintain the right to seek section 42 USC 1988 expenses.

Exhibit A, ECF No. 152-1, PageID.3588.

Plaintiffs argue "[t]here is Sixth Circuit case law on the distinction" between taxable costs—which they acknowledge are already included in the settlement—and § 1988 expenses—which they argue they can recover despite the settlement. *See Waldo*, 726 F.3d at 827 ("Section 1988 permits district courts to award those 'incidental and necessary expenses incurred in furnishing effective and competent representation' *as part of the award of attorney fees*.") (emphasis added); *Northcross*, 611 F.2d at 639 ("Some expenses are *included in the concept of attorney's fees*, as

'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by section 1988.") (emphasis added)

Nonetheless, Defendant argues that § 1988 does not "render [fees and costs] nonwaivable or nonnegotiable..." *Ne. Ohio Coal. for Homeless v. Sec'y. of Ohio*, 695 F.3d 563, 569 (6th Cir. 2012) (cleaned up) (citation omitted). Defendant argues it did not and would have never agreed to excluding § 1988 expenses from the settlement agreement and would not have settled nor paid $500,000 to Plaintiffs if that figure did not include all costs. *See Hoey v. Sunrise Senior Living Mgmt., Inc.*, 2013 WL 773014, at *2 (E.D. Mich. Feb. 28, 2013)(Hood, J.) ("[T]he time to [incorporate additional terms and conditions] was in court when the agreement was placed on the record, not days or weeks thereafter.") (brackets in original, citation omitted); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out."). Thus, Defendant insists that the settlement agreement's bar on awarding costs includes those associated with an award of attorney's fees.

Plaintiffs explain that because Counsel recovered $750 for the appraisal costs in *Taylor*, it was reasonable to assume that § 1988 costs would similarly be paid at the Court's discretion in *Hall* and *Sinclair*,

34

especially because Defendant's Counsel represented on May 28, 2025 that the settlement agreements were "materially the same agreement as in the Taylor settlement." ECF No. 152-2, PageID.3592. But Plaintiffs are seeking to recover an amount much greater than the $1,750 in appraisal costs in this case, and the *Taylor* settlement provided that dismissal would be "with prejudice and without any *further* costs," such that costs incurred before the settlement were explicitly recoverable in *Taylor*. Exhibit A, Taylor Transcript, ECF No. 153-1, PageID.3603-04.

Part of the dispute here derives from the fact that the settlement agreement spoke of "costs" without distinguishing between what are called "taxable costs" and "non-taxable costs." The signed agreement spoke only of a dismissal "without interest or costs." ECF No. 151-5, PageID.3566. But, as stated above, at the time of the hearing before the Court, when the terms of the parties' agreement were placed on the record, Defense Counsel stated: "It is a global settlement for all plaintiffs. That includes all costs and all interest. However, plaintiffs will file their 1983 and 1988 statutory attorney fee petition separately." Exhibit C, ECF No. 151-4, PageID.3541-43 (emphasis added). Later in the hearing, Attorney Smith for Plaintiffs stated, "What Mr. Fleming said is correct, we've agreed to that." *Id* at PageID.3545.

"Taxable costs" refers to those costs "other than attorney fees" that are generally recoverable by a prevailing party in the Court's discretion pursuant to Fed. R. Civ. Proc. 54(d) and 28 U.S.C. § 1920. Such costs

35

include transcript fees, copying fees, or docket fees, and represent amounts "incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees." *Northcross*, 611 F.2d at 639. Such costs are "taxable" in the sense that they may be "taxed" to the losing side. Rule 54(d) however also refers to claims for "attorney's fees and 'non-taxable' expenses," treating them as separate and distinct from "costs other than attorney's fees." Fed. R. Civ. Proc. 54(d)(2)(A). "Non-taxable" expenses would be those that an attorney might incur out of his or her own pocket, but which would likely be passed on to the client as part of the client's bill.

There is relevant but unpublished Sixth Circuit precedent on this distinction. In *Echols v. Express Auto, Inc.*, 857 Fed. Appx. 224, 232 (6th Cir. 2021), the Sixth Circuit addressed a losing party's challenge to the district court's award of "non-taxable costs" as part of an award of attorney's fees pursuant to 15 U.S.C. § 1691e(d). Like here, the defendant there argued that the settlement agreement, which provided that "[e]ach party agrees to bear their own fees and costs in the Litigation and waives any right to recover those fees and costs from the other side or their attorneys" meant that the district court could award no costs of any kind, even those out-of-pocket, non-taxable costs of the kind that would normally be charged to a fee-paying client. *Id.* But the Sixth Circuit concluded that the settlement agreement's language excluding the recovery fees and costs referred to "taxable" costs of the kind that would

be paid to a third party, not expenses incident to providing legal services that a client would normally pay to the attorney. *Id*. at 231. The Court reasoned that an award of attorney's fees under a fee-shifting statute "naturally include[s] related costs" or "reasonable out-of-pocket expenses normally charged to a fee-paying client," so that non-taxable costs could be awarded as part of the attorney's fee award. *Id*. at 232. Because the settlement agreement in *Echols* did not include a provision allowing for the recovery of § 1920 taxable costs, the Sixth Circuit deemed recovery of those costs was "likely prohibited by the settlement agreement." 857 Fed. Appx. at 231-32.

Here, Plaintiffs concurred that the dismissal is without *taxable* costs. ECF No. 152, PageID.3572. As to non-taxable costs, the Court finds the reasoning of *Echols* persuasive here. Accordingly, the settlement agreement in this case can be reasonably understood to exclude recovery of any taxable costs, but not necessarily preclude seeking recovery of reasonable out-of-pocket expenses under § 1988 as part of the attorney fee award. *See Echols*, 857 Fed. Appx. at 231-32. Furthermore, because it was not unreasonable for Plaintiffs' Counsel to seek such expenses under § 1988, *Echols*, and the settlement agreement,[14] Defendant's request to impose sanctions is **DENIED**.

---

[14] The parties agreed on the record that "both parties reserve[d] all rights to raise any claims, objections, defenses with respect to the attorney fee petition." Exhibit C, ECF No. 151-4, PageID.3541-43.

## 2. Reasonable Expenses

Though "non-taxable costs" may be requested, they may only be recovered if they are reasonable, and not all of the expenses sought to be recovered by Plaintiffs are reasonable here. Recoverable out-of-pocket expenses are those "necessary" expenses "incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services," such as "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Northcross*, 611 F.2d at 639.

Defendant vehemently opposes Plaintiffs' request for $67,789.82 in Westlaw charges between April 2021 and March 2025. While Plaintiffs cite to *Communities for Equity v. Michigan High School Athletic Assn.*, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008) for the proposition that Westlaw charges can be awarded under § 1988, the Sixth Circuit itself recognized that whether such charges are recoverable is an "unsettled" question. *See Smith v. Service Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014). While the Sixth Circuit declined to establish an "absolute rule that the cost of computer research is or is not recoverable," it stated that:

> Any recovery should be for the actual cost of the online access or service. If the lawyer or firm pays a blanket access fee, rather than per search, there is no reason to distinguish the on-line research cost from the cost of the books that at one time lined the walls of legal offices, which was treated as overhead. If distinct charges are incurred for specific research directly relating to the case, and the general practice in the local legal community is to pass those charges on to the client,

we see no reason why such properly documented charges should not be included in the recoverable expenses.

*Id.* at 368.

Here, Plaintiffs failed to provide any evidence to establish that passing on the costs of online legal research is local practice,[15] and in fact indicated that McAlpine, PC pays a "blanket access fee" of approximately $6,370.00 a month for Westlaw services, which is therefore considered "overhead" costs. *See id.*; Exhibit C, Westlaw Contract, ECF No. 156-3, PageID.4030.

The *Smith* court further warned that descriptions such as "October 2009 Westlaw charges" were not sufficient to establish that the "expenses were actually incurred in connection with the litigation" to justify an award of electronic legal research costs. 592 F. App'x at 369; *see also Zack v. McLaren Health Advantage, Inc.*, No. 17-11253, 2018 WL 6571230, at *5 (E.D. Mich. Dec. 13, 2018) (declining to award online legal research fees where "Plaintiffs' counsel . . . has not provided the level of detail required by the *Smith* holding—that is, more than simply a billing sheet entry that lists the date and dollar amount labeled "Westlaw charges"). Here, Plaintiffs similarly failed to provide descriptions sufficient to establish that the monthly "Westlaw Legal Research" charges were

---

[15] Lone citation to a 2008 Western District of Michigan decision falls short of establishing local practice.

actually incurred in connection with *Hall* and *Sinclair*, as opposed to another case on McAlpine, PC's docket.[16]

| Date | Amount | Matter | Description |
|---|---|---|---|
| 5/30/2021 | $18.49 | Oakland Plaintiffs:Tax | AT&T TeleConference (Inv. 105-005701) (teleconference on 4/7/2021) |
| 5/30/2021 | $2,000.73 | Oakland Plaintiffs:Tax | Westlaw Legal Research (April 2021) |
| 6/29/2021 | $247.91 | Oakland Plaintiffs:Tax | Westlaw Legal Research (May 2021) |
| 8/31/2021 | $1,161.76 | Oakland Plaintiffs:Tax | Westlaw Legal Research (July 2021) |
| 9/30/2021 | $1,964.30 | Oakland Plaintiffs:Tax | Westlaw Legal Research (August 2021) |
| 11/30/2021 | $333.16 | Oakland Plaintiffs:Tax | Westlaw Legal Research (October 2021) |
| 12/31/2021 | $1,327.17 | Oakland Plaintiffs:Tax | Westlaw Legal Research (November 2021) |
| 1/31/2022 | $2,768.44 | Oakland Plaintiffs:Tax | Westlaw Legal Research (December 2021) |
| 2/28/2022 | $567.78 | Oakland Plaintiffs:Tax | Westlaw Legal Research (January 2022) |

*See* ECF No. 150-11, PageID.3525. Therefore, the Court concludes that the Westlaw charges as described are not recoverable as part of the attorney's expenses under § 1988.

As to the other expenses, Defendant does not specifically oppose them, and the Court finds them reasonable, with the exception of some paralegal costs,[17] and deposition transcript costs.[18] Therefore, the Court

---

[16] Defendant also claims that every entry in McAlpine's submission in this case is identical to those in *Taylor* through May 31, 2025, which further casts doubts as to whether the costs were actually incurred in *Hall* and *Sinclair*. ECF No.150- 11, PageID.3525-26. Plaintiffs respond they only sought 20% of the costs in *Taylor* and the district court only granted costs for the property appraisal. ECF No. 156, PageID.3970.

[17] Naomi Sawade billed 3 hours at a $125 hourly rate for downloading all the pleadings in *Sinclair* and *Hall*. ECF No. 150-2, PageID.3355. After applying the same 20% downward departure for excessive entries discussed above, the Court will award $300 in paralegal expenses instead of the $375 requested.

[18] While Plaintiffs cite to *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 258 (E.D.N.Y. Feb. 3, 2020) for the proposition that deposition expenses may be taxed if they were reasonably necessary to the litigation under Fed. R. Civ. Proc. 54, Plaintiffs acknowledged the settlement agreement provided for dismissal of the case "without taxable costs" under the same

will award Plaintiffs $5,108.96 in attorney's expenses pursuant to § 1988 for reasonable paralegal expenses, travel expenses, telephone expenses, filing costs, pleading copies, deed copies, appraisal fees, and mailing fees.[19]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorney's Fees (ECF No. 150) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Exclude Costs, Impose Sanctions, and Enter Dismissal Order (ECF No. 151) is **GRANTED IN PART** and **DENIED IN PART**.

It is **ORDERED** that Plaintiffs are awarded $1,361,476.51 in attorney's fees and $5,108.96 in litigation expenses under 42 U.S.C. § 1988 as follows:

- Scott Smith is hereby awarded $468,951.94 in attorney's fees and $631.20 in litigation expenses; and,

- McAlpine, PC is hereby awarded $892,524.57 in attorneys' fees and $4,477.76 in litigation expenses.

---

rule. ECF No. 152, PageID.3572. Because the $3,636.76 in fees for deposition transcripts "necessarily obtained for use in the case" are taxable costs under Fed. R. Civ. Proc. 54(d)(1) and 28 U.S.C. § 1920(2), they were already included in the settlement agreement and are not recoverable.

[19] The Court arrived at this number by subtracting the Westlaw charges ($67,789.82) and the deposition transcript fees ($3,636.76) from the costs sought ($76,235.54) and adding $300 in paralegal expenses.

It is **FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**. This Order closes the case.

**SO ORDERED.**

Dated: January 12, 2026

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE